UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE:  THE HONORABLE JOSEPH A. LAROSKI, JR., JUDGE

TANGHENAM ELECTRIC WIRE & CABLE CO., LTD.,

    Plaintiff,

    v.

UNITED STATES,

        Defendant,

    and

ENCORE WIRE CORP.,

        Defendant-Intervenor.

PUBLIC VERSION
Court No. 25-00049

## RULE 56.2 MOTION ON BEHALF OF PLAINTIFF TANGHENAM ELECTRIC WIRE & CABLE CO. LTD. FOR JUDGMENT ON THE AGENCY RECORD

Pursuant to Rule 56.2 of the U.S. Court of International Trade, Tanghenam Electric Wire & Cable Co. Ltd. ("Tanghenam"), moves for judgment on the agency record in this action challenging the factual and legal conclusions of the U.S. Department of Commerce in the final determination of the anti-circumvention inquiry on aluminum wire and cable from China with respect to Vietnam, *Aluminum Wire and Cable From the People's Republic of China: Final Negative Scope Ruling and Final Affirmative Determination of Circumvention With Respect to the Socialist Republic of Vietnam*, 90 Fed. Reg. 8,196 (Jan. 27, 2025) ("*Final Determination*"), and associated decision and analysis memoranda.

For the reasons set forth in the attached Memorandum in Support of Plaintiff's Rule 56.2 Motion for Judgment on the Agency Record, the Department's decision to use facts otherwise available with an adverse inference and barring Tanghenam from participating in its certification

program was unsupported by substantial evidence and otherwise not in accordance with law. Plaintiff respectfully moves this Court to so hold, remand this case to Commerce to reconsider and revise the decisions in the *Final Determination*, and grant such other relief as this Court may deem just and proper.

Respectfully submitted,

Dated: July 21, 2025

*/s/ Weronika Bukowski*

Alexander H. Schaefer
Weronika Bukowski
Pierce Lee

Crowell & Moring LLP
1001 Pennsylvania Ave., N.W.
Washington, D.C.  20004
(202) 624-2773
aschaefer@crowell.com

*Counsel for Plaintiff*

UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE:  THE HONORABLE JOSEPH A. LAROSKI, JR., JUDGE

| | |
|---|---|
| TANGHENAM ELECTRIC WIRE & CABLE CO., LTD., <br><br> Plaintiff, <br><br> v. <br><br> UNITED STATES, <br><br> Defendant, <br><br> and <br><br> ENCORE WIRE CORP., <br><br> Defendant-Intervenor. | PUBLIC VERSION <br> Court No. 25-00049 |

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S**
**RULE 56. 2 MOTION FOR JUDGMENT ON THE AGENCY RECORD**

Alexander H. Schaefer
Weronika Bukowski
Pierce Lee

Crowell & Moring LLP
1001 Pennsylvania Ave., N.W.
Washington, D.C.  20004
(202) 624-2773
aschaefer@crowell.com

*Counsel for Plaintiff*

Dated: July 21, 2025

## **<u>TABLE OF CONTENTS</u>**

PLAINTIFF'S STATEMENT PURSUANT TO USCIT RULE 56.2(c) ...................................... 1

STATEMENT OF FACTS ................................................................................................. 3

ARGUMENT ..................................................................................................................... 10

I.     The Department's Application of AFA to Tanghenam was Unsupported by Substantial Evidence and Contrary to Law ................................................................................. 11

          1.     Tanghenam Demonstrated its Ability to Trace the Country of Origin of AWC Inputs ............................................................................. 12

          2.     There is No Gap in the Record Allowing the Use of AFA on Tanghenam ............................................................................................... 15

          3.     The Department's Finding that Tanghenam Cannot Participate in the Certification Process in Unsupported by Substantial Evidence .......... 20

II.    The Department's Refusal to Allow Tanghenam to Certify any Entries Is Unlawful...... 22

CONCLUSION................................................................................................................... 27

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*AMS Associates Inc. v. United States*,
737 F.3d 1338 (Fed. Cir. 2013) (overruled on other grounds) ...............................................24

*Celik Halat Ve Tel Sanayi A.S. v. United States,* 557. F. Supp. 3d 1363 (Ct. Int'l
Trade 2022)...............................................................................................................17

*Consol. Edison Co. v. NLRB*,
305 U.S. 197 (1938)...................................................................................................3

*Foshun Shunde Yongjian Housewares & Hardware Co. v. United States*,
No. 10-00059 2011 Ct. Int'l Trade LEXIS 123 (Ct. Int'l Trade, Oct. 12, 2011)...............17, 18

*Max Fortune Indus. Co. v. United States*,
37 C.I.T. 549 (2013) ............................................................................................25, 26

*SKF USA Inc. v. United States*,
263 F.3d 1369 (Fed. Cir. 2001)...................................................................................3

*SKF USA, Inc. v. United States*,
537 F.3d 1373 (Fed. Cir. 2008)...................................................................................3

*WelCom Prods., Inc. v. United States*,
36 C.I.T. 1336, 865 F. Supp. 2d 1340 (2012) ................................................................3

*Wheatland Tube Co. v. United States*,
161 F.3d 1365 (Fed. Cir. 1998)...................................................................................3

**Statutes**

19 U.S.C. § 1304.........................................................................................................23

19 U.S.C. § 1516a.........................................................................................................3

19 U.S.C. § 1677.............................................................................................11, 12, 17, 18

28 U.S.C. § 1581.........................................................................................................3

**Other Authorities**

*Aluminum Wire and Cable From the People's Republic of China: Antidumping
Duty and Countervailing Duty Orders*, 84 Fed. Reg. 70,496 (Dec. 23, 2019).........................3

*Aluminum Wire and Cable From the People's Republic of China: Final Negative Scope Ruling and Final Affirmative Determination of Circumvention With Respect to the Socialist Republic of Vietnam*, 90 Fed. Reg. 8,196 (Jan. 27, 2025) ................................................................................................................................1

*Aluminum Wire and Cable from the People's Republic of China: Initiation of Scope and Circumvention Inquiries of the Antidumping Duty and Countervailing Duty Orders,* 88 Fed. Reg. 72041 (Oct. 19, 2023) ...........................................4

*Aluminum Wire and Cable From the People's Republic of China: Preliminary Negative Scope Determinations With Respect to Cambodia, Korea, and Vietnam; Preliminary Affirmative Determinations of Circumvention With Respect to Korea and Vietnam; Preliminary Negative Determination of Circumvention With Respect to Cambodia,* 89 Fed. Reg. 64,406 (Aug. 7, 2024) ...............................................................................................................5, 6, 7, 22

*Issues and Decision Memorandum for Circumvention and Scope Inquiries of the Antidumping Duty and Countervailing Duty Orders on Certain Hardwood Plywood Products from the People's Republic of China*, A-570-051, C-570-052 (July 14, 2023) .................................................................................................25

*Issues and Decision Memorandum for the Final Affirmative Circumvention Determination of the Antidumping Duty Order on Light-Walled Rectangular Pipe and Tube from the Republic of Korea*, A-580-859 (Nov. 2, 2023), at 22 ................23, 24

## PLAINTIFF'S STATEMENT PURSUANT TO USCIT RULE 56.2(c)

### A.    Administrative Determination to be Reviewed

This action is an appeal from the final determination issued by Commerce in the anti-circumvention inquiry on aluminum wire and cable ("AWC") from China with respect to Vietnam.  The contested final determination covers entries of subject AWC from China during the period of inquiry ("POI") from November 1, 2018, through September 30, 2023.

