**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**

BEFORE:  THE HONORABLE JOSEPH A. LAROSKI, JR., JUDGE

| | |
|---|---|
| TANGHENAM ELECTRIC WIRE & CABLE CO., LTD | ) ) ) |
| | ) |
| Plaintiff, | ) ) |
| | ) |
| v. | ) ) |
| | ) |
| UNITED STATES, | ) ) |
| | ) |
| Defendant, | ) ) |
| | ) |
| and | ) ) |
| | ) |
| ENCORE WIRE CORP., | ) ) |
| | ) ) |
| Defendant-Intervenor. | ) ) |

**PUBLIC VERSION**
Contains redacted business proprietary information at pages 5, 6, 7, 17

Court No. 25-00049

**DEFENDANT'S RESPONSE TO PLAINTIFF'S**
**MOTION FOR JUDGMENT ON THE AGENCY RECORD**

BRETT A. SHUMATE
Assistant Attorney General

PATRICIA M. McCARTHY
Director

CLAUDIA BURKE
Deputy Director

OF COUNSEL:

DANIELLE COSSEY
Attorney
Office of the Chief
Counsel for Trade Enforcement
  & Compliance
U.S. Department of Commerce

BLAKE COWMAN
Trial Attorney
Commercial Litigation Branch
United States Department of Justice
P.O. Box 480 | Ben Franklin Station
Washington, DC 20044
(202) 353-2494 | Blake.Cowman@usdoj.gov

September 8, 2025

Attorneys for the United States

**TABLE OF CONTENTS**

STATEMENT PURSUANT TO RULE 56.2 ........................................................................2

    I.    Administrative Determination Under Review .........................................2

    II.    Statement of the Issues..........................................................................2

STATEMENT OF FACTS .............................................................................................2

    I.    Legal Framework For Circumvention Inquiries ...................................2

    II.    Commerce's Circumvention Inquiry .....................................................5

    III.    Commerce's Final Determination..........................................................8

SUMMARY OF THE ARGUMENT .............................................................................11

ARGUMENT ..............................................................................................................12

    I.    Standard Of Review............................................................................12

    II.    Legal Framework for AFA ..................................................................13

    III.    Commerce's Application of AFA to Tanghenam Is Supported By
        Substantial Evidence and Otherwise In Accordance With Law ...........14

        A.    Commerce Correctly Applied AFA In Evaluating The
            Relative Value Of Tanghenam's AWC Inputs ...........................14

        B.    Tanghenam's Arguments To The Contrary Are Unavailing ...................16

    IV.    Commerce's Determination That Tanghenam Is Ineligible To
        Certify Entries Is Supported By Substantial Evidence and In
        Accordance With Law .........................................................................20

        A.    Commerce Correctly Determined Tanghenam Lacks The
            Ability To Trace Inputs From Various Countries Of Origin
            To Specific Sales Of Finished Goods .........................................20

        B.    Tanghenam's Arguments To The Contrary Are Unavailing ...................21

CONCLUSION............................................................................................................25

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                                                      **Page(s)**

*ABB Inc. v. United States*,
    355 F. Supp. 3d 1206 (Ct. Int'l Trade 2018)..................................................................... 22

*Aetna Life Ins. Co. v. Haworth*,
    300 U.S. 227 (1937) ............................................................................................................ 27

*Altx, Inc. v. United States*,
    370 F.3d 1108 (Fed. Cir. 2004)........................................................................................... 16

*Celik Halat Ve Tel Sanayi A.S. v. United States*,
    557 F. Supp. 3d 1363 (Ct. Int'l Trade 2022)..................................................................... 21

*Essar Steel Ltd. v. United States*,
    678 F.3d 1268 (Fed. Cir. 2012)........................................................................................... 17

*Filippo Fara S. Martino S.p.A. v. United States*,
    216 F.3d 1027 (Fed. Cir. 2000)........................................................................................... 17

*Foshun Shunde Yongjian Housewares & Hardware Co. v. United States*,
    2011 WL 4829947 (Ct. Int'l Trade Oct. 12, 2011) .................................................... 21

*Goodluck India Ltd. v. United States*,
    11 F.4th 1335 (Fed. Cir. 2021)........................................................................................... 18

*Lignite Energy Council v. U.S. EPA*,
    198 F.3d 930 (D.C. Cir. 1999) ............................................................................................ 6

*Max Fortune Indust. Co. v. United States*,
    37 C.I.T. 549 (April 15, 2013) ........................................................................................... 28

*Micron Tech. v. United States*,
    117 F.3d 1386 (Fed. Cir. 1997)........................................................................................... 18

*Mitsubishi Heavy Indus., Ltd. v. United States*,
    275 F.3d 1056 (Fed. Cir. 2001)........................................................................................... 15

*Nan Ya Plastics Corp. v. United States*,
    810 F.3d 1333 (Fed. Cir. 2016)........................................................................................... 22

*Nippon Steel Corp. v. United States*,
    337 F.3d 1373 (Fed. Cir. 2003)........................................................................................... 16

*Sunpreme Inc. v. United States*,
    946 F.3d 1300 (Fed. Cir. 2020)........................................................................................... 15

*United States v. Eurodif S.A.*,
  555 U.S. 305 (2009) ................................................................................................ 15

**Statutes**

19 U.S.C. § 1304 ...................................................................................................... 27

19 U.S.C. § 1677e .............................................................................. 16, 17, 18, 19, 22

19 U.S.C. § 1677j(a)(3) .............................................................................................. 7

19 U.S.C. § 1677j(b) ............................................................................................. 5, 13

19 U.S.C. § 1677j(b)(1) ............................................................................................. 6

19 U.S.C. § 1677j(b)(1)(C) ........................................................................................ 6

19 U.S.C. § 1677j(b)(1)(D) ........................................................................... 12, 13, 24

19 U.S.C. § 1677j(b)(2) ............................................................................................. 6

19 U.S.C. § 1677j(b)(2)(E) ............................................................................ 13, 14, 24, 25

19 U.S.C. § 1677j(b)(3) ............................................................................................. 7

19 U.S.C. § 1677j(b)(D) ........................................................................................... 12

19 U.S.C. § 1677m(d) .......................................................................................... 16, 21

19 U.S.C. § 1677m(e) .......................................................................................... 20, 21

U.S.C. § 1677j(b)(2)(E) ............................................................................................ 12

