## UNITED STATES COURT OF INTERNATIONAL TRADE

TANGHENAM ELECTRIC WIRE &
CABLE CO., LTD.,

      Plaintiff,

v.

UNITED STATES,

      Defendant,

and

ENCORE WIRE CORP.,

      Defendant-Intervenor.

Before: Joseph A. Laroski, Jr., Judge
Court No. 25-00049

**PUBLIC VERSION**

Confidential Information Removed from
Brackets on Pages 4-5 and 11

## RESPONSE OF DEFENDANT-INTERVENOR IN OPPOSITION TO PLAINTIFF'S MOTION FOR JUDGMENT ON THE AGENCY RECORD

Daniel J. Calhoun, Esq.
Jack A. Levy, Esq.
Noah A. Meyer, Esq.

**ROCK CREEK TRADE LLP**
900 19th Street, NW
Suite 600
Washington, DC 20006
(202) 839-4112

*Counsel for Defendant-Intervenor
Encore Wire Corp.*

Dated:  October 21, 2025

Court No. 25-00049

# TABLE OF CONTENTS

Page

I.      RULE 56.2 STATEMENT ........................................................................ 2

        A.      Administrative Determination Under Review ........................................ 2

        B.      Issues Presented for Review ............................................................ 2

II.     STATEMENT OF FACTS ........................................................................ 3

        A.      Commerce's Verification of Tanghenam................................................ 3

        B.      Commerce's *Final Determination* ...................................................... 6

III.    SUMMARY OF THE ARGUMENT ........................................................ 8

IV.     ARGUMENT ....................................................................................... 9

        A.      Standard of Review................................................................................ 9

        B.      Commerce's Application of AFA in the *Final Determination* Based on
                Discrepancies Discovered at Verification Concerning the Country of
                Origin of Tanghenam's AWC Inputs Is Supported by Substantial Evidence
                and Is Otherwise in Accordance with Law ........................................ 10

        C.      Substantial Record Evidence Otherwise Supports Commerce's *Final
                Determination* ................................................................................ 12

        D.      Commerce's Determination to Exclude Tanghenam from the Certification
                Regime Is Supported by Substantial Evidence and Is Otherwise in
                Accordance with Law ........................................................................ 15

V.      CONCLUSION ....................................................................................... 18

Court No. 25-00049

# <u>TABLE OF AUTHORITIES</u>

Page

 <u>Statutes</u>

19 U.S.C. § 1677e(a) .......................................................................................... 7, 9, 10

19 U.S.C. § 1677e(b) .......................................................................................... 7, 9, 10

19 U.S.C. § 1677j(b) ...................................................................................... 3, 7, 9, 12

19 U.S.C. § 1677j(b)(1)(A) ............................................................................................ 14

19 U.S.C. § 1677j(b)(1)(B) ............................................................................................ 14

19 U.S.C. § 1677j(b)(1)(C) ...................................................................................... 13, 14

19 U.S.C. § 1677j(b)(1)(D) ...................................................................................... *passim*

19 U.S.C. § 1677j(b)(1)(E) ............................................................................................ 14

19 U.S.C. § 1677j(b)(2) ........................................................................................... 12, 13

19 U.S.C. § 1677j(b)(2)(A) ...................................................................................... 7, 14

19 U.S.C. § 1677j(b)(2)(B) ...................................................................................... 7, 14

19 U.S.C. § 1677j(b)(2)(C) ............................................................................................ 14

19 U.S.C. § 1677j(b)(2)(D) ............................................................................................ 14

19 U.S.C. § 1677j(b)(2)(E) ...................................................................................... *passim*

19 U.S.C. § 1677j(b)(3)(A) ...................................................................................... 7, 14

19 U.S.C. § 1677j(b)(3)(B) ............................................................................................ 14

19 U.S.C. § 1677j(b)(3)(C) ...................................................................................... 7, 14

19 U.S.C. § 1677m(i) ............................................................................................... 3, 11

Court No. 25-00049

## Regulations

19 C.F.R. § 351.226(m)(1)(iv) ................................................................... 15, 17

19 C.F.R. § 351.228 ................................................................................... 15, 17

19 C.F.R. § 351.301(c) .................................................................................... 11

19 C.F.R. § 351.307(d) ............................................................................... 3, 11


## Court Decisions

*Bomont Indus. v. United States*, 733 F. Supp. 1507 (Ct. Int'l Trade 1990) ............................. 3, 11

*Canadian Solar Int'l Ltd. v. United States*, Slip Op. 25-59, 2025 WL 1420317 (Ct. Int'l Trade May 16, 2025) (appeal pending) ............................................................. 13

*Goodluck India Ltd. v. United States*, 11 F.4th 1335 (Fed. Cir. 2021) ......................................... 11

*Micron Tech., Inc., v. United States*, 117 F.3d 1386 (Fed. Cir. 1997) ...................................... 3, 11