Commerce published its contested final determination in the Federal Register on January 27, 2025.  *Aluminum Wire and Cable From the People's Republic of China: Final Negative Scope Ruling and Final Affirmative Determination of Circumvention With Respect to the Socialist Republic of Vietnam*, 90 Fed. Reg. 8,196 (Jan. 27, 2025) (P.R. 203) ("*Final Determination*").  Commerce's final determinations, findings, and conclusions are set out in the issues and decision memorandum for the final determination.  *Issues and Decision Memorandum for the Final Results of the Scope Ruling and Circumvention Inquiry of the Antidumping and Countervailing Duty Orders on Aluminum Wire and Cable from the People's Republic of China with Respect to the Socialist Republic of Vietnam* (Jan. 17, 2025) (P.R. 202) *("Final Decision Mem.").*

### B.    Issues of Law and Fact Presented

1. Whether the Department's determination to apply facts otherwise available with an adverse inference ("adverse facts available" or "AFA") to Tanghenam, and thus bar it from participating in the Department's certification program, was unsupported by substantial evidence or otherwise contrary to law.

1

Case 1:25-cv-00049-JAL     Document 29     Filed 07/21/25     Page 8 of 36
Public Version
Business Proprietary Information in Single Brackets Removed or Ranged

2. Whether the Department's practice in anti-circumvention proceedings to bar respondents who receive AFA from its certification program in its entirety exceeds the Department's authority and is contrary to law.

### C.     Reasons for Contesting the Final Results

Plaintiff contests the Final Determination because the Department's factual and legal conclusions are unsupported by substantial evidence on the record and not in accordance with law. Specifically, Commerce ignored record evidence demonstrating that Tanghenam has the capability to trace AWC inputs to their country of origin when applying AFA. Furthermore, Commerce's analysis was unsupported by substantial evidence because while it accepted all of Tanghenam's minor corrections during verification, it used those very same minor corrections as a justification for the application of AFA.

Plaintiff also contests the Department's practice of declaring respondents ineligible for certification programs when AFA is applied during anti-circumvention proceeding. This practice is unlawful because it exceeds the Department's authority and is arbitrary and capricious.

### D.     Request for Court Order and Relief Sought

Tanghenam respectfully requests that the Court rule that (1) the Department's application of AFA on to Tanghenam was unsupported by substantial evidence and contrary to law, and (2) that the Department's practice of denying all respondents who receive AFA the ability to participate in certification programs, no matter the scenario, as arbitrary and capricious and contrary to law. In so finding, the Court should remand the Final Determination to Commerce and instruct the agency to consider all record evidence in accordance with law in determining whether it is appropriate to apply AFA given the facts on the record. The Court should also instruct Commerce to allow Tanghenam to participate in its certification program.

### E.    Jurisdiction and Standard of Review

The Court exercises jurisdiction in this matter under 28 U.S.C. § 1581(c), pursuant to which the Court reviews actions commenced under section 516A of the Tariff Act of 1930, as amended ("Tariff Act"), 19 U.S.C. § 1516a, as an action contesting a final determination that Commerce issues to conclude an anticircumvention inquiry. *See id.* § 1516a(a)(2)(B)(vi).

The Court will hold unlawful agency determinations that are "unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1). Substantial evidence refers to "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *SKF USA, Inc. v. United States*, 537 F.3d 1373, 1378 (Fed. Cir. 2008) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

Further, "Courts look for a reasoned analysis or explanation for an agency's decision as a way to determine whether a particular decision is arbitrary, capricious, or an abuse of discretion." *Wheatland Tube Co. v. United States*, 161 F.3d 1365, 1369 (Fed. Cir. 1998). "{A}n agency action is arbitrary when the agency offers insufficient reasons for treating similar situations differently," *SKF USA Inc. v. United States*, 263 F.3d 1369, 1382 (Fed. Cir. 2001), and "{a}n abuse of discretion occurs where the decision is based on an erroneous interpretation of the law, on factual findings that are not supported by substantial evidence, or represent an unreasonable judgment in weighing relevant factors." *WelCom Prods., Inc. v. United States*, 36 C.I.T. 1336, 1341, 865 F. Supp. 2d 1340, 1344 (2012).

## **STATEMENT OF FACTS**

In December 2019, Commerce published antidumping and countervailing duty orders on AWC from China. *Aluminum Wire and Cable From the People's Republic of China: Antidumping Duty and Countervailing Duty Orders*, 84 Fed. Reg. 70,496 (Dec. 23, 2019) (collectively, the "Orders").

On October 19, 2023, Commerce initiated scope and circumvention inquiries on AWC from China to determine whether imports of AWC completed in Vietnam using inputs manufactured in China are covered by the Orders. *Aluminum Wire and Cable from the People's Republic of China: Initiation of Scope and Circumvention Inquiries of the Antidumping Duty and Countervailing Duty Orders,* 88 Fed. Reg. 72,041 (P.R. 26) (Oct. 19, 2023).

Commerce selected Tanghenam as a mandatory respondent in this proceeding. Commerce Letter: Respondent Selection (C.R. 20) (P.R. 73) (Feb. 12, 2024). Tanghenam is a Vietnamese producer of AWC. *See* Initial Questionnaire Response (C.R. 21-106) (P.R. 98) (March 21, 2024), at 2 ("IQR"). It has a single production facility located in Vietnam. *Id.* at 9. Tanghenam exports AWC to certain foreign markets, including the United States. *Id.* at 2.

Throughout the circumvention proceeding, Tanghenam cooperated and submitted all requested information in a timely manner. First, on March 21, 2024, Tanghenam submitted its initial questionnaire response. *See id.* In this questionnaire response, Tanghenam reported that it purchases inputs for the manufacture of AWC both domestically in Vietnam and from other countries including China. *Id.* at 2, 10. Tanghenam provided a detailed list of its Chinese AWC input suppliers as well as the respective purchase quantities and values. *Id.* at Ex. 16-17. Tanghenam also provided month-by-month details on the amounts purchased from each Chinese supplier and the date of initial shipment from each Chinese supplier, *id.* at Ex. 17, as well as sample purchase contracts, purchase orders, purchase negotiation documents, bills of lading, packing lists, and import documentation related to its purchased inputs from Chinese suppliers, *id.* at Ex. 18.