**Regulations**

19 C.F.R. § 351.226(i) ............................................................................................... 6

19 C.F.R. § 351.226(m)(1) ......................................................................................... 7

19 C.F.R. § 351.228(a)(1) .......................................................................................... 8

**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**

BEFORE:  THE HONORABLE JOSEPH A. LAROSKI, JR., JUDGE

_____
|
TANGHENAM ELECTRIC WIRE &          )
CABLE CO., LTD                      )    **PUBLIC VERSION**
                                    )    Contains redacted business proprietary
     Plaintiff,                     )     information at pages 5, 6, 7, 17
                                    )
     v.                             )
                                    )
UNITED STATES,                      )
                                    )    Court No. 25-00049
     Defendant,                     )
                                    )
and                                 )
                                    )
ENCORE WIRE CORP.,                  )
                                    )
                                    )
     Defendant-Intervenor.          )
_____)

**DEFENDANT'S RESPONSE TO PLAINTIFF'S**
**MOTION FOR JUDGMENT ON THE AGENCY RECORD**

Defendant, the United States, respectfully responds in opposition to the motion for

judgment on the agency record filed by Tanghenam Electric Wire & Cable Co., Ltd.

(Tanghenam or plaintiff), challenging the Department of Commerce's (Commerce's) *Final*

*Determination* of the circumvention inquiry on aluminum wire and cable (AWC) from China

with respect to Vietnam.  *See* ECF No. 28 (Pl. Br.).  Commerce's application of facts otherwise

available with an adverse inference (AFA) and determination that Tanghenam is ineligible to

certify its entries are supported by substantial evidence and otherwise in accordance with law.

The Court therefore should deny plaintiff's motion and enter judgment for the United States.

## STATEMENT PURSUANT TO RULE 56.2

**I.    Administrative Determination Under Review**

Plaintiff challenges certain aspects of Commerce's final determination in the circumvention inquiry on aluminum wire and cable from China with respect to Vietnam. *Aluminum Wire and Cable From the People's Republic of China*, 90 Fed. Reg. 8,196 (Dep't of Commerce Jan. 27, 2025) (P.R. 203) (*Final Determination*), and accompanying Issues and Decision Memorandum (IDM) (P.R. 202).

**II.    Statement of the Issues**

1. Whether Commerce's application of AFA to the relative value of Tanghenam's inputs is supported by substantial evidence and otherwise in accordance with law where Tanghenam failed to provide accurate country of information data for its inputs until verification.

2. Whether Commerce's determination that Tanghenam is ineligible to certify is supported by substantial evidence and otherwise in accordance with law where Tanghenam identifies no record evidence that it is able to trace inputs from various countries of origin to specific sales of finished goods.

## STATEMENT OF FACTS

**I.    Legal Framework For Circumvention Inquiries**

To prevent circumvention of an antidumping duty or countervailing duty order, Commerce may include merchandise completed or assembled in other foreign countries within the scope of the antidumping duty or countervailing duty order, if certain criteria are met. 19 U.S.C. § 1677j(b).  Commerce may do so if:

> (A) {the} merchandise imported into the United States is of the same class or kind as any merchandise produced in a foreign country that is the subject of {an antidumping duty order or countervailing duty order},

> (B) before importation into the United States, such imported merchandise is completed or assembled in another foreign country from merchandise which {is subject to the order or produced in the foreign country subject to the order},
>
> (C) the process of assembly or completion in the foreign country . . . is minor or insignificant,
>
> (D) the value of {the parts or components} . . . is a significant portion of the total value of the merchandise exported to the United States, and
>
> (E) {Commerce} determines that action is appropriate . . . to prevent evasion of such order or finding.

19 U.S.C. § 1677j(b)(1); *see also* 19 C.F.R. § 351.226(i) (explaining that Commerce "may include within the scope of an antidumping or countervailing duty order . . . imported merchandise completed or assembled in a foreign country other than the country to which the order applies{}").

In determining whether the process of assembly or completion in the United States is "minor or insignificant" under 19 U.S.C. § 1677j(b)(1)(C), Commerce considers:

> (A) the level of investment in the foreign country,
>
> (B) the level of research and development in the foreign country,
>
> (C) the nature of the production process in the foreign country,
>
> (D) the extent of production facilities in the foreign country, and
>
> (E) whether the value of the processing performed in the foreign country represents a small proportion of the value of the merchandise imported into the United States.

19 U.S.C. § 1677j(b)(2).  No single factor controls.  *See* Statement of Administrative Action Accompanying the Uruguay Round Agreements Act, 1994 U.S.C.C.A.N. 892 (SAA).  When Congress has prescribed factors but not their relative weight, an agency is granted "a great degree of discretion in balancing them."  *Lignite Energy Council v. U.S. EPA*, 198 F.3d 930, 933

(D.C. Cir. 1999) (holding that the Environmental Protection Agency was granted discretion to balance factors in 42 U.S.C. § 7411(a)(1) because no one factor was controlling).

The statute identifies additional factors to consider in weighing whether to find circumvention. 19 U.S.C. § 1677j(b)(3). Specifically, Commerce "shall take into account such factors as —":

> (A) the pattern of trade, including sourcing patterns,
>
> (B) whether the manufacturer or exporter of the parts or components is affiliated with the person who assembles or completes the merchandise sold in the United States from the parts or components produced in the foreign country with respect to which the {antidumping order} applies, and
>
> (C) whether imports into the United States of the parts or components produced in such foreign country have increased after the initiation of the investigation which resulted in the issuance of such order or finding.

19 U.S.C. § 1677j(a)(3).

Congress intended to "authorize {Commerce} to apply . . . orders in such a way as to prevent circumvention and diversion of U.S. law." Omnibus Trade Act of 1987, Report of the Senate Finance Committee, S. Rep. No. 100-71, at 101 (1987) (S. Rep.); *see also* SAA at 4216 (discussing legislative amendments that address "new circumvention scenarios"). Commerce thus possesses "substantial discretion in interpreting these terms, and invoking these measures, so as to allow it flexibility to apply the provisions in an appropriate matter . . . {and to} use {its} authority "to the fullest extent possible to combat diversion and circumvention of the antidumping and countervailing duty laws." *Id*. at 100. In conducting circumvention inquiries, Commerce considers the most appropriate remedy to address circumvention and prevent the evasion of an order. 19 C.F.R. § 351.226(m)(1). One such remedy, under 19 C.F.R. § 351.226(m)(1)(iv), is the "implementation of a certification requirement" through which Commerce may require importers or other interested parties to maintain, provide, or otherwise

demonstrate compliance with a certification for entries of merchandise into the United States. *See* 19 C.F.R. § 351.228(a)(1).