## Administrative Determinations

*Aluminum Wire and Cable From the People's Republic of China: Final Negative Scope Ruling and Final Affirmative Determination of Circumvention With Respect to the Socialist Republic of Vietnam*, 90 Fed. Reg. 8,196 (Dep't Commerce Jan. 27, 2025) .................................... *passim*

*Certain Tissue Paper Products from the People's Republic of China: Affirmative Final Determination of Circumvention of the Antidumping Duty Order*, 73 Fed. Reg. 57,591 (Dep't Commerce Oct. 3, 2008) .................................................................... 13

*Diamond Sawblades and Parts Thereof From the People's Republic of China: Final Affirmative Determination of Anti-Circumvention Inquiry*, 84 Fed. Reg. 33,920 (Dep't Commerce July 19, 2019) ............................................................................. 15-16

*Initiation of Antidumping and Countervailing Duty Administrative Reviews*, 90 Fed. Reg. 8,187 (Dep't Commerce Jan. 27, 2025) ................................................................. 17

*Oil Country Tubular Goods from the People's Republic of China: Final Affirmative Determinations of Circumvention*, 86 Fed Reg. 67,443 (Dep't Commerce Nov. 26, 2021) .... 16

*Steel Wire Garment Hangers from the People's Republic of China: Affirmative Final Determination of Circumvention of the Antidumping Duty Order*, 76 Fed. Reg. 66,895 (Dep't Commerce Oct. 28, 2011) ................................................................. 15

Court No. 25-00049

## **Other Authorities**

Statement of Administrative Action Accompanying the Uruguay Round Agreements Act, H.R.
    Doc. 103–316, vol. 1, 1994 U.S.C.C.A.N. 4040.......................................................................... 13

**UNITED STATES COURT OF INTERNATIONAL TRADE**

| | |
|---|---|
| TANGHENAM ELECTRIC WIRE & CABLE CO., LTD., | |
| Plaintiff, | Before: Joseph A. Laroski, Jr., Judge |
| v. | Court No. 25-00049 |
| UNITED STATES, | **PUBLIC VERSION** |
| Defendant, | Confidential Information Removed from Brackets on Pages 4-5 and 11 |
| and | |
| ENCORE WIRE CORP., | |
| Defendant-Intervenor. | |

**RESPONSE OF DEFENDANT-INTERVENOR IN OPPOSITION TO
PLAINTIFF'S MOTION FOR JUDGMENT ON THE AGENCY RECORD**

Defendant-Intervenor Encore Wire Corp. respectfully submits this response in opposition to the motion for judgment on the agency record filed by Plaintiff Tanghenam Electric Wire & Cable Co., Ltd. ("Tanghenam" or "Plaintiff") (ECF No. 28). Tanghenam contests the final affirmative determination issued by the U.S. Department of Commerce ("Commerce") in the circumvention inquiry of the antidumping duty ("AD") and countervailing duty ("CVD") orders on aluminum wire and cable ("AWC") from the People's Republic of China with respect to the Socialist Republic of Vietnam. For the reasons detailed below and in the response opposing Tanghenam's motion filed by Defendant United States (ECF No. 32),[1] the Court should deny Tanghenam's motion and sustain Commerce's final affirmative determination in its entirety.

---

[1] In accordance with the directions of the Court in its Scheduling Order (ECF No. 23), Defendant-Intervenor has made best efforts not to "repeat arguments made in earlier filed briefs."

## I.    RULE 56.2 STATEMENT

### A.  Administrative Determination Under Review

The administrative determination under review is Commerce's final affirmative determination in the circumvention inquiry of the AD and CVD orders on AWC from China with respect to Vietnam.  *See Aluminum Wire and Cable From the People's Republic of China: Final Negative Scope Ruling and Final Affirmative Determination of Circumvention With Respect to the Socialist Republic of Vietnam*, 90 Fed. Reg. 8,196 (Dep't Commerce Jan. 27, 2025) ("*Final Determination*") (P.R. 203),[2] and the accompanying Issues and Decision Memorandum ("IDM") (P.R. 202).

### B.  Issues Presented for Review

(1)  Whether Commerce's application of adverse facts available ("AFA") in the *Final Determination* based on discrepancies discovered at verification concerning the country of origin of Tanghenam's AWC inputs used to determine the relative value of the Chinese content and the relative value of the Vietnamese processing of AWC produced by Tanghenam, as required by 19 U.S.C. §§ 1677j(b)(1)(D) and 1677j(b)(2)(E), is supported by substantial evidence and is otherwise in accordance with law.

(2)  Whether Commerce's determination to exclude Tanghenam from the certification regime established during the circumvention inquiry is supported by substantial evidence and is otherwise in accordance with law when Tanghenam lacks the ability to tie specific inputs of Chinese origin to specific exports.

---

[2] "P.R. ___" refers to documents in the public record; "C.R. ___" refers to documents in the confidential record.

## II.    STATEMENT OF FACTS

Defendant in its response brief provides a thorough summary of facts relevant to this action, which Defendant-Intervenor incorporates by reference to avoid repetition.  Def. Br. at 5-11.  However, Defendant-Intervenor wishes to highlight and elaborate upon certain key facts below.