On March 28, 2024, Tanghenam timely submitted its Factors of Production ("FOP") questionnaire response, which included Tanghenam's FOP data. Factors of Production

Public Version
Business Proprietary Information in Single Brackets Removed or Ranged

Questionnaire Response (C.R. 120-131) (P.R. 104) (Mar. 28, 2024) ("FOP Submission"), at Ex. 33.  In this data, Tanghenam identified the country of origin of the inputs that it had purchased from Chinese suppliers on a product-specific basis.  *Id.* at 1, Ex. 33.

On May 24, 2024, Tanghenam timely submitted a supplemental questionnaire response. Response to Supplemental Questionnaire (C.R. 150-198) (P.R. 142-146) (May 24, 2024) ("SQR"). In the supplemental response, Tanghenam provided additional detailed information about the AWC inputs purchased from the previously-identified Chinese suppliers. *Id.* at 5 & Ex. S9. Tanghenam also revised its FOP data, including with respect to certain Chinese inputs. *Id.* at Ex. S10.

On August 7, 2024, Commerce published its preliminary determinations. *Aluminum Wire and Cable From the People's Republic of China: Preliminary Negative Scope Determinations With Respect to Cambodia, Korea, and Vietnam; Preliminary Affirmative Determinations of Circumvention With Respect to Korea and Vietnam; Preliminary Negative Determination of Circumvention With Respect to Cambodia*; 89 Fed. Reg. 64,406 (P.R. 171) (Aug. 7, 2024) ("*Preliminary Determinations*"). Commerce's preliminary determinations, findings, and conclusions are set out in the preliminary issues and decision memorandum and preliminary analysis memorandum.  *Antidumping Duty and Countervailing Duty Orders on Aluminum Wire and Cable from the People's Republic of China: Preliminary Decision Memorandum for the Scope Inquiry and Preliminary Decision Memorandum for the Circumvention Inquiry with Respect to the Socialist Republic of Vietnam* (P.R. 168) (July 31, 2024) ("*Prelim Decision Mem.*"); *Aluminum Wire & Cable: Tanghenam Cable – Preliminary Analysis Memorandum* ("*Prelim. Analysis Mem.*") (C.R. 216) (P.R. 170) (July 24, 2024).

Case 1:25-cv-00049-JAL     Document 29     Filed 07/21/25     Page 12 of 36
Public Version
Business Proprietary Information in Single Brackets Removed or Ranged

Commerce preliminarily determined that AWC completed by Tanghenam in Vietnam incorporates certain AWC inputs of Chinese-origin and thus was circumventing the Orders. *Prelim. Decision Mem*. at 23-24. Commerce preliminarily found that the inputs purchased from China were a significant portion of the total value of the merchandise Tanghenam exported to the United States. *Id*. at 23. Commerce determined the value of the Chinese AWC inputs by relying on Tanghenam's submitted data (including the FOP data in Exhibit S10) in accordance with Section 781(b)(1)(D) of the Tarriff Act. *See Prelim. Analysis Mem*. at 3.

In the Preliminary Determinations, Commerce established a certification process "that allows parties to attest that specific entries of inquiry merchandise are not subject to suspension of liquidation or the collection of cash deposits . . . because the merchandise was not manufactured using certain inputs from China." *Prelim. Decision Mem*. at 23-24. Commerce published copies of this type of certification and information regarding certification program requirements in the Federal Register. *Id*. Thus, this certification process enabled importers and exporters of AWC from Vietnam to establish that specific entries of AWC from Vietnam were not manufactured with certain Chinese-origin inputs; specifically, "Chinese-sourced aluminum wire rod, aluminum wire strand, or aluminum wire." *Preliminary Determinations*, 89 Fed. Reg. at 64,408. The Federal Register notice spells out the required information that an importer and exporter of AWC from Vietnam must submit to U.S. Customs and Border Protection ("CBP"). *Id*. If an importer and exporter fully satisfy the requirements of this certification process, their specific entries in question are not subject to suspension of liquidation or collection of case deposits pursuant to the anti-circumvention proceeding. *Id*. These certifications are subject to verification by Commerce and CBP. *Id.*

After issuing its Preliminary Determinations, Commerce conducted a verification of Tanghenam and thereafter issued a verification report setting out its findings on November 20, 2024. Verification of the Responses of Tanghenam Electric Wire and Cable Co., Ltd. in the Circumvention and Scope Inquiry on the Antidumping Duty Order on Aluminum Wire and Cable from People's Republic of China (C.R. 381) (P.R. 188) (Nov. 20, 2024) ("Verification Report").

Tanghenam submitted certain minor corrections at the outset of verification. *Id.* at 2-7. Among these corrections, Tanghenam made minor corrections to the country of origin for certain inputs listed in its FOP submission. *See id.* at 4-5, Exhibit VE-1.7 (correcting SQR Ex. S10). Tanghenam explained that when it prepared the questionnaire responses, it "manually" traced the country of origin from transaction documents which recorded the supplier's address. *Id.* at 4. As a result, a few inputs were reported as [        ]-origin because of the supplier's [        ] address.  However, the country of origin for these few items should have been reported as China, not [        ] because the inputs were actually manufactured in China. *Id.* at 4-5.  This issue arose in cases where Tanghenam's supplier location was not the same as the country of origin of the input.  *Id.* at 5.  Tanghenam identified these errors when it conducted electronic research of the company's other records while preparing for the verification. *Id.* Tanghenam timely corrected these errors, and the verification team accepted those corrections. *See id.* at 4-5, Ex. VE-1.7; Minor Corrections Presented at Verification (C.R. 358-362) (P.R. 181) (Oct. 7, 2024); Verification Exhibits (C.R. 363-378) (P.R. 182) (Oct. 9. 2024).

In its verification report, Commerce also identified sample traces of input purchases beyond the [        ] supplier purchases identified in Tanghenam's minor corrections. Verification Report at 21-22.  In so doing, Commerce identified instances in which the source

country reported in Tanghenam's FOP data did not match the country of origin. *Id.* at 22; *see also* FOP Submission at Ex. S10. Again, these were instances in which the location of the supplier's address did not match the country of origin, just as with respect to the minor correction examples described above. *See id.* However, the verification report failed to note that the verification documents that Commerce used to conduct this tracing *did* include the country of the supplier's address *as well as* the correct country of origin. Ex. FVE-8; Verification Report at 23 (noting that Commerce performed tracing of inputs by using verification exhibit VE-8). This was only later acknowledged in the Final Issued and Decision Memorandum. *Final Decision Mem.* at 5, n.23 ("Tanghenam did provide information concerning country of origin at verification.").