## II.     Commerce's Circumvention Inquiry

In 2019, Commerce published antidumping and countervailing duty orders on AWC from China. *Aluminum Wire and Cable From the People's Republic of China*, 84 Fed. Reg. 70,496 (Dep't of Commerce Dec. 23, 2019) (collectively, the *Orders*). In October 2023, Commerce self-initiated a scope inquiry to determine whether imports of AWC completed in Vietnam using inputs manufactured in China are covered by the *Orders*. *See Aluminum Wire and Cable from the People's Republic of China*, 88 Fed. Reg. 72,041 (Dep't of Commerce Oct. 19, 2023) (P.R. 26). Concurrently, and relevant to this proceeding, Commerce initiated a circumvention inquiry to determine whether, if not covered by the scope, AWC from Vietnam is nonetheless circumventing the *Orders*. *Id.* Commerce aligned the scope and circumvention proceedings and subsequently selected Tanghenam and one other company as mandatory respondents in the inquiry. *Id.; see also* Respondent Selection Memorandum (Feb. 2, 2024) (P.R. 73) (C.R. 20).

Commerce requested information concerning the country of origin of the inputs used by Tanghenam in AWC production from Vietnam, China, and market countries. *See* Initial Questionnaire at 16 (Mar. 21, 2024) (P.R. 98) (C.R. 21). Tanghenam requested a one-week extension to file a response to question 33—the factors of production (FOP) database that included the origin of inputs—which Commerce granted. *See* Question 33 Extension Request (Mar. 20, 2024) (P.R. 97). Tanghenam provided an FOP database with the requested information, stating that Tanghenam purchases [                    ] from market economy suppliers. *See* Question 33 Response at 3 (Mar. 28, 2024) (P.R. 104) (C.R. 120-130). In response to a further supplemental questionnaire requesting Tanghenam translate this

worksheet, Tanghenam resubmitted its FOP worksheet in Exhibit S10 with additional revisions to correct

[                                        ], which Commerce accepted onto the record.  *See* Supplemental Questionnaire Response (May 24, 2024) (P.R. 142) (C.R. 150).

Commerce published its preliminary determination on August 7, 2024, concluding that AWC completed in Vietnam incorporating certain AWC inputs of Chinese origin is not covered by the scope, but is circumventing the *Orders*.  *Aluminum Wire and Cable From the People's Republic of China*, 89 Fed. Reg. 64,406 (Dep't of Commerce Aug. 7, 2024) (*Preliminary Determination*) (P.R. 171), and accompanying Preliminary Decision Memorandum (P.R. 168).  In the *Preliminary Determination*, Commerce relied on Tanghenam's questionnaire responses to determine that Chinese inputs comprised a significant portion of the value of merchandise exported to the United States and thus this factor of the circumvention criteria was met.  *See* Preliminary Decision Memorandum at 20.

Because Commerce made the circumvention determination on a country-wide basis, it established importer and exporter certifications which allow "parties to attest that specific entries of inquiry merchandise are not subject {to the circumvention determination} because the merchandise was not manufactured using certain inputs from China."  *Id.* at 24.  The required certification includes a statement that the signatory has "direct personal knowledge" that the AWC covered by the certification "does not contain aluminum wire rod, aluminum wire strand, or aluminum wire produced in the People's Republic of China."  *Preliminary Determination* at Appendix 2 (P.R. 171).

Following the *Preliminary Determination*, Commerce verified Tanghenam at its Ho Chi Minh City facilities from October 1, 2024, through October 4, 2024.  *See* Verification Report

(Nov. 25, 2024) (P.R. 188) (C.R. 381).  Before verification, Commerce sent Tanghenam a

verification agenda stating that "verification is not intended to be an opportunity for submission

of new factual information" and Commerce's "acceptance of such information for examination at

verification does not guarantee that {it} will be able to use it for {the} final determination."  *See*

Verification Agenda at 2 (Sept. 21, 2024) (P.R. 178).  At the start of verification, Tanghenam

submitted nine minor corrections to the country of origin for specific inputs, including that "the

source country of [                              ] . . . for [    ] AWC product codes were incorrect and the

country source was [        ] and not [        ], as originally reported."  *See* Verification Report at

3-4.

        During verification, however, Commerce discovered *additional* inaccurate country of

origin reporting—beyond the minor corrections previously submitted by Tanghenam—in

Tanghenam's purchase ledgers.  Commerce traced a total of eight input purchases through

Tanghenam's financial records back to the supplier.  *See Id.* at 21.  These input purchases

included [                          ] as well as [                  ], [                          ], and

[                              ].  *Id.*  In many of these purchases, including for inputs beyond

bobbins and [                          ] for which minor corrections were submitted, the reported

origin of the input did not match the country-of-origin certificate.  *See Id.* at 22 (providing a

chart with the discrepancies); *see also* Pl. Br. 7-8.  Commerce determined that Tanghenam

recorded the country in the supplier's address as the country source, rather than the country of

origin as the source of the material.  *See Id.* at 18.  Commerce also confirmed that, although

reported erroneously, Tanghenam has the ability to track the origin of inputs "by using the

XLOOKUP function in Excel" to locate the address and determine the country of origin of each

input.  *Id.*

Commerce verified Tanghenam's inventory movement report and found that company officials could track "each input related to the production of each finished product," as described above.  *Id.* at 24.   However, Commerce also reported that, once those finished products are placed in the finished goods inventory, "there is no way to track" which "specific finished good is attributed to which sale."  *See id.* at 24.  ("All finished goods are then transported into the finished goods inventory. Once in finished goods inventory, there is no way to track which products go to sales"; "Which specific finished good is attributed to which sale is not directly tracked.").

The petitioner submitted comments on the Preliminary Determination, challenging, among other things, the minor corrections to country of origin input data that Tanghenam submitted during verification.  *See* IDM at 12.