### A.  Commerce's Verification of Tanghenam

In its preliminary affirmative determination of circumvention, Commerce found that almost all of the statutory factors under 19 U.S.C. § 1677j(b) for merchandise assembled or completed in a third country support a country-wide finding of circumvention of the AWC AD and CVD orders with respect to Vietnam.  *See* Commerce Preliminary Decision Memorandum (July 31, 2025) ("PDM") at 23 (P.R. 168).  Following Commerce's preliminary affirmative determination, Commerce scheduled an on-site verification of factual information submitted by mandatory respondent Tanghenam during the circumvention inquiry at its facilities in Vietnam.  *See* Verification Agenda (Sept. 21, 2024) at 1 (P.R. 178).  The purpose of verification is "'to test information provided by a party for accuracy and completeness.'"  *Micron Tech., Inc., v. United States*, 117 F.3d 1386, 1396 (Fed. Cir. 1997) (quoting *Bomont Indus. v. United States*, 733 F. Supp. 1507, 1508 (Ct. Int'l Trade 1990)); *see also* 19 U.S.C. § 1677m(i); 19 C.F.R. § 351.307(d) (acknowledging that the objective of verification is "to verify the accuracy and completeness of submitted factual information").  In its verification agenda for Tanghenam, Commerce cautioned that, subject to certain limited exceptions, "verification is not intended to be an opportunity for submission of new factual information."  Verification Agenda at 2 (P.R. 178).

At verification, Tanghenam presented Commerce with a multitude of "minor corrections," including revising the country source of certain direct materials used in the production of AWC.  *See* Tanghenam Verification Report (Nov. 20, 2024) at 4 and 7 (C.R. 381).

However, Commerce identified repeated instances at verification in which Tanghenam

misreported the country of origin of certain AWC inputs that were actually produced in China.

*See* IDM at 5 (P.R. 202) ("Commerce discovered various aluminum purchases that Tanghenam

reported as "non-Chinese" (based on the supplier's address) that were, in fact, produced in

China.").  A recurring theme of the Tanghenam verification report is Tanghenam's faulty

reporting of the country source of its AWC inputs based on the supplier's address and not the

actual country of origin of the material in question based on the certificate of analysis, including,

but not limited to, the following:

- "We noted that some of the certificates of origin for these {input purchases} reported the country of origin as [         ].  ***Thus, the country of origin reported in Exhibit S10 refers to the supplier's address, not the country source of the material based on where it was produced as based on the certificate of analysis. Thus, in some cases, the supplier's location is not the same as the certificate of origin.***  One of the sample sales from the supplier in [         ] with a certificate of origin from [      ] is included in exhibit VE-1.7." Tanghenam Verification Report at 4-5 (internal citation omitted) (emphasis added) (C.R. 381).

- "Company officials stated that in Exhibit S-16 of their supplemental response to Commerce, they inadvertently misclassified five of 24 transactions of aluminum alloy wire to be Chinese purchases while they were purchased from Taiwanese suppliers, and one out of four purchases of polyester tape to be [         ] purchases while in fact they were purchased from [           ] suppliers, leading to the incorrect reporting of {market economy ("ME")} and {nonmarket economy ("NME")} purchases.

  We tied the amounts of purchases from the ME and NME countries to Tanghenam's direct materials purchase subledger.  We requested the supporting documentation for those material purchases.  Additionally, we selected a few transactions from the direct materials purchase ledger and examined underlying source documents.  We examined the country of origin in these documents and as noted above ***we found that the country of origin for Tanghenam's purchases was based on the supplier's location, which is not necessarily indicative of where the product was produced***." Tanghenam Verification Report at 7 (internal citation omitted) (emphasis added) (C.R. 381).

- "Company officials provided a complete purchase ledger for [           ] for 2023.  We tied the quantity and values to the purchase ledger and inventory movement ledger and back to the financial statements.  We selected several purchases of [             ] for review.

> *While examining the information the company provided to us, we noted that Tanghenam reported the country of origin as the location of the supplier that sold the [                    ] and not the country of origin, as based on the certificate of origin*."  Tanghenam Verification Report at 20 (internal citation omitted) (emphasis added) (C.R. 381).

- "***We noted that the [***
  ***] according to the certificate of origin****.*

  We selected three more input purchases of rod and [      ] to trace from a variety of suppliers, including domestic suppliers, international market economy suppliers, and international nonmarket economy suppliers.  ***The chart below details the supplier address Tanghenam recorded, and the country reported on the certificate of origin.*** The fiscal year in the chart below refers to the Vietnamese fiscal year.

| Fiscal Year | Product Type | Invoice Number | Location of Supplier | Certificate of Analysis |
|---|---|---|---|---|
| [ | | | | ] |
| [ | | | | ] |
| [ | | | | ] |
| [ | | | | ] |
| [ | | | | ] |
| [ | | | | ] |
| [ | | | | ] |
| [ | | | | ] |
| [ | | | | ] |
| [ | | | | ] |
| [ | | | | ] |
| [ | | | | ] |
| [ | | | | ]" |

Tanghenam Verification Report at 22 (emphasis added) (C.R. 381).