After verification, Tanghenam timely filed a case brief and a rebuttal brief. *See* Tanghenam's Case Brief (C.R. 382-383) (P.R. 190) (Dec. 3, 2024); Tanghenam's Rebuttal Brief (C.R. 385) (P.R. 198) (Dec. 16, 2024) ("Tanghenam's Rebuttal Brief").

Petitioner submitted a case brief arguing that the Department should apply total adverse facts available ("AFA") on Tanghenam. Affirmative Case Brief of Encore Wire Corporation (C.R. 384) (P.R. 191) (Dec. 3, 2024). Specifically, Petitioner argued that (1) Tanghenam's minor corrections during verification warranted the application of total AFA, and (2) that Tanghenam should be excluded from the Department's certification regime because it was unable to track and identify the country of origin of its AWC inputs. *Id.* at 3. In response to Petitioner's arguments, Tanghenam argued in its rebuttal brief that the use of AFA with respect to Tanghenam was unwarranted because it did not impede the circumvention inquiry, and it fully cooperated to the best of its ability to comply with all information requests made by Commerce. Tanghenam's Rebuttal Brief at 6-10, 12-13. Furthermore, Tanghenam argued that it

demonstrated the ability to identify and track not only location of its suppliers, but also the country of origin for all inputs used in AWC production and in fact submitted this documentation during verification. *Id.* at 12-14. Tanghenam also explained in detail how it is able to determine both the location of the supplier *and* the country of origin. *Id*. In that regard, Tanghenam pointed out that it can precisely link each material issuance for production to the corresponding purchase transaction, which includes supplier details. Next, Tanghenam identified the details of material purchases by linking them to a material purchase report generated which is generated from its accounting system and obtains the supporting documents related to those transactions. This process allows for the identification of both the supplier's country and the country of origin of input materials as the supporting materials include both locations. *Id.* at 12-15. Thus, Tanghenam argued that there was no record basis on which to apply AFA.

On January 17, 2025, Commerce issued its Final Determination, rejecting Tanghenam's arguments and applying AFA to Tanghenam. *Final Decision Mem.* at 3-13. The Final Determination was published in the Federal Register on January 27, 2025. *Final Determination*, 90 Fed. Reg. at 8,196. Commerce stated that Tanghenam's FOP data was inaccurate with respect to the country of origin because Tanghenam's methodology "erroneously relied on the supplier's address as the determinant of the country of origin, failing to accurately account for the input's actual country of origin." *Final Decision Mem.* at 4. In so finding, Commerce found certain aluminum purchases that were reported as "non-Chinese" (based on the supplier's address) that were produced in China. *Id.* at 5 (citing Verification Report at 22).

Despite this finding, in a footnote, Commerce acknowledged that "Tanghenam did provide information concerning country of origin at verification." *Id.*, at 5, n 23 (citing Tanghenam Rebuttal Brief at 15). However, Commerce found AFA was still warranted because

Business Proprietary Information in Single Brackets Removed or Ranged

"Tanghenam {did} not include a revised database with revised consumption figures based on the country of origin." *Id.* Commerce also applied AFA despite continuing to accept Tanghenam's minor corrections during verification as to country of origin, determining that "application of total AFA to Tanghenam in the final determination based on the corrections it submitted at verification is not warranted." *Id.* at 13.

Finally, Commerce barred Tanghenam from its certification process. Commerce claimed that Tanghenam does not "have a system in place to tie specific inputs to specific exports." *Id.* at 14. On this basis, Commerce concluded that "Tanghenam cannot accurately certify that inputs from China are not used in AWC exported to the United States." *Id.* Commerce thus determined that "Tanghenam cannot participate in the certification process given that Tanghenam uses Chinese-input and could not tie inputs to specific exports." *Id.* In barring Tanghenam from the certification process, Commerce failed to mention or discuss the country of origin data that was provided during verification or the minor corrections on country of origin that were accepted.

This appeal follows.

## **ARGUMENT**

This court should remand the Department's Final Determination for two reasons. First, the application of AFA to Tanghenam was unsupported by substantial evidence and contrary to law. As discussed in further detail below, the Department's analysis in its Final Decision Memorandum ignores timely record evidence submitted by Tanghenam not only showing the correct country of origin for AWC inputs purchased during the relevant period, but also Tanghenam's detailed explanations of its methodology for confirming country of origin. Furthermore, the Department's reasoning in the Final Decision Memorandum is demonstrably inconsistent with respect to its treatment of Tanghenam's minor corrections. Second, the Department's practice of denying a respondent the ability to participate in its certification

program once AFA is applied, irrespective of the facts at hand, exceeds the agency's authority, is

arbitrary and capricious, and is contrary to law.

For these two reasons the Court should find that the Final Determination was

unsupported by substantial evidence and contrary to law and remand to Commerce with

appropriate instructions.

## I.    The Department's Application of AFA to Tanghenam was Unsupported by Substantial Evidence and Contrary to Law

The Department's application of AFA to Tanghenam and its subsequent determination

that Tanghenam is ineligible to participate in the certification program is both unsupported by

substantial evidence and contrary to law.

The Tariff Act of 1930, as amended, (the "Act") permits Commerce to use "facts

otherwise available" in reaching determinations, but only if it meets certain threshold

requirements specified in the statute. *See* 19 U.S.C. § 1677e(a). This includes, *inter alia*, a

finding that: (1) "necessary information is not available on the record"; or (2) that an interested

party "withholds information" that has been requested, which "significantly impedes a

proceeding," or otherwise provides information that "cannot be verified." *Id.* The statute also

mandates that Commerce "shall not decline to consider information that is submitted by an

interested party and is necessary to the determination" if the information is submitted by the

deadlines, can be verified, is not incomplete, and can be used without difficulties. 19 U.S.C.

§ 1677m(e).

Here, the use of total adverse facts available with respect to Tanghenam was entirely

unwarranted.  First, Tanghenam demonstrated in its minor corrections to Commerce that it is

able to trace the correct country of origin for AWC inputs, including in cases when the country

of a supplier's address is different than an input's country of origin.  Second, there is no gap in

11

the record allowing Commerce to make an AFA finding because the correct country of origin is available on the record for all inputs. Third, the Department's determination that Tanghenam is ineligible for the certification process – to the extent such a determination is permissible (*see* Part II below) – is premised upon findings that are contrary to record evidence.

**1.    Tanghenam Demonstrated its Ability to Trace the Country of Origin of AWC Inputs**

The Department's application of AFA to Tanghenam and its subsequent finding that Tanghenam cannot participate in the certification program is unsupported by substantial evidence. Indeed, the record evidence squarely contradicts Commerce's underlying finding that "Tanghenam does not have a system in place to tie specific inputs to specific exports". *Final Decision Mem.* at 14.