### III.    Commerce's Final Determination

Commerce published the *Final Determination* in the Federal Register on January 27, 2025, in which it continued to find that AWC from Vietnam incorporating certain inputs of Chinese origin is circumventing the *Orders*.  *See generally Final Determination*; IDM. Commerce made two changes in the *Final Determination* to its *Preliminary Determination*: (1) it applied AFA to its determination of the significance of the value of Tanghenam's Chinese inputs factor in its determination of circumvention; and (2) it determined, based on record evidence, that Tanghenam is ineligible to certify based on its inability to tie specific inputs to specific exports.  *See* IDM at 3.

*First*, Commerce relied on AFA, rather than Tanghenam's reporting as it had done in the *Preliminary Determination*, to find that the value of Chinese inputs is a significant portion of the total value of AWC and the value of processing in Vietnam represents a small proportion of the value of AWC.  *See* IDM at 5.  In making this finding, Commerce stated that it "discovered at

verification that Tanghenam did not provide information according to the country of origin of the inputs it consumed. Rather, it provided information according {to} the location of the supplier." *Id.*

Commerce explained that in the minor corrections in which Tanghenam admitted the error for certain product codes, it did not provide "a revised database with revised consumption figures based on country of origin" that would account for all the erroneously reported country of origins for each input. *Id*. at n.23. Commerce also stated that it is "too late in the proceeding for a revised database." *Id.* In applying AFA, Commerce explained that this information "is necessary so that Commerce can calculate the percentage of AWC's value attributable to materials produced in China {19 U.S.C. § 1677j(b)(1)(D)} and the percentage attributable to the processing performed in Vietnam as required by {19 U.S.C. § 1677j(b)(2)(E).}" *Id*. at 5. Thus, Commerce found that necessary information was not on the record and Tanghenam's "erroneous country of origin reporting constitutes withholding information requested by Commerce, failing to provide information by the deadlines, significantly impeding the circumvention inquiry, and providing information that cannot be verified under {19 U.S.C. § 1677(e)(2)(A)-(D)}." *Id*. Moreover, because Tanghenam "acknowledges that it possesses this information and it could have accurately reported the information to Commerce," Commerce determined it failed to cooperate with a request for information to the best of its ability and an adverse inference is warranted. *Id*.

Importantly, Commerce's application of AFA was limited to the determination of whether the value of Chinese inputs is significant in comparison to the value of processing performed in Vietnam under 19 U.S.C. § 1677j(b)(D). *See* IDM at 5 ("{t}herefore for the final determination, Commerce is relying on AFA. . . in determining the value of Tanghenam's

9

processing in Vietnam under {19 U.S.C. § 1677j(b)(2)(E)} and the value of Chinese inputs consumed by Tanghenam under {19 U.S.C. § 1677j(b)(1)(D)}.").  For the other requirements of 19 U.S.C. § 1677j(b) in finding circumvention, Commerce continued to rely on the questionnaire responses as it had in the Preliminary Determination.  *Id*. at 8-11.

Indeed, Commerce explicitly rejected the domestic interested party's request, in its comments on the preliminary determination, to apply "total AFA" and confined its AFA finding to the aforementioned factors:

> We find that application of total AFA to Tanghenam in the final determination based on the corrections it submitted at verification is not warranted (with the exception of the application of AFA in reaching determinations under two sections of the Act, as discussed above in response to Comment 1).

*Id*. at 13.  Because Commerce's application of AFA to the value of inputs did not result in significant changes to the analysis, Commerce continued to make an affirmative circumvention determination.  *Id*.

*Second*, Commerce also found Tanghenam ineligible to certify due to its inability to trace inputs from various origins to specific sales of finished goods.  *Id*. at 14-15.  Commerce stated that, based on "information compiled at verification" (i.e. record evidence), "Tanghenam does not have a system in place to tie specific inputs to specific exports" and that, once a product is transported into the "finished goods inventory, there is no way to track which products go to sales."  *Id*.

This finding was distinct from Commerce's application of AFA to the total value of Tanghenam's inputs, discussed above.  Whereas Commerce's application of AFA considered whether Tanghenam accurately traced inputs to their country of origin, certification applies to the inputs *after* they are incorporated into the finished product.  Therefore, for purposes of certification, Commerce considered whether Tanghenam could trace specific exports of finished

10

products back to specific inputs.  Because Tanghenam "could not tie inputs to specific exports," Commerce found it cannot "accurately certify that inputs purchased from China are not used in AWC exported to the United States" and thus, "does not meet the necessary requirements to certify" and cannot participate in the certification process.  *Id*.

Tanghenam subsequently filed the present case to challenge the *Final Determination*.

## SUMMARY OF THE ARGUMENT

Tanghenam challenges two determinations:  Commerce's application of AFA in determining the relative value of Tanghenam's inputs, and Commerce's determination that Tanghenam is ineligible to certify its entries.  Both decisions are supported by substantial evidence and are in accordance with law.

*First*, contrary to Tanghenam's claim, there was a gap in the record justifying Commerce's application of AFA.  Although Commerce accepted minor corrections at verification correcting the country of origin for certain inputs, *additional* errors in country of origin reporting for the FOP database were later discovered at verification.  Thus, despite bringing some country-of-origin errors to Commerce's attention during minor corrections, Tanghenam failed to correct the underlying error in the database and thus did not account for all of its reporting errors.  Tanghenam's country of origin information in its purchase ledges—submitted during verification—came too late.  Commerce has discretion to reject new information provided during verification, and Commerce properly exercised this discretion in applying AFA.  The fact that Tanghenam could have provided the correct information but failed to do so only further supports Commerce's finding that Tanghenam failed to cooperate to the best of its ability.

*Second*, Commerce correctly determined that Tanghenam is ineligible to certify its entries.  In circumvention proceedings, inputs are traced for two separate purposes: (1) to

measure the proportionate volume of inputs from each country of origin, and (2) to determine the country of origin for a specific AWC export.  Tanghenam improperly conflates these two types of input sourcing at issue in this case in arguing that it should have been allowed to certify. Commerce found that Tanghenam is incapable of tracing specific inputs to its exports of *finished products* to a country of origin and therefore cannot certify which exports do not contain Chinese inputs.  Tanghenam, by contrast, alleges that it has a system to trace specific AWC *inputs* to a country of origin—a fact that Commerce acknowledged in the certification process. Tanghenam's arguments fail because certification is not based on inputs, but rather the actual finished products as placed in the finished goods inventory, and Tanghenam does not identify any record evidence showing that Tanghenam has the ability to trace specific inputs to its exports once its finished AWC products are comingled.