Such glaring oversights in Tanghenam's reporting discovered by Commerce at verification impacted Commerce's ability to calculate with any degree of accuracy the relative value of the Chinese content and the relative value of the Vietnamese processing of AWC produced by Tanghenam and sold to the United States, as required by 19 U.S.C. §§ 1677j(b)(1)(D) and 1677j(b)(2)(E).

> Commerce made the following additional observation at Tanghenam's verification:
>
> Company officials demonstrated how they used the opening balance 2023 as a starting point, then tracked issuance of production on their raw material warehouse out slip to calculate which raw materials were produced for a certain finished product.  They used the FIFO accounting method to find the address of supplier. They recorded the country in the supplier's address as the country source; company officials did not report country of origin as the source of the material.  Production is tracked through the raw material warehouse out slip to the finished goods inventory-in slip.  The warehouse in/out slips have which inputs are used to create each product code that was produced in one round of production.  ***All finished goods are then transported into the finished goods inventory. Once in finished goods inventory, there is no way to track which products go to sales***."

Tanghenam Verification Report at 23-24 (emphasis added) (C.R. 381).  That verification finding thus indicated that Tanghenam lacked the ability to track which specific inputs, including inputs of Chinese origin, were used to produce the finished AWC products sold and exported to the United States.

### B.  Commerce's *Final Determination*

After verification and briefing from interested parties, Commerce published its final affirmative determination of circumvention in January 2025.  *See Final Determination* (P.R. 203).  In continuing to find that Tanghenam and other AWC producers in Vietnam were engaged in circumvention of the AWC AD and CVD orders, Commerce summarized its verification findings with respect to Tanghenam's misreporting of the country of origin of certain AWC inputs and concluded that, "{d}ue to this verification finding, the necessary information of country of origin for AWC inputs, which is critical in determining the extent and thus, value, of

Chinese content in the inquiry merchandise under {19 U.S.C. §§ 1677j(b)(1)(D) and

1677j(b)(2)(E)}, is not on the record…." IDM at 5 (P.R. 202). Commerce therefore applied

AFA, in accordance with 19 U.S.C. §§ 1677e(a) and (b), to determine "the value of

Tanghenam's processing in Vietnam under {19 U.S.C. § 1677j(b)(2)(E)} and the value of the

Chinese inputs consumed by Tanghenam under {19 U.S.C. § 1677j(b)(1)(D)}." IDM at 5 (P.R.

202). In applying AFA, Commerce "continue{d} to find that the value of Chinese inputs is a

significant portion of the total value of AWC within the meaning of {19 U.S.C.

§ 1677j(b)(2)(E)} {sic} and that the value of processing performed in Vietnam represents a small

proportion of the value of AWC within the meaning of {19 U.S.C. § 1677j(b)(1)(D)} {sic}."[3]

IDM at 5-6 (P.R. 202). Notably, Commerce continued to find in the *Final Determination* that

most other statutory factors under 19 U.S.C. § 1677j(b) — including the level of investment in

Vietnam under 19 U.S.C. § 1677j(b)(2)(A), the level of research and development in Vietnam

under 19 U.S.C. § 1677j(b)(2)(B), patterns of trade under 19 U.S.C. § 1677j(b)(3)(A), and an

increase in shipments of AWC inputs from China to Vietnam under 19 U.S.C. § 1677j(b)(3)(C)

— supported an affirmative circumvention determination. *See* IDM at 8-10 (P.R. 202).

With respect to Tanghenam's participation in the certification regime established by

Commerce in the preliminary affirmative determination of circumvention, Commerce found as

follows:

> According to the information compiled at verification, ***Tanghenam does not have
> a system in place to tie specific inputs to specific exports. Thus, Tanghenam
> cannot accurately certify that inputs purchased from China are not used in AWC
> exported to the United States.*** The verification report states, ***"{a}ll finished goods
> are then transported into the finished goods inventory. Once in finished goods
> inventory, there is no way to track which products go to sales.***"

---

[3] Commerce appears inadvertently to have transposed the statutory citations in this sentence. *See*
IDM at 5-6 (P.R. 202).

Thus, *we determine that Tanghenam cannot participate in the certification process given that Tanghenam uses Chinese-inputs and could not tie inputs to specific exports.  As a result, Tanghenam cannot accurately certify the non-use of Chinese materials.*  This practice is consistent with Commerce's other affirmative circumvention determinations.

IDM at 14 (P.R. 202) (internal citations omitted) (emphasis added).  On that basis, Commerce deemed Tanghenam ineligible to participate in the certification process arising from its affirmative determination of circumvention, but advised that it could reconsider Tanghenam's eligibility to participate in the certification regime in a future segment of the AWC proceedings. *See* IDM at 15 (P.R. 202).