In the Final Decision Memorandum, Commerce stated that "{a}t verification, Commerce found that information Tanghenam submitted in Exhibit S-10 of its questionnaire response {i.e., Tanghenam's revised FOP data} contained inaccurate information regarding the country of origin for inputs used in the production of AWC." *Id.* at 4. Commerce further explained that "Tanghenam manually tracked the source of each input and compared each transaction to its receipt then utilized an automated system to file country of origin data," and that "this system erroneously relied on the supplier's address as the determinant of the country of origin, failing to accurately account for the input's actual country of origin." *Id.* (citing Verification Report at 4-5 and Ex. S-10).

In making this finding, Commerce cites to and relies on Tanghenam's minor corrections that were submitted, and accepted, at verification. *See id.* (citing Verification Report at 4-5). That is, Tanghenam made minor corrections to the country of origin for certain inputs listed in its FOP submission and these corrections were accepted by the verification team. Verification

Case 1:25-cv-00049-JAL     Document 28     Filed 07/21/25     Page 19 of 36
Public Version
Business Proprietary Information in Single Brackets Removed or Ranged

Report at 4-5, Exhibit VE-1.7 (correcting SQR Ex. S10). Tanghenam explained during verification that when it prepared the questionnaire responses, it "manually" traced the country of origin from transaction documents which recorded the supplier's address. *Id*. at 4. As a result, a few inputs were reported as [          ]-origin according to the supplier's [          ] address. However, the country of origin for these few items should have been reported as Chinese-origin because they were produced in China. *Id.* at 4-5. This issue thus arose only in instances where Tanghenam's supplier location differed from the origin of the input. *Id.* at 5. Tanghenam itself found these errors when it conducted electronic research of the company's other records when it was preparing for the verification. *Id.* Tanghenam corrected these errors, and the verification team accepted that correction. *See id.* at 4-5, Ex. VE-1.7. By providing the correct country of origin and supplementing its FOP data to account for the inputs that initially had been incorrectly reported as [          ]-origin, Tanghenam demonstrated the precise ability to track and confirm the correct country of origin for its inputs of AWC that Commerce subsequently determined to be lacking.

Therefore, while Commerce states that it "discovered at verification that Tanghenam did not provide information according to the country of origin of the inputs . . . {r}ather it provided information according the location of the supplier," *Final Decision Mem*. at 5, Commerce fails to acknowledge that Tanghenam had in fact — preemptively! — provided the correct country of origin in its minor corrections, Verification Report at 4-5. Furthermore, the Department's finding entirely ignores the fact that Tanghenam explained to Commerce in detail its methodology to

Case 1:25-cv-00049-JAL    Document 28    Filed 07/21/25    Page 20 of 36
Public Version
Business Proprietary Information in Single Brackets Removed or Ranged

arrive at the correct country of origin and that the company would be able to deploy that methodology for all of its input purchases.  *See id.*

Indeed, there is simply no reconciling the Department's statement that Tanghenam did not provide information on the country of origin with its acceptance of the company's minor corrections:

> {The} application of total AFA to Tanghenam in the final determination based on the corrections it submitted at verification ***is not warranted*** (with the exception of the application of AFA in reaching determinations under two sections of the Act, as discussed above in response to Comment 1). ***Commerce accepted the minor corrections as presented and declines to reconsider that decision because the corrections did not result in significant changes to what Tanghenam reported*** in its questionnaire responses and they do not alter Commerce's affirmative circumvention determination.

*Final Decision Mem.* at 13 (emphasis added).  On the one hand, Commerce claims that Tanghenam's incorrect reporting of the country of origin of certain inputs is grounds for AFA. On the other, it claims that these minor corrections do not warrant the application of AFA and "did not result in significant changes to what Tanghenam reported."  *Id.*  Furthermore, the parenthetical exception to Comment 1 in no way carves out the minor correction related to the country of origin.  Instead, Comment 1 is focused on the manner in which Commerce calculated value pursuant to Section 781(b)(2)(E) of the Act.  *Final Decision Mem.* at 7.

Commerce cannot have its cake and eat it too.  Commerce cannot accept Tanghenam's minor corrections while using those very same "minor corrections" as a basis to apply AFA on

Case 1:25-cv-00049-JAL    Document 28    Filed 07/21/25    Page 21 of 36
Public Version
Business Proprietary Information in Single Brackets Removed or Ranged

Tanghenam. Commerce's position is thus internally inconsistent and unsupported by substantial evidence.

### 2. There is No Gap in the Record Allowing the Use of AFA on Tanghenam

Commerce also found that "the necessary information of country of origin for AWC inputs, which is critical in determining the extent and thus, value, of Chinese content in the inquiry . . . is not on the record." *Final Decision Mem.* at 5. This is untrue: the information was indeed on the record; moreover, Tanghenam demonstrated its ability to trace both the address of the supplier in question and the origin of the AWC inputs.

For both of these locations, Tanghenam was able to obtain this information by extracting its inventory movement report from its accounting system. Tanghenam Rebuttal Br. at 12-15. This report details every raw material transaction Tanghenam entered into during the relevant period. By using this report, Tanghenam was able to precisely link each material issuance for production to the corresponding material purchase transaction, which includes supplier information. Subsequently, Tanghenam was able to identify the details of material purchases by linking them to the material purchase report generated from the accounting system and the supporting documents related to those transactions. This process allowed for the identification of both the supplier's country and the country of origin of the input materials. *See id*. at 15. With this methodology, Tanghenam was able to track the country of origin of all AWC inputs, as it explained in its rebuttal brief. In fact, Tanghenam provided this information to Commerce during verification. *Id.* at 13.

Tanghenam demonstrated this process to Commerce when submitted its minor corrections for certain inputs that were incorrectly reported as [          ]-origin due to the supplier's address being different than the country of origin. *See* Verification Report at 4-5.

Business Proprietary Information in Single Brackets Removed or Ranged

Moreover, Tanghenam explained in its rebuttal brief that the purchase ledgers it provided at Verification Exhibit FVE-8 included the correct country of origin for all input purchases, including the additional instances of the supplier's address not lining up with the country of origin which Commerce identified in the Verification Report. Tanghenam's Rebuttal Brief at 13-14; Verification Report at 22. Each of these ledgers included a column labeled 'origin' which indicated that country of origin of each of the inputs. Tanghenam's Rebuttal Brief at 13-14. These ledgers conclusively demonstrated that not only does Tanghenam have the capability to provide the correct country of origin in its input materials, but that it actually provided this information to the Department, which was available to it at verification. *See id.* Indeed, Tanghenam's rebuttal brief included a chart which showed that these ledgers included the correct country of origin of the inputs that Commerce identified in the verification report. *Id.* at 14. A reproduction of the chart follows below for the Court's convenience:

| [ ] | [ ] | [ ] | [ ] | [ ] | [ ] | [ ] |
|---|---|---|---|---|---|---|
| [ ] | [ ] | [ ] | [ ] | [ ] | [ ] | [ ] |
| [ ] | [ ] | [ ] | [ ] | [ ] | [ ] | [ ] |
| [ ] | [ ] | [ ] | [ ] | [ ] | [ ] | [ ] |
| [ ] | [ ] | [ ] | [ ] | [ ] | [ ] | [ ] |

Accordingly, Tanghenam's purchase ledgers, provided during verification, had clearly included the country of origin for materials. Thus, Tanghenam demonstrated its ability to track

Case 1:25-cv-00049-JAL    Document 28    Filed 07/21/25    Page 23 of 36
Public Version
Business Proprietary Information in Single Brackets Removed or Ranged

the origin of inputs of AWC and provided the correct country of origin during verification, and the record reflected that fact.