## **ARGUMENT**

### I.    **Standard Of Review**

Commerce's determinations, findings, or conclusions in a circumvention proceeding are upheld unless "unsupported by substantial evidence on the record, or otherwise not in accordance with law."  19 U.S.C. § 1516a(b)(1)(B)(i).  "The specific factual findings on which {Commerce} relies in applying its interpretation are conclusive unless unsupported by substantial evidence." *United States v. Eurodif S.A.*, 555 U.S. 305, 316 n.6 (2009).  A party challenging a determination under the substantial evidence standard "has chosen a course with a high barrier to reversal." *Mitsubishi Heavy Indus., Ltd. v. United States*, 275 F.3d 1056, 1060 (Fed. Cir. 2001). Substantial evidence is "more than a mere scintilla" and is evidence that "a reasonable mind might" accept as adequate.  *Sunpreme Inc. v. United States*, 946 F.3d 1300, 1308 (Fed. Cir. 2020) (citation omitted).  The agency's findings may be supported by substantial evidence even if the possibility of drawing two inconsistent conclusions exists.  *Id.* at 1308-09.  The Court must

sustain the determination if it is "reasonable and supported by the record as a whole, even if some evidence detracts from {Commerce's} conclusion." *Altx, Inc. v. United States*, 370 F.3d 1108, 1121 (Fed. Cir. 2004).

## II.    Legal Framework for AFA

Commerce uses facts otherwise available to fill a gap in the record when necessary information is not available on the record, or when an interested party: (1) withholds information that has been requested by Commerce, (2) fails to provide information by a deadline established by Commerce, (3) significantly impedes a proceeding, or (4) provides information that cannot be verified. *See* 19 U.S.C. § 1677e(a). Commerce may use an adverse inference when selecting among the facts otherwise available when it "finds that an interested party has failed to cooperate by not acting to the best of its ability to comply with {Commerce's} request for information{.}" 19 U.S.C. § 1677e(b)(1). An interested party fails to cooperate by not acting to the best of its ability when it does not exert its "maximum effort to provide Commerce with full and complete answers to all inquiries in an investigation." *Nippon Steel Corp. v. United States*, 337 F.3d 1373, 1382 (Fed. Cir. 2003) (emphasis added).

Relatedly, if Commerce determines that a submission is deficient, Commerce "shall promptly inform the person submitting the response of the nature of the deficiency and shall, to the extent practicable, provide that person with an opportunity to remedy or explain the deficiency in light of the time limits. . . ." 19 U.S.C. § 1677m(d). However, importantly, as explained in the Statement of Administrative Action accompanying the Uruguay Round Agreements Act:

> New {19 U.S.C. § 1677m(d)} requires Commerce and the Commission to notify a party submitting deficient information of the deficiency, and to give the submitter an opportunity to remedy or explain the deficiency. This requirement is not intended to override the time-limits for completing investigations or reviews, nor to allow parties to submit continual clarifications or corrections of information

or to submit information that cannot be evaluated adequately within the applicable deadlines.

H.R. Rep. No. 103–316, at 865 (1994) (SAA) (emphasis added).

Because Commerce lacks subpoena power, its statutorily granted authority to apply facts available with adverse inferences serves as an essential tool to incentivize cooperation with investigations and administrative reviews. *See Essar Steel Ltd. v. United States*, 678 F.3d 1268, 1276 (Fed. Cir. 2012) (citing *F.Lii de Cecco di Filippo Fara S. Martino S.p.A. v. United States*, 216 F.3d 1027, 1032 (Fed. Cir. 2000)); *see also* SAA, H.R. Rep. No. 103-316, at 868 (1994) (noting that, because Commerce has no subpoena power, using adverse inference is an "essential investigative tool" to induce cooperation from interested parties in antidumping proceedings).

## III.    Commerce's Application of AFA to Tanghenam Is Supported By Substantial Evidence and Otherwise In Accordance With Law

Commerce's application of AFA to Tanghenam's value of inputs in its circumvention analysis, due to incorrect origin of inputs reporting, is supported by substantial evidence and otherwise in accordance with law.

### A.    Commerce Correctly Applied AFA In Evaluating The Relative Value Of Tanghenam's AWC Inputs

Commerce correctly determined that "necessary information is not available on the record," and that Tanghenam "withh{eld} information," "significantly impede{d} a proceeding," and provided information that "cannot be verified," 19 U.S.C. § 1677e(a). In a spot-check of specific country-of-origin entries during verification, Commerce discovered some purchases Tanghenam reported as "non-Chinese" were, in fact, produced in China. *See* Verification Report at 7, 22. These discrepancies existed in the record *after* Tanghenam provided its minor corrections. *See* Verification Report at 21-22. Commerce found that these discrepancies were

systemic, because Tanghenam reported the supplier's address as the source country, rather than the country where that input was actually produced. *Id.*

Relatedly, Commerce correctly determined that Tanghenam failed to provide country of origin information "by the deadlines for submission of the information." 19 U.S.C. § 1677e(a)(2)(B). Although Tanghenam provided country-of-origin information at verification, that information was provided only during verification. *See* Verification Report at 7, 17-18. Verification occurs after all the responses are received. The purpose of verification is not to collect new information, but for Commerce to "test information provided by a party for accuracy and completeness." *See Goodluck India Ltd. v. United States*, 11 F.4th 1335, 1344 (Fed. Cir. 2021) (quoting *Micron Tech. v. United States*, 117 F.3d 1386, 1396 (Fed. Cir. 1997)). Indeed, "{v}erification represents a point of no return." *Id.* Commerce set a deadline for the FOP database that expired on June 12, 2024 —well before verification—and warned Tanghenam that verification "is not intended to be an opportunity for the submission of new factual information." *See* Extension of Deadlines for the Final Determinations in Circumvention Inquiries (June 5, 2024) (P.R. 149); *see also* Verification Report at 2 (Nov. 25, 2024) (P.R. 177). Therefore, although Tanghenam provided country of origin information during verification, verification comes after the record closes and Commerce properly determined that it was too late for such information to be considered.

Moreover, Commerce correctly determined that Tanghenam "failed to cooperate by not acting to the best of its ability to comply with a request for information" under 19 U.S.C. § 1677e(b)(1), because Tanghenam had the ability to provide accurate reporting, but did not do so. Commerce determined (and Tanghenam does not dispute) that Tanghenam could have used the "XLOOKUP function in Excel" to locate and report accurate country-of-origin information.