## III.    SUMMARY OF THE ARGUMENT

For the reasons outlined by Defendant in its response brief and by Defendant-Intervenor below, Commerce appropriately and reasonably applied AFA to determine the value of Tanghenam's processing of AWC in Vietnam under 19 U.S.C. § 1677j(b)(2)(E) and the value of the Chinese inputs consumed by Tanghenam in its Vietnamese AWC production under 19 U.S.C. § 1677j(b)(1)(D).  Tanghenam's failure to report accurate country-of-origin information for certain inputs until Commerce identified such reporting errors at verification warranted application of facts available because necessary information was not available on the record and because Tanghenam withheld information, failed to provide requested country-of-origin information by the deadlines for its submission, significantly impeded the circumvention inquiry, and provided information that could not be verified.  Tanghenam also failed to cooperate by not acting to the best of its ability to comply with Commerce's requests for country-of-origin information for certain factors of production because, as demonstrated at verification, Tanghenam had the ability to provide such information in a timely and accurate manner, but did not do so.  Tanghenam's attempt to rely on "minor corrections" presented at verification as an elixir for systemic and pervasive reporting errors fails to cure such deficiencies.  With the

statutory criteria of 19 U.S.C. §§ 1677e(a)-(b) satisfied, Commerce acted in accordance with the law when applying AFA in the *Final Determination*.

Regardless of application of AFA, Commerce's analysis and assessment of the various statutory factors under 19 U.S.C. § 1677j(b) for merchandise assembled or completed in a third country nonetheless support an affirmative determination of circumvention, thus calling into question whether Tanghenam's challenge to Commerce's employment of AFA in the *Final Determination* presents a justiciable case or controversy.

Finally, record evidence demonstrating that Tanghenam uses Chinese-origin inputs in its Vietnamese AWC production, but lacks the ability to track those inputs to finished inquiry merchandise it sold and exported to the United States supports Commerce's determination to deny Tanghenam's participation in the certification regime established as a result of Commerce's affirmative finding of circumvention. Commerce acted well within its legal authority and consistent with its established practice in precluding Tanghenam from participating in the certification process given Tanghenam's demonstrated inability to tie specific inputs to specific exports.

## IV.    ARGUMENT

Defendant-Intervenor endorses and incorporates by reference the various legal and factual arguments presented in Defendant's response brief. Def. Br. at 12-25. Defendant-Intervenor uses the opportunity of its response brief to make or elaborate upon certain arguments not fully developed in Defendant's response brief.

### A.  Standard of Review

Defendant-Intervenor accepts and incorporates by reference Defendant's characterization of the standard of review in this action as set forth in its response brief. Def. Br. at 12-13.

**B. Commerce's Application of AFA in the *Final Determination* Based on Discrepancies Discovered at Verification Concerning the Country of Origin of Tanghenam's AWC Inputs Is Supported by Substantial Evidence and Is Otherwise in Accordance with Law**

With respect to Commerce's application of AFA in the *Final Determination* to determine the relative value of the Chinese content and the relative value of the Vietnamese processing of AWC produced by Tanghenam in Vietnam, Defendant-Intervenor agrees with and incorporates by reference the main substantive arguments set forth in Defendant's response brief, which can be summarized as follows:

- Pursuant to 19 U.S.C. § 1677e(a), Commerce properly determined that Tanghenam's failure to report accurate country-of-origin information for certain factors of production when requested until Commerce discovered such deficiencies at verification warranted application of facts available insofar as "necessary information" was not available on the record and insofar as Tanghenam "withh{eld} information," "fail{ed} to provide" requested country-of-origin information "by the deadlines for {its} submission," "significantly impede{d} a proceeding," and provided information that "{could not}be verified".  Def. Br. at 14-15.

- Pursuant to 19 U.S.C. § 1677e(b), Commerce properly applied facts available with an adverse inference upon concluding that Tanghenam "failed to cooperate by not acting to the best of its ability to comply with a request for information" because, as ascertained at verification, Tanghenam had the ability to provide accurate reporting concerning the country of origin of its AWC inputs, but did not do so.  Def. Br. at 15-16.

Defendant also offers compelling and convincing responses to Taghenam's arguments challenging Commerce's application of AFA, which Defendant-Intervenor adopts and incorporates by reference.  Def. Br. at 16-20.  Specifically, Tanghenam's contention that it demonstrated its ability at verification to trace the country of origin of its AWC inputs lends considerable support to Commerce's application of AFA because it raises the question of why Tanghenam did not provide accurate reporting when requested to do so by Commerce and while the administrative record was still open.  Pl. Br. at 12-15.  It must be emphasized that purpose of verification is not to collect new factual information, but "'to test information provided by a

party for accuracy and completeness.'" *Micron Tech.*, 117 F.3d at 1396 (Fed. Cir. 1997) (quoting

*Bomont Indus.*, 733 F. Supp. at 1508); *see also* 19 U.S.C. § 1677m(i); 19 C.F.R. § 351.307(d)

(acknowledging that the objective of verification is "to verify the accuracy and completeness of

submitted factual information"); *Goodluck India Ltd. v. United States*, 11 F.4th 1335, 1344 (Fed.