Under 19 U.S.C. §§ 1677e(a) and (b), before Commerce can apply facts available, let alone AFA, Commerce must, pursuant to 19 U.S.C. § 1677m(d), actually request the information that it considers necessary or which it has deemed a respondent to have withheld or otherwise failed to provide under one of the four sub-sections of 19 U.S.C. § 1677e(a)(2). In other words, there must be a "gap" in the record due to a respondent's failure to provide information requested. This Court has consistently found that the application of AFA is unsupported by substantial evidence and contrary to law when Commerce fails to identify a "gap."

For instance, in *Celik Halat Ve Tel Sanayi A.S. v. United States*, this Court found that the Department's application of AFA was unsupported by substantial evidence because a respondent's late submission of the public version of a questionnaire response did not have any new information that was "withheld" from Commerce. 557. F. Supp. 3d 1363, 1372-73 (Ct. Int'l Trade 2022). The Court reasoned that "Celik Halat did not withhold information" from Commerce by filing a public version of a document late, because the only new "information" not already available to Commerce was the final bracketing of confidential information. *Id.* All of the other information in the questionnaire was submitted when Celik Halat timely filed the BPI version of the questionnaire under the one-day lag rule. *Id.* Thus, because there was no missing information or a gap in the record, the Court concluded that the Department's application of AFA in this instance was unsupported by substantial evidence.

Additionally, in *Foshun Shunde Yongjian Housewares & Hardware Co. v. United States*, Commerce found that a respondent failed to cooperate to the best of its ability in responding to Commerce's questionnaires regarding its factors of production and sales. Based on that AFA

Case 1:25-cv-00049-JAL    Document 29    Filed 07/21/25    Page 24 of 36
Public Version
Business Proprietary Information in Single Brackets Removed or Ranged

finding, Commerce denied separate-rate status to the respondent, subjecting it to the China-wide rate. *Foshun Shunde Yongjian Housewares & Hardware Co. v. United States*, No. 10-00059 2011 Ct. Int'l Trade LEXIS 123 (Ct. Int'l Trade, Oct. 12, 2011) at *6. The Court held that the Department's use of AFA to deny the respondent separate-rate status was not justified, stating that "Commerce's application of AFA to deny separate-rate status to Foshan Shunde must be remanded because it is not based on record evidence specific to the question of whether the company is subject to state control." *Id.* at *47. The Court went on to hold that:

> …the Department may only resort to AFA when it finds that use of facts otherwise available under 19 U.S.C. § 1677e(a) is permitted, and it determines that a respondent has failed to cooperate to the best of its ability. In this case, however, the Department has made no finding that Foshan Shunde's questionnaire responses regarding government control were in any way deficient. In other words, it is not known if there existed a "gap" in the record concerning Foshan Shunde's separate rate status. Because this fact is an antecedent requirement to Commerce's application of AFA, it was contrary to law for the Department to apply AFA to this determination.

*Id*. at *48. So too here.  In this case, there is no "gap" in the record concerning Tanghenam's ability to identify the origin of inputs.  To the contrary, the record establishes (1) Tanghenam's ability to identify the error in the country of origin for certain inputs purchased from [          ] suppliers which were submitted and accepted as minor corrections, and (2) Tanghenam's provision of the actual/corrected country of origin for any additional instances in which the suppliers address did not correspond to the country of origin in verification exhibit FVE-8.  In short, the correct country of origin for inputs was available on the record, and Tanghenam demonstrated it is able to identify the correct country of origin for inputs during verification.

The Final Decision Memorandum declines to address these points.  First, the Final Decision Memorandum's claim that "Tanghenam did not provide information according to the

Case 1:25-cv-00049-JAL    Document 28    Filed 07/21/25    Page 25 of 36
Public Version
Business Proprietary Information in Single Brackets Removed or Ranged

country of origin of the inputs it consumed" and that "necessary information of country of origin for AWC inputs . . . is not on the record," *Final Decision Mem.* at 5, fails to address that Tanghenam provided the correct country of origin for certain inputs and that those minor corrected were accepted, Verification Report at 3-5.  In explaining these corrections, Tanghenam provided information not only on how it mistakenly reported the country of origin as the supplier's address when these were different, but also information on how Tanghenam corrected this mistake and was able to confirm and provide to Commerce the correct country of origin.  *See id.*

Second, the Final Decision Memorandum fails to substantively address the argument raised in Tanghenam's rebuttal brief that the correct countries of origin for all inputs were provided to Commerce at verification.  Tanghenam Rebuttal Br. at 12-15.  As discussed above, the purchase ledgers provided to Commerce at Verification Exhibit FVE-8 including a column which states "origin" that provides the correct origin of each of the input purchases Commerce identified.  *Id.*  This information is located in the very exhibit Commerce used to trace input purchases during verification.  *See* Verification Report at 23.

Tucked away in a somewhat grudging footnote, Commerce does acknowledge that "Tanghenam did provide information concerning country of origin at verification."  *Final Decision Mem.* at 5, n.23.  It is only in this footnote where perhaps the Department's reasoning for AFA is explained in different terms: while acknowledging that the country of origin for Tanghenam's inputs was indeed provided at verification, Commerce notes that this "information does not include a revised database with revised consumption figures based on country of origin."  *Id.*  Thus, it appears that the Department's actual bone of contention is not that Tanghenam did not provide the correct country of origin, but that certain of this data were not

Case 1:25-cv-00049-JAL     Document 28     Filed 07/21/25     Page 26 of 36
Public Version
Business Proprietary Information in Single Brackets Removed or Ranged

incorporated into the FOP database.  This is particularly puzzling given Commerce's determination that the nature of the alleged errors was insufficient to impact the fundamental question at issue in the proceeding, namely whether the cable produced in Vietnam using Chinese wire was circumventing the Chinese cable order.  *Final Decision Mem.* at 13. To the extent Commerce itself determined that the wire origin issues were not sufficiently impactful to impact its determination on that score, then it is somewhat mystifying why the lack of an updated FOP database (which Commerce could of course have requested and did not) was in any way relevant. Commerce provides no treatment of this problem.