*See* Verification Report at 18.  But Tanghenam did not do that.  Rather, it sought to report accurate country of origin information *only after* the full extent of its reporting discrepancies were discovered by Commerce.  *See* Verification Report at 17-18.

Finally, it is unclear how Tanghenam would benefit even if Commerce had not applied AFA.  As Tanghenam admits in its brief, even when "relying on Tanghenam's submitted data" in the *Preliminary Results*, Commerce found that inputs purchased from China were a significant portion of the total value of the merchandise Tanghenam exported to the United States and the value added in the third country was minor, thus supported a finding of circumvention.  *See* Pl. Br. at 6.  Tanghenam apparently takes issue with Commerce's application of AFA to allege that it should be able to certify, rather than to allege that the circumvention finding should be reversed.  But, as explained in the next section, the denial of certification is not based on AFA.

Therefore, Commerce's application AFA after determining that necessary information was missing from the record, Tanghenam withheld information, failed to provide information by the deadlines, significantly impeded the circumvention inquiry, provided information that cannot be verified, and finally, did not act to the best of its ability to comply with a request for information, was supported by substantial evidence.  *See* 19 U.S.C. § 1677e.

## B.     Tanghenam's Arguments To The Contrary Are Unavailing

*First*, Tanghenam attempts to argue that, because its country-of-origin information is contained in the verification report in which Commerce discovered the error, there is no gap in the record on which Commerce can apply AFA.  *See* Pl. Br. 15-20.  In doing so, plaintiff cites only the verification report in which Commerce discovered the discrepancies—further confirming that the correct information was only obtained during verification.  *See* Pl. Br. 16, 18 ("{a}ccordingly, Tanghenam's purchase ledgers, *provided during verification*, had clearly included the country of origin for materials{}") (emphasis added).  Because verification is not an

opportunity to submit new factual information and Commerce was missing a full FOP database

with the fully corrected information, plaintiff's argument that there was no gap in the record due

to the discovery at verification fails.[1]

     *Second*, Tanghenam suggests that, because Commerce accepted certain corrections to

country of origin at the minor corrections stage of verification, Commerce is precluded from

applying AFA when additional errors of the same nature are discovered.  *See* Pl. Br. 15-20.

Commerce does not dispute that it accepted minor corrections at verification correcting the

country of origin for [                ] as from [      ] rather than [      ].  However,

plaintiff concedes that additional errors in country of origin reporting for the FOP database were

later discovered at verification during tracing.  *See* Verification Report at 22 (listing

discrepancies between location of supplier and certificate of analysis that were not provided

during minor corrections); *see also* Pl. Br. 7-8. ("Commerce also identified sample traces of

input purchases *beyond* the [        ] supplier purchases identified in Tanghenam's minor

corrections. . . [            ] identified instances in which the source country reported in

Tanghenam's FOP data did not match the country of origin.") (emphasis added).  These

additional discrepancies demonstrate that the corrections Tanghenam submitted were not the

only errors, and in fact that the entire reporting system for country of origin was based on the

supplier's corporate address rather than the actual country of origin. *See* IDM at 4.  Commerce's

discovery of a systematic discrepancy between country of origin reported and represented in the

---

[1] Tanghenam's argument that 19 U.S.C. § 1677m(e) mandates Commerce to consider information that is "submitted by the deadlines, can be verified, is not incomplete, and can be used without difficulties" fails to account for the deadline Commerce set for the FOP database, the discrepancies found at verification, the incomplete minor corrections, and the difficulty in re-analyzing new data after verification when the record had closed.  *See* Pl. Br. 15-20.

certificates of origin rendered all reporting for the country of origin of these inputs unreliable. Therefore, the entire FOP database would need to be corrected to fill the gap in the record that this systematic error created. *Id.* at n.23.[2]

These facts significantly diverge from the cases Tanghenam cites for the proposition that AFA may only be applied where there is a gap in the record. In *Celik Halat*, the issue was whether the "final version" needed to be timely filed for information to be on the record where the same document was previously timely submitted, not whether deficiencies discovered during verification are record evidence which Commerce must consider before finding a gap. *Celik Halat Ve Tel Sanayi A.S. v. United States*, 557 F. Supp. 3d 1363, 1372-73 (Ct. Int'l Trade 2022). Similarly, in *Foshun Shunde Yongjian Housewares & Hardware Co*, Commerce was precluded from denying a separate rate because the information provided in response to Commerce's questionnaire was deemed to be adequate. *See Foshun Shunde Yongjian Housewares & Hardware Co. v. United States*, 2011 WL 4829947 *6 (Ct. Int'l Trade Oct. 12, 2011). Here, the parties do not contest that the information provided in response to Commerce's questionnaire provided the correct country of origin information for inputs, nor is it contested that Commerce found errors in the reporting beyond what was provided as a minor correction.

*Third*, Tanghenam also references 19 U.S.C. § 1677m(d) which requires that Commerce actually request the information that it considers necessary for which it has deemed a respondent

---

[2] Tanghenam contends that Commerce's determination, that Tanghenam's minor corrections did not warrant the application of *total* AFA because the corrections "did not result in significant changes to what Tanghenam reported," precludes Commerce from applying AFA to the circumvention determination. Pl. Br. 14. However, Commerce found circumvention based on Tanghenam's submitted data. *See* Pl. Br. at 6. It was therefore not inconsistent for Commerce to determine that the misreporting discovered at verification justified partial AFA, but also that total AFA was not warranted because Commerce already found circumvention based on the flawed data provided by Tanghenam. *See* Final Decision Memorandum at 13.

to have withheld or otherwise failed to provide.  *See* Pl Br. 17.  Commerce was not aware of the

errors until verification after the record was closed and the time for new information had passed.

Commerce could not have notified Tanghenam of any deficiencies in its reporting, because the

deficiencies in Tanghenam's reporting were the result of inaccurate reporting on the part of

Tanghenam that were not apparent to Commerce until a late stage in the proceeding.  *See ABB*

*Inc. v. United States*, 355 F. Supp. 3d 1206, 1221-23 (Ct. Int'l Trade 2018) (concluding that,

where Commerce was not aware of deficiencies in reporting until the underlying information

was provided at verification, "Commerce was not statutorily mandated to provide {plaintiff} a

subsequent opportunity to remedy the deficiency.").