Cir. 2021) (describing verification as "a point of no return").  By the time verification

commenced, the opportunity for Tanghenam to submit new factual information on the

administrative record had closed.  *See* 19 C.F.R. § 351.301(c).  Accordingly, Commerce advised

Tanghenam in advance of verification that, subject to certain limited exceptions such as the

presentation of "minor corrections," "verification is not intended to be an opportunity for

submission of new factual information."  Verification Agenda at 2 (P.R. 178).  Contrary to

Tanghenam's contention that there is "no gap" in the administrative record, Pl. Br. at 15-20,

Tanghenam's demonstrated failure to provide accurate country source information for its factors

of production in a timely manner created a significant "gap" in the administrative record that

justified Commerce's use of AFA in the *Final Determination*.

       With respect to "minor corrections," Tanghenam's attempt to spin Commerce's

acceptance of Tanghenam's "minor corrections" at the outset of verification related to the

country source of certain direct materials used in the production of AWC as a panacea for

systemic reporting errors discovered at verification should not be countenanced.  Pl. Br. at 12-14.

Commerce uncovered multiple instances at verification in which Tanghenam misreported the

country of origin of certain AWC inputs, including for [

       ].  *See* Tanghenam Verification Report at 4-5, 7, 20, and 22 (C.R. 381).

Identifying a "minor correction" for Commerce at the beginning of verification does not provide

*carte blanche* to excuse widespread reporting errors uncovered by Commerce while at

verification.  In fact, Commerce cautioned Tanghenam in advance of verification that acceptance

of "minor corrections" "does not guarantee that {Commerce} will be able to use it for our final

determination."  Verification Agenda at 2 (P.R. 178).  Notably, Tanhenam's misreporting of its

country-of-origin information was due to Tanghenam's ***flawed methodology*** for determining

country of origin (*i.e.*, relying on the input supplier's location to determine country of origin

rather than the location where the input was produced).  *See* IDM at 5 (P.R. 202) ("Commerce

discovered at verification that ***Tanghenam did not provide information according to the***

***country of origin of the inputs it consumed.  Rather, it provided information according {sic}***

***the location of the supplier.***" (internal citation omitted) (emphasis added) (citing Tanghenam

Verification Report at 7 (C.R. 381))).  Accordingly, Tanghenam's reporting errors were systemic

and went beyond what should be considered "minor corrections."  Tanghenam's ploy to use

Commerce's acceptance of "minor corrections" as a shield for its pervasive reporting errors

related to the country of origin of its AWC inputs must be rejected.

## C.  Substantial Record Evidence Otherwise Supports Commerce's *Final Determination*

Regardless of Commerce's application of AFA, there is ample record evidence to support

a final affirmative determination of circumvention with respect to Vietnam and, more

specifically, with respect to Tanghenam.  As Defendant stated in its brief, "it is unclear how

Tanghenam would benefit even if Commerce had not applied AFA."  Def. Br. at 16.

Defendant-Intervenor adopts and incorporates by reference Defendant's description of

the legal framework for circumvention inquiries involving merchandise completed or assembled

in a third country.  Def. Br. at 2-5 (summarizing criteria for Commerce to consider under 19

U.S.C. § 1677j(b)).  Importantly, no single statutory criterion under 19 U.S.C. § 1677j(b)(2) to

assess whether the process of assembly or completion in the third country is "minor or

insignificant," as set forth in 19 U.S.C. § 1677j(b)(1)(C), should be considered controlling.  *See* Statement of Administrative Action Accompanying the Uruguay Round Agreements Act, H.R. Doc. 103–316, vol. 1, at 893, 1994 U.S.C.C.A.N. 4040, 4216 ("Commerce will evaluate each of these factors …, depending on the particular circumvention scenario.  No single {one} will be controlling.").  Accordingly, Commerce's practice is to evaluate each of the statutory criteria under 19 U.S.C. § 1677j(b)(2) and consider the totality of the circumstances for each circumvention inquiry.  *See, e.g.*, *Certain Tissue Paper Products from the People's Republic of China: Affirmative Final Determination of Circumvention of the Antidumping Duty Orde*r, 73 Fed. Reg. 57,591, 57,592 (Dep't Commerce Oct. 3, 2008).  Under that standard, however, it is permissible for Commerce to assign a particular statutory factor under 19 U.S.C. § 1677j(b)(2) "preeminent importance" should circumstances so require.  *See Canadian Solar Int'l Ltd. v. United States*, Slip Op. 25-59, 2025 WL 1420317, at *5 (Ct. Int'l Trade May 16, 2025) (appeal pending).