Even if this Court agrees that this is a valid reason to apply AFA, it does not support the Department's related finding that Tanghenam is ineligible to participate in the certification process.  Any alleged lack of necessary FOP data does not impact Tanghenam's ability to trace the origin of its inputs, as discussed in further detail below.

### 3.     The Department's Finding that Tanghenam Cannot Participate in the Certification Process in Unsupported by Substantial Evidence

As part of its application of total AFA on Tanghenam, Commerce found that Tanghenam is ineligible for the certification process.  *Final Decision Mem.* at 14.  This finding is unsupported by substantial evidence because it is premised on findings that are contrary to record evidence.

The Department's basis for declaring that Tanghenam is ineligible for the certification process is that "Tanghenam does not have a system in place to tie specific inputs to specific exports," and because of this, "Tanghenam cannot certify that inputs purchased from China are not used in AWC exported into the United States."  *Id.*  This is entirely wrong. The Department's support for this finding comes from a single line in the verification report: "All finished goods

20

are then transported into the finished goods inventory. Once in finished goods inventory, there is no way to track which products go to sales." *Id.* (quoting Verification Report at 24).

But the record belies these findings, as Tanghenam clearly demonstrated to Commerce during verification that it has a system in place that can accurately trace the origin of all inputs. As discussed above, Tanghenam explained the error it found in its FOP database when it submitted minor corrections to Commerce with respect to certain [          ] supplier.  In so doing, Tanghenam demonstrated not only that it had the capability to find the correct country of origin of inputs, but that it also had this information available in its systems. *See* Verification Report at 4-5.

Moreover, Tanghenam actually provided the correct country of origin for all additional inputs that Commerce highlighted in its verification report.  Verification Exhibit FVE-8. Commerce even acknowledges this in its Final Decision Memorandum:

> While Tanghenam did provide information concerning country of origin at verification, that information does not include a revised database with revised consumption figures based on country of origin. Moreover, while Tanghenam argues in its case brief that it can provide the revised information now, it is too late in this proceeding for a revised database.

Verification Report at 5, n.23.  Thus – Commerce itself acknowledges that the information is available on the record.  Even if this Court agrees that the failure to provide a revised database is grounds for application of AFA, Commerce's acknowledgement definitively shows that the Department's refusal to allow Tanghenam to participate in the certification process is squarely at odds with record evidence.  Commerce cannot claim that "Tanghenam does not have a system in place to tie specific inputs to specific exports," and because of this, "Tanghenam cannot certify that inputs purchased from China are not used in AWC exported into the United States," while at

Case 1:25-cv-00049-JAL    Document 29    Filed 07/21/25    Page 28 of 36
Public Version
Business Proprietary Information in Single Brackets Removed or Ranged

the same time admitting that the information causing this conclusion is actually on the record. *Final Decision Mem.* at 14. This is grounds for remand.

## II.   <u>The Department's Refusal to Allow Tanghenam to Certify any Entries Is Unlawful</u>

The Department's practice of barring certain respondents from participating in its certification program is contrary to law and exceeds the Department's authority, both facially and as applied to the facts before the Court in this instance. This Court should thus find that this practice is contrary to law.

Here, as it typically does in anti-circumvention proceedings, the Department instituted a certification program, "that allows parties to attest that specific entries of inquiry merchandise are not subject to suspension of liquidation or the collection of cash deposits . . . because the merchandise was not manufactured using certain inputs from China." *Prelim. Decision Mem.* at 24. Thus, this process enabled importers and exporters of AWC from Vietnam to establish that specific entries of AWC from Vietnam was not manufactured with certain Chinese-origin inputs; specifically, "Chinese-sourced aluminum wire rod, aluminum wire strand, or aluminum wire." *Preliminary Determinations*, 89 Fed. Reg. at 64,408. The Federal Register notice spells out the required information that an importer and exporter of AWC from Vietnam must submit to U.S. Customs and Border Protection ("CBP"). *Id.* If an importer and exporter fully satisfied the requirements of this certification process, their specific entries in question would not be subject to suspension of liquidation or collection of case deposits pursuant to the anti-circumvention proceeding. *Id.* These certifications were subject to verification by Commerce and CBP. *Id.*

However, Tanghenam, and all parties that receive AFA, are completely barred from this process under the Department's practice in anti-circumvention proceedings. *Final Decision Mem.* at 14. As a result, Commerce will instruct CBP to collect duties at the full AFA rate on

22

Tanghenam's AWC imports from Vietnam, regardless of any documentation that Tanghenam is able to provide or the fact related to any specific entries.  This has been a consistent practice of Commerce in anti-circumvention proceedings.  *See Issues and Decision Memorandum for the Final Affirmative Circumvention Determination of the Antidumping Duty Order on Light-Walled Rectangular Pipe and Tube from the Republic of Korea*, A-580-859 (Nov. 2, 2023), at Comment 4 (explaining that "Commerce's decision to bar an uncooperative respondent from the certification process is an agency practice.").

This practice exceeds the Department's authority and is contrary to law.  Importantly, Commerce's determination requires Tanghenam to report that the country of origin for all subject imports is China, even in cases where Tanghenam has sufficient documentation to definitively show that the country of origin of certain entries is Vietnam. This is arbitrary and capricious and is outside the bounds of the Department's authority, because it perpetrates a clear fiction in that it obliges Tanghenam to improperly declare the country of origin of its entries regardless of the underlying sourcing and actual origin of the components.

Moreover, Commerce's finding is contrary to law by requiring Customs and Border Protection ("CBP") to be complicit in the fiction that Tanghenam's entries are Chinese-origin even where Tanghenam can demonstrate otherwise on an entry-by-entry basis.  CBP is the agency responsible for protecting and facilitating international trade.  This includes the assessment and collection of duties, taxes, and fees incident to international traffic and trade – which by nature and law includes determining & validating the declared country of origin for entries.  The marking statute, section 304, Tariff Act of 1930, as amended, 19 U.S.C. § 1304, provides that "every article of foreign origin . . . imported into the United States shall be marked in a conspicuous place as legibly, indelible, and permanently as the nature of the article (or

container) will permit in such as manner as to indicate the country of origin to an ultimate

purchaser in the United States the English name of the country of origin of the article. . . ."  Part

134 of the Customs Regulations, 19 C.F.R. § 134, implements the country of origin marking

requirements.  However, the Department's practice runs afoul of the marking statute and

Custom's regulations on assessing country of origin by requiring Tanghenam to report all

Vietnamese AWC entries as Chinese-origin, even in cases where the AWC demonstrably has

zero percent Chinese-origin content.  It also requires CBP to concur with the proposition that the

country of origin for such imports is China, even if there is a mountain of evidence pointing to

the contrary.  Thus, Commerce's findings that CBP must find that Tanghenam's entries are

Chinese origin even where that is demonstrably incorrect run afoul of the marking statute and

CBP's responsibility to correctly assess duties.