    *Finally*, plaintiff also asserts that Commerce cannot apply AFA because Tanghenam

demonstrated its ability to trace the correct country of origin for AWC inputs, even in cases

when the country of a supplier's address is different than the inputs' country of origin.  *See* Pl.

Br. 11, 14.  Indeed, Tanghenam's repeated confirmation that it could have provided the correct

country of origin only confirms that its failure to do so constitutes withholding of information

and a failure to act to the best of its ability to comply with Commerce's request for information.

*See* 19 U.S.C. § 1677e(a).

    Relatedly, Tanghenam argues that "it actually provided this information to" Commerce

during verification, in the form of ledgers with a column labeled "origin."  Pl. Br. 16.  However,

this information was not provided until verification—well after the deadline for Tanghenam's

responses.  *See* Verification Report at 17-18.  Commerce therefore reasonably determined that it

was too late in the process for Tanghenam to again revise its country of origin information.  *See*

IDM at n.23.  Commerce's ability to apply AFA ensures "that the party does not obtain a more

favorable result by failing to cooperate than if it had cooperated fully."  *See Nan Ya Plastics*

*Corp. v. United States*, 810 F.3d 1333, 1338 (Fed. Cir. 2016).  Allowing Tanghenam to avoid AFA here by providing correct information at a late stage of verification after Commerce already discovered the full extent of the inaccuracies in its reporting would be contrary to the purpose of Commerce's AFA powers.

Thus, the fact that Tanghenam is able to trace the correct country of origin for its input suppliers and belatedly reported accurate data does not detract from Commerce's AFA finding, which is supported by substantial evidence and otherwise in accordance with law.

**IV.    Commerce's Determination That Tanghenam Is Ineligible To Certify Entries Is Supported By Substantial Evidence and In Accordance With Law**

**A.    Commerce Correctly Determined Tanghenam Lacks The Ability To Trace Inputs From Various Countries Of Origin To Specific Sales Of Finished Goods**

Commerce's determination that Tanghenam is unable to trace which exports contain which inputs and therefore is ineligible to certify as to whether entries are subject to Commerce's affirmative country-wide circumvention determination, is supported by substantial evidence and in accordance with law.  Commerce explained that there is "no way to track" which "specific finished good is attributed to which sale" and "thus {Tanghenam} does not meet the necessary requirements to certify."  IDM at 14.  This determination is reasonable because certification requires an importer and exporter company official to sign that they have "direct personal knowledge" that the specific AWC being exported does not contain Chinese inputs.  *See Final Determination* at Appendix.  Because Tanghenam's finished AWC becomes indistinguishable in the finished goods inventory, a Tanghenam official, much less an importer, would not be able to know whether those particular exports contained Chinese inputs or not.

As Commerce outlined in the IDM, this approach aligns with other determinations in which the respondents do not "maintain a reliable information record system to be able to certify

with accuracy the country of origin of hot-rolled steel" or where the respondent "commingles the two groups of merchandise" because in each scenario the company's process for keeping track of inputs to exports would not allow the company to know which of its exports contain which inputs. *See* IDM at 15 (*quoting Steel Wire Garment Hangers from the People's Republic of China*, 76 Fed. Reg. 66,895, (Dep't of Commerce Oct. 28, 2011); *Oil Country Tubular Goods from the People's Republic of China*, 86 Fed. Reg. 67,443 (Dep't of Commerce Nov. 26, 2021), and accompanying IDM). Thus, Commerce's determination that Tanghenam is ineligible to certify is substantiated by record evidence and is in accordance with law.

### B.    **Tanghenam's Arguments To The Contrary Are Unavailing**

In circumvention proceedings, inputs are traced for two separate purposes: (1) to measure the proportionate volume of inputs from each country of origin, and (2) to determine the country of origin for a specific AWC export. Tanghenam's arguments conflate the first tracing system (connecting specific AWC inputs to a country of origin) with the second (connecting final sale of completed AWC to specific AWC inputs).

The first system concerns the ability to trace the country of origin for inputs used to processes AWC so that Commerce can compare the value of those inputs with the total value of the AWC. In this tracing system, it does not matter which input is contained in a specific sale of completed AWC—only the overall values are relevant. *See* 19 U.S.C. § 1677j(b)(1)(D) ("the value of the merchandise produced in the foreign country to which the antidumping duty order applies is a significant portion of the total value of the merchandise exported to the United States"); *see also* 19 U.S.C. § 1677j(b)(2)(E) ("whether the value of the processing performed in the foreign country represents a small proportion of the value of the merchandise imported into the United States."). With respect to this tracing system, Commerce found that Tanghenam has

the ability to accurately trace the country of origin of each input but applied AFA because of Tanghenam's inaccuracies in reporting these inputs, as discussed above.

By contrast, the second system of input tracing is where Commerce determined Tanghenam failed to meet the requirements for certification. In this second system, Commerce considers whether, once those inputs are used in the production of AWC, Tanghenam can tie those specific inputs to the finished products, so that it can accurately identify which U.S. sales contain which inputs from the various country sources. In other words, while the former tracing system tracks where the inputs' source through production in Vietnam, the latter tracks inputs all the way through U.S. sales. The latter is what Commerce found to be inadequate and why, although Tanghenam can identify the source of their inputs as it pertains to Vietnamese production, Commerce determined it cannot certify that certain finished AWC are not produced with Chinese inputs. *See* IDM at 14-15. With this understanding, Tanghenam's arguments are easily refuted.

*First*, plaintiff conflates the former tracing metric with the latter when it argues that the certification determination is not supported by substantial evidence because "Tanghenam demonstrated the precise ability to track and confirm the correct country of origin for its inputs of AWC." Pl. Br. at 21. Plaintiff asserts that the record does not support Commerce's finding that once the AWC is "in finished goods inventory, there is no way to track which products go to sales" yet they fail to point to *any* record evidence demonstrating that the finished AWC in the finished goods inventory can be traced to individual sales. *Id*. Instead, it asserts that "Tanghenam clearly demonstrated to Commerce during verification that it has a system in place that can accurately trace the origin of all inputs." *Id*. But that only speaks to where the inputs come from, not which sales include those specific inputs. Commerce, however, determined that,

Tanghenam's completed AWC is comingled with other completed AWC in the finished goods inventory, and "there is no way to track which products go to sales." *See* Verification Report at 24. Thus, Tanghenam does not offer any record evidence that contradicts or even undermines the record evidence upon which Commerce relied to find Tanghenam ineligible to certify and therefore fails to demonstrate that Commerce's determination was erroneous.