Here, the bulk of the statutory factors when applied to Tanghenam support a final affirmative circumvention determination, even without use of AFA, as demonstrated in the below chart:

| Statutory Provision | Preliminary Determination | | Final Determination | |
|---|---|---|---|---|
| | Criteria Satisfied | AFA Applied | Criteria Satisfied | AFA Applied |
| **19 U.S.C. § 1677j(b)(1)(A)** <br> *Same class or kind* | **YES** <br> PDM at 15 <br> (P.R. 168) | **NO** | **YES** <br> Unchanged from *Prelim* | **NO** |
| **19 U.S.C. § 1677j(b)(1)(B)** <br> *Completion or assembly in Vietnam from merchandise produced in China* | **YES** <br> PDM at 15-16 <br> (P.R. 168) | **NO** | **YES** <br> Unchanged from *Prelim* | **NO** |
| **19 U.S.C. § 1677j(b)(1)(C)** <br> *Process of completion or assembly in Vietnam minor or insignificant* | **YES** <br> PDM at 16-20 <br> (P.R. 168) | **NO** | **YES** <br> IDM at 4-6, 8-11 <br> (P.R. 202) | **IN PART** |
| **19 U.S.C. § 1677j(b)(2)(A)** <br> *Level of investment* | **YES** <br> PDM at 17 <br> (P.R. 168) | **NO** | **YES** <br> IDM at 8-9 <br> (P.R. 202) | **NO** |
| **19 U.S.C. § 1677j(b)(2)(B)** <br> *Level of research and development* | **YES** <br> PDM at 17-18 <br> (P.R. 168) | **NO** | **YES** <br> IDM at 9 <br> (P.R. 202) | **NO** |
| **19 U.S.C. § 1677j(b)(2)(C)** <br> *Nature of production process* | **NO** <br> PDM at 18-19 <br> (P.R. 168) | **NO** | **NO** <br> Unchanged from *Prelim* | **NO** |
| **19 U.S.C. § 1677j(b)(2)(D)** <br> *Extent of production facilities* | **NO** <br> PDM at 19 <br> (P.R. 168) | **NO** | **NO** <br> Unchanged from *Prelim* | **NO** |
| **19 U.S.C. § 1677j(b)(2)(E)** <br> *Relative value of processing in Vietnam* | **YES** <br> PDM at 20 <br> (P.R. 168) | **NO** | **YES** <br> IDM at 4-7 <br> (P.R. 202) | **YES** |
| **19 U.S.C. § 1677j(b)(1)(D)** <br> *Relative value of merchandise produced in China* | **YES** <br> PDM at 20 <br> (P.R. 168) | **NO** | **YES** <br> IDM at 4-6 <br> (P.R. 202) | **YES** |
| **19 U.S.C. § 1677j(b)(1)(E)** <br> *Action appropriate* | **YES** <br> PDM at 22 <br> (P.R. 168) | **NO** | **YES** <br> Unchanged from *Prelim* | **NO** |
| **19 U.S.C. § 1677j(b)(3)(A)** <br> *Pattern of Trade* | **YES** <br> PDM at 21 <br> (P.R. 168) | **NO** | **YES** <br> IDM at 10 <br> (P.R. 202) | **NO** |
| **19 U.S.C. § 1677j(b)(3)(B)** <br> *Affiliation* | **NO** <br> PDM at 22 <br> (P.R. 168) | **NO** | **NO** <br> Unchanged from *Prelim* | **NO** |
| **19 U.S.C. § 1677j(b)(3)(C)** <br> *Increase in input shipments from China to Vietnam* | **YES** <br> PDM at 22 <br> (P.R. 168) | **NO** | **YES** <br> IDM at 10 <br> (P.R. 202) | **NO** |

As is apparent, Commerce's circumvention analysis with respect to Tanghenam would support an affirmative finding when considering all factors and the totality of circumstances, regardless of the application of AFA. And it must be emphasized that Commerce's preliminary analysis,

which did not rely on AFA and was based on Commerce's consideration and evaluation of

record evidence, found that the value of processing in Vietnam represents a small proportion of

the value of the merchandise imported to the United States, pursuant to 19 U.S.C.

§ 1677j(b)(2)(E), and that the value of the merchandise produced in China is a significant portion

of the total of the merchandise imported into the United States, pursuant to 19 U.S.C.

§ 1677j(b)(1)(D).  *See* PDM at 20 (P.R. 168).  Based on those considerations, it seems

improbable that Commerce's application of AFA in the *Final Determination* materially changed

the outcome of the circumvention inquiry, and, in the interests of judicial economy, the Court

should sustain the *Final Determination* on that basis alone.

### D.  Commerce's Determination to Exclude Tanghenam from the Certification Regime Is Supported by Substantial Evidence and Is Otherwise in Accordance with Law

Commerce acted appropriately when it precluded Tanghenam from participating in the

certification process arising from Commerce's affirmative determination of circumvention.

Sections 351.226(m)(1)(iv) and 351.228 of Commerce's regulations permit the agency to

establish certification procedures in circumvention inquiries where companies can certify that

their products are not subject to suspension of liquidation or the collection of cash deposits

because they were not manufactured using certain inputs from the order country.  Under

Commerce's practice, companies that do not have a system in place for identifying and tracking

inputs sufficient to certify that particular products are not made with inputs from the order

country are not eligible to certify that their products are not subject to suspension of liquidation

or cash deposits.  *See*, *e.g.*, *Steel Wire Garment Hangers from the People's Republic of China:*

*Affirmative Final Determination of Circumvention of the Antidumping Duty Order*, 76 Fed. Reg.