In past proceedings, Commerce has reasoned that "barring an uncooperative respondent

from participating in certification is necessary to encourage cooperation with Commerce's

inquiry."  *Issues and Decision Memorandum for the Final Affirmative Circumvention*

*Determination of the Antidumping Duty Order on Light-Walled Rectangular Pipe and Tube from*

*the Republic of Korea*, A-580-859 (Nov. 2, 2023), at Comment 4.  While Commerce has

discretion in enforcing anti-circumvention proceedings, it cannot do so in a manner that exceeds

its statutory authority, as this practice does.  In *AMS Associates Inc. v. United States*, 737 F.3d

1338, 1343-44 (Fed. Cir. 2013) (overruled on other grounds), the Court of Appeals for the

Federal Circuit found that Commerce exceeded its authority by ordering CBP to retroactively

suspend liquidation and collect estimated antidumping duties entered prior to scope review.  The

same logic applies here.  Commerce cannot order CBP to collect duties in a manner which

exceeds its statutory authority, nor can it force CBP to look the other way with respect to demonstrably incorrect origin declarations.

Nonetheless, Commerce has claimed in prior proceedings that barring parties from participating in a certification program "is not only necessary to induce cooperation, but it has a firm basis in Commerce's practice and has been affirmed by the CIT." *Issues and Decision Memorandum for Circumvention and Scope Inquiries of the Antidumping Duty and Countervailing Duty Orders on Certain Hardwood Plywood Products from the People's Republic of China*, A-570-051, C-570-052 (July 14, 2023), at Comment 7. This justification, too, must fail. The sole Court of International Trade case Commerce relies on in making such a claim is *Max Fortune Indus. Co. v. United States*, 37 C.I.T. 549 (2013).

*Max Fortune* dealt with a circumvention proceeding investigating whether tissue paper products manufactured in Vietnam using Chinese-origin jumbo rolls were circumventing the antidumping duty order on certain tissue paper products from China. *Id.* at 551-52. There, the respondent failed to provide accurate and verifiable information regarding whether or not it had imported Chinese-origin jumbo rolls for use in its production of tissue paper products in Vietnam. *Id.* In light of the company's failure to provide necessary records, and to prevent evasion of the AD order, Commerce applied AFA to respondent's exports and, as a result did not allow the respondent to certify the origin of its exports. *Id.* at 551. The Court ultimately found that Commerce adequately explained its reasoning for refusing to institute a certification program for a noncooperative respondent. Specifically, the Court reasoned that the respondent was "unable to provide any documentation that showed how it used the Chinese-origin materials so as to enable Commerce to determine when it stopped using materials of Chinese origin to

25

Public Version
Business Proprietary Information in Single Brackets Removed or Ranged

produce products for sale in the United States" and that the company had "gaps in its inventory records." *Id.* at 557.

The reasoning in *Max Fortune* does not apply here. First, the facts before the Court in this action are distinguishable. Importantly, there are no gaps in the record as to the country of origin of the input materials used by Tanghenam, as discussed in detail above in Section I. The *Max Fortune* court correctly analyzed whether there were gaps in the record before deciding whether AFA was reasonable. *Id.* Because there are no gaps in the record here, the Court must come to a different conclusion in this case.

Second, the plaintiff in *Max Fortune* did not bring the same facial challenge to the Department's practice as Tanghenam is in this case. Instead, Plaintiff argued that Commerce improperly departed from its past practice of providing certifications in other circumvention proceedings; not that the refusal to certify exceeding Commerce's authority as Tanghenam argues here. *Id.* at 561.

Furthermore, while the *Max Fortune* Court found that, in assessing the specific facts before it in that case, "Commerce's action is remedial, not punitive, and is a proper exercise of its charge to prevent evasion of the antidumping duty order." *Id.* at 562. However, the Department's practice cannot survive a facial challenge because it, by definition, requires both the Department and CBP to ignore the facts before them.

Case 1:25-cv-00049-JAL    Document 29    Filed 07/21/25    Page 33 of 36
Public Version
Business Proprietary Information in Single Brackets Removed or Ranged

## CONCLUSION

For these reasons discussed in this brief, the Court should rule in accordance with the argument contained herein.  Thus, Tanghenam respectfully requests this Court to remand this case to Commerce with the appropriate instructions.

Respectfully submitted,

*/s/ Weronika Bukowski*

Alexander H. Schaefer
Weronika Bukowski
Pierce Lee

Crowell & Moring LLP
1001 Pennsylvania Ave., N.W.
Washington, D.C.  20004
(202) 624-2773
aschaefer@crowell.com

*Counsel for Plaintiff*

UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE:  THE HONORABLE JOSEPH A. LAROSKI, JR., JUDGE

| | |
|---|---|
| TANGHENAM ELECTRIC WIRE & CABLE CO., LTD.,<br><br>    Plaintiff,<br><br>    v.<br><br>UNITED STATES,<br><br>       Defendant,<br><br>   and<br><br>ENCORE WIRE CORP.,<br><br>       Defendant-Intervenor. | Court No. 25-00049 |

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to U.S. Court of International Trade Rule 2(b)(2) of the Court's Standard Chambers Procedures, undersigned counsel for Plaintiff, certifies this brief complies with the Court's type-volume limitation rules.  This brief contains no more than 7,800 words and therefore does not exceed 14,000 words.  This brief also complies with all typeface and margin requirements.

Respectfully submitted,

*/s/ Weronika Bukowski*
Weronika Bukowski

*Counsel to Plaintiff*

UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE:  THE HONORABLE JOSEPH A. LAROSKI, JR., JUDGE

| | |
|---|---|
| TANGHENAM ELECTRIC WIRE & CABLE CO., LTD., | |
| Plaintiff, | |
| v. | Court No. 25-00049 |
| UNITED STATES, | |
| Defendant, | |
| and | |
| ENCORE WIRE CORP., | |
| Defendant-Intervenor. | |

**{PROPOSED} ORDER**

Upon consideration of Plaintiff's Rule 56.2 Motion for Judgment on the Agency Record, and all other papers and proceedings had herein, it is hereby:

ORDERED that Plaintiff Tanghenam Electric Wire & Cable Co., Ltd.'s Motion for Judgment on the Agency Record be, and hereby is, is granted; and it is further

ORDERED that the U.S. Department of Commerce's final determination in the anti-circumvention inquiry on aluminum wire and cable ("AWC") from China with respect to Vietnam, *Aluminum Wire and Cable From the People's Republic of China: Final Negative Scope Ruling and Final Affirmative Determination of Circumvention With Respect to the Socialist Republic of Vietnam*, 90 Fed. Reg. 8,196 (Jan. 27, 2025), and associated decision and analysis memoranda, are remanded for the agency to reconsider and revise its determination consistent with the Court's opinion in this matter.

Dated: _____,2025
     New York, New York

_____
Honorable Joseph A. Laroski, Jr., Judge