*Second*, the conflation of these two tracing issues is further exacerbated by plaintiff's mistaken contention that Commerce determined Tanghenam's ineligibility based on AFA. *See* Pl. Br. 20 ("{a}s part of its application of total AFA on Tanghenam, Commerce found that Tanghenam is ineligible for the certification process{}"). Indeed, plaintiff goes so far as to assert that Commerce applied "total" AFA. Pl. Br. at 11 ("use of total {AFA} with respect to Tanghenam was entirely unwarranted"). Not only did Commerce not apply "total AFA" to Tanghenam, Commerce relied on record evidence rather than AFA for its determination that Tanghenam cannot certify. S*ee* IDM at 12-13 (explicitly declining to apply petitioner's request for total AFA); *see also* 14-15 ("{a}ccording to the information compiled at verification, Tanghenam does not have a system in place to tie specific inputs to specific exports"). In fact, Commerce did not rely on AFA for any finding other than the comparison of the value of Chinese inputs with the total value of AWC produced in Vietnam. *See Final Determination* at 8,197 ("{c}onsequently we are relying on the application of *partial* adverse inferences with respect to Tanghenam. . . specifically, we have relied on AFA *in reaching determinations* under {19 U.S.C. § 1677j(b)(2)(E) (value of Chinese inputs)} and {19 U.S.C. § 1677j(b)(1)(D) (value of Vietnamese processing)}) (emphasis added). Thus, plaintiff's claim that "Tanghenam, and all parties that receive AFA, are completely barred from this process under the Department's

practice in anti-circumvention proceedings" is inaccurate. Commerce made this determination based on Tanghenam's reporting, not AFA.

*Third*, Tanghenam argues that Commerce's "practice of declaring respondents ineligible for certification when AFA is applied during anti-circumvention proceedings" is contrary to law and in excess of Commerce's authority, both "facially and as applied to" this case. Pl. Br. 22-23. However, this argument is unsubstantiated because Commerce plainly did not rely on AFA in finding that Tanghenam is ineligible for certification. Moreover, whether certification ineligibility may be based on AFA is irrelevant to this case. *See Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227 (1937) ("a justiciable controversy is thus distinguished from a difference or dispute of a hypothetical or abstract character; from one that is academic or moot").

Indeed, plaintiff alleges that, where "Tanghenam has sufficient documentation to definitively show" the country of origin, it is arbitrary and capricious for Commerce to find them ineligible for certification. *Id.* at 23. This argument fails because the ability to "definitively show" the country of origin of specific exports is precisely what Commerce determined Tanghenam was incapable of doing due to their inability to trace specific inputs to specific exports—Commerce found that, once goods enter the finished goods inventory, they are "indistinguishable." *See* IDM at 14-15. And, again, plaintiff only contends that inputs are traceable, not that the finished products are distinguishable to the extent that whether certain exports contain certain inputs could be known.

*Fourth*, because Commerce's certification ineligibility finding is based on Tanghenam being unable to accurately ascertain the country of origin of its exports, plaintiff's argument that this finding conflicts with the marking statute of 19 U.S.C. § 1304 (requiring imported merchandise to be labeled to indicate the country of origin) fails. It is precisely the ability to

determine the country of origin and mark the goods that Commerce has found Tanghenam is unable to do.

*Fifth*, plaintiff's attempts to distinguish *Max Fortune Indust. Co. v. United States*, 37 C.I.T. 549 (April 15, 2013) (upholding denial of certification due to an "inability to demonstrate the origin") are again based on an erroneous understanding of Commerce's reason for denying certification. In both this case and in *Max Fortune*, the question is not whether there were gaps in the record, but whether "a certification procedure would be a reliable means of addressing circumvention." *Id*. at 561. Once again, Commerce's denial of certification was not due to AFA where gaps in the record are analyzed, but due to the inability to trace specific inputs to exported merchandise. Because Commerce did not apply AFA to the certification denial, the further distinction between a challenge to record evidence as in *Max Fortune* and the "facial challenge" brought here is inapposite. Because Tanghenam does not contest Commerce's specific finding that finished AWC is indistinguishable in the finished goods inventory, its challenge to Commerce's determination that it is thus ineligible to certify must fail.

## <u>CONCLUSION</u>

For these reasons, we respectfully request that this Court deny plaintiff's motion for judgment on the agency record.

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General

PATRICIA M. McCARTHY
Director

/s/ Claudia Burke
CLAUDIA BURKE
Deputy Director

OF COUNSEL:

DANIELLE COSSEY
Attorney
Office of the Chief
Counsel for Trade Enforcement
  & Compliance
U.S. Department of Commerce

/s/ Blake W. Cowman
BLAKE W. COWMAN
Trial Attorney
Commercial Litigation Branch
United States Department of Justice
P.O. Box 480 | Ben Franklin Station
Washington, DC 20044
(202) 353-2494 | Blake.Cowman@usdoj.gov

September 8, 2025

Attorneys for the United States

## **CERTIFICATE OF COMPLIANCE**

I hereby certify that the foregoing brief complies with the Rules of this Court, the Court's Standard Chamber Procedures, and the Court's scheduling order (ECF No. 23) in that it contains 8,163 words, including text, footnotes, and headings.

/s/ Blake W. Cowman

**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**

BEFORE:  THE HONORABLE JOSEPH A. LAROSKI, JR., JUDGE

| | |
|---|---|
| _____ ) | |
| TANGHENAM ELECTRIC WIRE & ) CABLE CO., LTD ) | |
| ) | |
|      Plaintiff, ) | |
| ) | |
|      v. ) | |
| ) | |
| UNITED STATES, ) | |
| ) | Court No. 25-00049 |
|      Defendant, ) | |
| ) | |
| and ) | |
| ) | |
| ENCORE WIRE CORP., ) | |
| ) | |
| ) | |
|      Defendant-Intervenor. ) | |
| _____ ) | |

## <u>ORDER</u>

Upon consideration of the motion for judgment upon the agency record filed by plaintiffs, all responses thereto, the administrative record, and other pertinent papers, it is hereby

ORDERED that the motion is DENIED; and it is further

ORDERED that the Department of Commerce's final results in this matter are sustained; and it is further

ORDERED that judgment is entered in favor of the United States.

Dated: _____, 2025
      New York, NY                          _____
                                                     JUDGE