66,895, 66,899 (Dep't Commerce Oct. 28, 2011); *Diamond Sawblades and Parts Thereof From*

*the People's Republic of China: Final Affirmative Determination of Anti-Circumvention Inquiry*,

84 Fed. Reg. 33,920, 33921 (Dep't Commerce July 19, 2019); *Oil Country Tubular Goods from the People's Republic of China: Final Affirmative Determinations of Circumvention*, 86 Fed Reg. 67,443 (Dep't Commerce Nov. 26, 2021), and accompanying IDM at 18. Otherwise, permitting companies to participate in the certification process despite being unable to track inputs sourced from the order country through to the finished product would defeat the purpose and effectiveness of any certification regime. Accordingly, when a company is not eligible to certify and Commerce has made an affirmative country-wide circumvention finding, as is the case here, Commerce requires cash deposits on all entries of merchandise from the circumventing country produced and/or exported by that company.

Regrettably, Tanghenam is confused by what Commerce did in the *Final Determination*, which is fatal to its argument. Defendant is absolutely correct that Tanghenam conflates two distinct issues in challenging its exclusion from the certification regime: (1) the need to trace inputs for purposes of conducting valuation analyses under 19 U.S.C. §§ 1677j(b)(1)(d) and 1677(b)(2)(E); and (2) the need to trace inputs to inquiry merchandise exported to the United States. Def. Br. at 21-23. Commerce applied AFA in the former context, but not the latter, contrary to what is contended by Tanghenam. Pl. Br. at 20 ("As part of its application of AFA on Tanghenam, Commerce found that Tanghenam is ineligible for the certification process."). Commerce explicitly limited its application of AFA in the *Final Determination* to "determine{e} the value of Tanghenam's processing in Vietnam under {19 U.S.C. § 1677j(b)(2)(E)} and the value of the Chinese inputs consumed by Tanghenam under {19 U.S.C. § 1677j(b)(1)(d)}." IDM at 5 (P.R. 202).

In contrast, Commerce's decision to exclude Tanghenam from the verification process is premised on its finding at Tanghenam's verification that "***Tanghenam does not have a system in***

***place to tie specific inputs to specific exports*.**"  IDM at 14 (P.R. 202) (emphasis added).  As

stated in the verification report, "***{a}ll finished goods are then transported into the finished***

***goods inventory.  Once in finished goods inventory, there is no way to track which products go***

***to sales.***"  Tanghenam Verification Report at 24 (emphasis added) (C.R. 381).  Tanghenam can

point to no evidence to contradict this verification finding concerning its inability to tie specific

inputs to specific exports.  Pl. Br. at 20-26.  Accordingly, Commerce acted well within its

authority under 19 C.F.R. §§ 351.226(m)(1)(iv) and 351.228 to establish a certification regime as

part of its affirmative determination of circumvention and acted consistent with its well-

established practice in precluding Tanghenam from participating in that regime because of its

demonstrated inability to track Chinese-inputs to AWC products exported to the United States.

Finally, it must be noted that Tanghenam can seek reconsideration of its eligibility to participate

in the certification process in future segments of the AWC proceedings, *see* IDM at 14 (P.R.

202), and that Tanghenam is actively availing itself of such opportunities at the present time

through its participation in ongoing administrative reviews of both AWC orders.  *See Initiation*

*of Antidumping and Countervailing Duty Administrative Reviews*, 90 Fed. Reg. 8,187, 8,190-92

(Dep't Commerce Jan. 27, 2025).

Court No. 25-00049                                                                 Page 18

## V.    CONCLUSION

For the above-stated reasons and those stated in Defendant's opposition, Defendant-Intervenor respectfully requests that the Court deny Tanghenam's motion for judgment on the agency record and sustain Commerce's *Final Determination* in its entirety.

                                                          Respectfully submitted,



                                                          /s/ Daniel J. Calhoun

                                                          Daniel J. Calhoun, Esq.
                                                          Jack A. Levy, Esq.
                                                          Noah A. Meyer, Esq.

                                                          ROCK CREEK TRADE LLP
                                                          900 19th Street NW, Suite 600
                                                          Washington, DC  20006
                                                          (202) 297-8860
                                                          dcalhoun@rockcreektrade.com

Dated:  October 21, 2025                                  *Counsel for Defendant-Intervenor*
                                                          *Encore Wire Corp.*

## Certificate of Compliance Pursuant to Chambers Procedures 2(B)(2)

The undersigned hereby certifies that the foregoing brief contains 4,966 words according to the "Word Count" function of Microsoft Word for Microsoft 365, exclusive of the caption block, table of contents, table of authorities, signature block, and certificates of counsel, and therefore complies with the maximum 10,000 word count limitation set forth in the Court's Scheduling Order (ECF No. 23) and the Standard Chambers Procedures of the U.S. Court of International Trade.

By:    /s/ Daniel J. Calhoun

Daniel J. Calhoun