Slip-Op 26-21

### UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| TANGHENAM ELECTRIC WIRE & CABLE CO., LTD. | |
| Plaintiff, | |
| v. | Before: Joseph A. Laroski, Jr., Judge |
| UNITED STATES, | |
| Defendant, | Court No. 25-00049 |
| and | |
| ENCORE WIRE CORP., | |
| Defendant-Intervenor. | |

### OPINION AND ORDER

[Sustaining Commerce's partial application of adverse facts available and remanding Commerce's determination that respondent was ineligible to participate in the certification process to further explain its decision and, in particular, to address respondent's arguments regarding its reconstruction-based accounting method for tracing inputs from purchase to sale of the finished goods.]

Dated:  February 24, 2026

Alexander H. Schaefer, Weronika Bukowski, and Pierce Jungwoon Lee, Crowell & Moring LLP, of Washington, D.C., for plaintiff Tanghenam Electric Wire & Cable Co., Ltd.

Brett A. Shumate, Assistant Attorney General, and Patricia M. McCarthy, Director, Civil Division, Commercial Litigation Branch, U.S. Department of Justice of Washington, D.C., for defendant United States. With them on the brief were Claudia Burke, Deputy Director, and Blake Cowman, Trial Attorney.  Of counsel on the brief was Danielle Cossey, Office of the Chief Counsel for Trade Enforcement & Compliance, U.S. Department of Commerce.

Daniel J. Calhoun, Jack A. Levy, and Noah A. Meyer, of Rock Creek Trade, of Washington, D.C., for defendant-intervenor Encore Wire Corp.

Laroski, Judge: The action before the court is a motion for judgment on the agency record pursuant to U.S. Court of International Trade Rule 56.2. Tanghenam Electric Wire & Cable Co., Ltd. ("Tanghenam"), a producer of aluminum wire and cable products, challenges the U.S. Department of Commerce's ("Commerce") final affirmative determination in an anticircumvention inquiry conducted under § 781 of the Tariff Act of 1930, as amended, codified at 19 U.S. § 1677j, and the implementing regulations at 19 C.F.R. § 351.226. Pl. Mot. for J. on the Agency R., ECF No. 28 ("Tanghenam Br.").

Tanghenam raises two principal challenges: (1) Tanghenam contends that Commerce unlawfully applied adverse facts available ("AFA") in its circumvention analysis; and (2) Tanghenam challenges Commerce's determination that Tanghenam is ineligible to participate in certification because it is unable to ascertain that aluminum wire and cable products exported to the United States do not contain Chinese-origin inputs. Tanghenam Br. at 1–2.

Defendant United States ("the Government") and defendant-intervenor Encore Wire Corp. ("Encore Wire") maintain that Commerce's conclusions are supported by substantial evidence and otherwise lawful. Def. Resp. in Opp'n to Pl. Mot. for J. on the Agency R., ECF No. 32 ("Gov. Br."); Def.-Int.'s Resp. in Opp'n to Pl. Mot. for J. on the Agency R., ECF No. 34 ("DI Br.").

For the reasons discussed below, the court sustains Commerce's application

of AFA.  Nevertheless, because Commerce failed to adequately respond to

Tanghenam's argument that it can trace the country of origin of its inputs to

specific U.S. shipments using a reconstruction-based accounting method, the court

remands Commerce's certification determination for further consideration and

explanation consistent with this opinion.[1]

## BACKGROUND

### I.    The Orders and the Circumvention Inquiry

In December 2019, Commerce issued antidumping and countervailing duty

("AD/CVD") orders on aluminum wire and cable ("AWC") from the People's Republic

of China.  Aluminum Wire and Cable from the People's Republic of China:

Antidumping Duty and Countervailing Duty Orders, 84 Fed. Reg. 70,496 (Dep't

Commerce Dec. 23, 2019) (collectively, the "Orders").

---

[1] The court recognizes that there might appear to be some incongruity between Commerce's application of partial AFA and Tanghenam's potential eligibility to participate in the certification program.

Here, Commerce applied partial AFA for valuation purposes under sections 781(b)(1)(D) and 781(b)(2)(E) of the Act because Tanghenam misreported certain input origin information and failed to provide accurate and reliable corrections by the applicable deadlines, thereby failing to act to the best of its ability to cooperate with the inquiry.  See 19 U.S.C. § 1677e(a)–(b).  In other words, Commerce's application of partial AFA addressed the timeliness and reliability of Tanghenam's reporting, not whether Tanghenam possessed the underlying input origin records in the first place.

Eligibility to participate in the certification program concerns whether a producer can trace the origin of specific inputs to its U.S. shipments.  Commerce did not identify Tanghenam's misreporting of input origin information as a basis for its determination that Tanghenam was not eligible to participate in the certification program.  Rather, the sole basis for Commerce's determination was a verification statement that, once finished goods enter Tanghenam's finished goods inventory, "there is no way to track which products go to sales."  Verification Report at 24.  As discussed, in reaching this determination Commerce failed to address record evidence relating to Tanghenam's proposed reconstruction-based accounting method for tracing specific inputs to U.S. shipments.

In October 2023, Commerce initiated scope and circumvention inquiries concerning AWC completed in Vietnam using inputs from China pursuant to section 781 of the Tariff Act of 1930, as amended ("the Act").  Aluminum Wire and Cable from the People's Republic of China: Initiation of Scope and Circumvention Inquiries of the Antidumping Duty and Countervailing Duty Orders, 88 Fed. Reg. 72,041, P.R. 26 (Dep't Commerce Oct. 19, 2023) ("Initiation Notice").  The inquiries cover entries of subject AWC during the period of inquiry ("POI") from November 1, 2018, to September 30, 2023.  Id.  Commerce selected Tanghenam Electric Wire & Cable Co., Ltd. ("Tanghenam") as a mandatory respondent in the Vietnam circumvention inquiry.  Respondent Selection Memorandum, P.R. 73 (Feb. 12, 2024).

## II.    Tanghenam's Questionnaire Responses

Tanghenam describes itself as a Vietnamese producer of AWC with a single production facility located in Vietnam that exports to certain foreign markets which include the United States.  Initial Questionnaire Response, P.R. 98, at 1, 9 (Mar. 21, 2024) ("Tanghenam IQR").

In its initial questionnaire response, Tanghenam reported that it purchases inputs for the manufacture of AWC from multiple sources, including suppliers located the People's Republic of China ("China").  Id. at Exs. 16–17.  Tanghenam reported supplier names, purchase quantities, values, and purported countries of origin for those inputs.  Id. at Exs. 16–17.  Tanghenam also provided sample

purchase invoices, customs documents, and internal accounting records relating to its input purchases.  Id. at Ex. 18.

In March 2024, Tanghenam submitted its Factors of Production ("FOP") response, which included revised product-specific data identifying the country of origin for certain aluminum inputs.  Factors of Production Questionnaire Response, P.R. 104, at 1 (Mar. 28, 2024) ("FOP Submission").

In May 2024, Tanghenam submitted a supplemental questionnaire response that revised certain previously reported input-origin information and provided additional documentation relating to aluminum inputs purchased from Chinese suppliers.  Response to Supplemental Questionnaire, P.R. 142–146 (May 24, 2024).

### III.    Preliminary Determination

In August 2024, Commerce issued its preliminary determinations in the Vietnam scope and circumvention inquiries.  Aluminum Wire and Cable From the People's Republic of China: Preliminary Negative Scope Determinations With Respect to Cambodia, Korea, and Vietnam; Preliminary Affirmative Determinations of Circumvention With Respect to Korea and Vietnam; Preliminary Negative Determination of Circumvention With Respect to Cambodia, 89 Fed. Reg. 64,406, P.R. 171 (Dep't Commerce Aug. 7, 2024) ("Preliminary Determinations"); Antidumping Duty and Countervailing Duty Orders on Aluminum Wire and Cable from the People's Republic of China: Preliminary Decision Memorandum for the Scope Inquiry and Preliminary Decision Memorandum for the Circumvention Inquiry with Respect to the Socialist Republic of Vietnam, P.R. 168 (Dep't

Commerce July 31, 2024) ("PDM"); Aluminum Wire & Cable: Tanghenam Cable –

Preliminary Analysis Memorandum, P.R. 170 (Dep't Commerce Jul. 24, 2024)

("Prelim. Analysis Mem.").

Commerce preliminarily found that AWC completed by Tanghenam in

Vietnam circumvented the Orders because the completed AWC incorporated certain

Chinese-origin aluminum inputs, and these inputs constituted a significant portion

of the total value of the merchandise that Tanghenam exported to the United

States. PDM at 23–24. Commerce reached its preliminary affirmative

circumvention determination without applying adverse facts available. See PDM at

23–24.

Commerce also established a certification process that would permit

importers and exporters to certify that specific entries of inquiry merchandise do

not contain aluminum wire rod, aluminum wire strand, or aluminum wire produced

in China and therefore are not subject to suspension of liquidation or the collection

of cash deposits under the orders. PDM at 23–24; Preliminary Determinations at

64,410.

## IV.    Verification and Commerce's Findings Regarding Input Origins and Tracing

Following the preliminary determination, Commerce conducted on-site

verification of Tanghenam's questionnaire responses. Verification of the Responses

of Tanghenam Electric and Cable Co., Ltd. in the Circumvention and Scope Inquiry

on the Antidumping Duty Order on Aluminum Wire and Cable from People's

Republic of China, P.R. 188, at 2–7 (Nov. 25 2024) ("Verification Report"). At the

outset of verification, Tanghenam submitted a list of what it referred to as "minor corrections" to previously reported data, including corrections to the reported country of origin for certain aluminum inputs.  <u>Minor Corrections Presented at Verification</u>, P.R. 181 (Oct. 7, 2024).

During verification, Commerce examined Tanghenam's purchase ledgers, inventory movement records, and accounting documentation.  <u>Verification Report</u> at 8–23.  Commerce identified additional instances, beyond those that Tanghenam had corrected at the outset of verification, in which Tanghenam's reported country-of-origin information did not correspond to the actual origin of aluminum inputs reflected in source documents and instead reflected the suppliers' addresses.  <u>Id.</u> at 17–22.

Commerce also reviewed Tanghenam's inventory and production records to assess Tanghenam's ability to track aluminum inputs through production to finished goods.  <u>Id.</u> at 23–24.  Tanghenam demonstrated to Commerce how it could track the movement of inputs through the production stages using inventory movement records and a reconstruction-based accounting method.  <u>Id.</u>  Commerce observed, however, that once finished AWC products enter the finished goods inventory, "there is no way to track which products go to sales."  <u>Id.</u> at 24.

## V.    Final Determination

Following verification and briefing by interested parties, Commerce issued its Final Determination and accompanying Issues and Decision Memorandum.  <u>Aluminum Wire and Cable From the People's Republic of China: Final Negative</u>

<u>Scope Ruling and Final Affirmative Determination of Circumvention With Respect</u>
<u>to the Socialist Republic of Vietnam</u>, 90 Fed. Reg. 8,196, P.R. 203 (Dep't Commerce
Jan. 27, 2025) ("<u>Final Determination</u>"), accompanying <u>Issues and Decision</u>
<u>Memorandum for the Final Results of the Scope Ruling and Circumvention Inquiry</u>
<u>of the Antidumping and Countervailing Duty Orders on Aluminum Wire and Cable</u>
<u>from the People's Republic of China with Respect to the Social Republic of Vietnam</u>,
P.R. 202 (Jan. 17, 2025) ("<u>IDM</u>").

        In the Final Determination, Commerce applied partial adverse facts available
in its analysis of the value of Chinese-origin inputs within Tanghenam's production
process.  <u>Final Determination</u> at 8,196.  Commerce explained that although
Tanghenam identified certain minor errors at the outset of verification, Commerce
discovered additional, unreported inaccuracies during verification that reflected
broader and more systemic issues with the reliability of Tanghenam's reported
input-origin data.  <u>See</u> <u>IDM</u> at 4–5.  More specifically, Commerce identified
instances in which Tanghenam reported the country associated with the input
*supplier's* address, rather than the country of origin of the aluminum input itself.
<u>Id.</u>  Having determined that Tanghenam failed to act to the best of its ability to
report consumption quantities in accordance with the country of origin of inputs it
used to produce AWC, Commerce as adverse facts continued to find that the value
of Chinese inputs are a significant portion of the total value of AWC and that
processing performed in Vietnam represents a small proportion of the value of AWC
within the meaning of sections 781(b)(2)(E) and (b)(1)(D) of the Act.  <u>Id.</u>

Commerce also determined that Tanghenam was ineligible to participate in the certification process. Final Determination at 8,197. Commerce explained that certification eligibility requires the ability to identify the country of origin of aluminum inputs at the time of entry and trace those inputs to specific U.S. shipments. Id. Commerce determined that while Tanghenam was able to identify the country of origin of aluminum inputs, it was unable to trace those inputs to U.S. shipments, Tanghenam has "no way to track which products go to sales" once finished AWC products enter Tanghenam's finished goods inventory. IDM at 14–15 (citing Verification Report at 24).

Tanghenam timely commenced this action challenging Commerce's Final Determination. Compl., ECF No. 8, at ¶¶ 9–10 (Mar. 28, 2025).

## LEGAL FRAMEWORK

### I.    Jurisdiction

The court exercises jurisdiction in this case pursuant to 28 U.S.C. § 1581(c), which grants the court authority to review actions brought under section 516A of the Tariff Act of 1930, as amended ("the Act"), codified at 19 U.S.C. § 1516a, to contest a final determination that Commerce issues at the conclusion of an anticircumvention inquiry.  19 U.S.C. § 1516a(a)(2)(B)(vi).

### II.    Standard of Review

Under section 1516a(b)(1)(B)(i), the court will hold unlawful Commerce's determination if it is found "to be unsupported by substantial evidence on the record, or otherwise not in accordance with law."  Substantial evidence is "such

relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Consol. Edison Co. v. NLRB</u>, 305 U.S. 197, 229 (1938).  Under this standard of review, the court will not "disturb an agency determination if its factual findings are reasonable and supported by the record as a whole, even if there is some evidence that detracts from the agency's conclusion." <u>Ashley Furniture Indus., LLC v. United States</u>, 750 F. Supp. 3d 1329, 1338 (CIT 2024).

Additionally, courts "look for a reasoned analysis or explanation for an agency's decision as a way to determine whether a particular decision is arbitrary, capricious, or an abuse of discretion." <u>Wheatland Tube Co. v. United States</u>, 161 F.3d 1365, 1369 (Fed. Cir. 1998).  In turn, it is "well-established that an agency action is arbitrary when the agency offers insufficient reasons for treating similar situations differently." <u>SKF USA Inc. v. United States</u>, 263 F.3d 1369, 1382 (Fed. Cir. 2001).  Likewise, an "abuse of discretion occurs where the decision is based on an erroneous interpretation of the law, on factual findings that are not supported by substantial evidence, or represent an unreasonable judgment in weighing relevant factors." <u>WelCom Prods., Inc. v. United States</u>, 865 F. Supp. 2d 1340, 1344 (CIT 2012).

## III.    Anti-Circumvention Authority & Legal Framework

Section 781 of the Act authorizes Commerce to include within the scope of an antidumping or countervailing duty order merchandise completed or assembled in a third country where certain statutory criteria are satisfied.  19 U.S.C. § 1677j(b).  Commerce may do so if:

(A)  [the] merchandise imported into the United States is of the same class or kind as any merchandise produced in a foreign country that is the subject of [an AD/CVD order],

(B)  before importation into the United States, such imported merchandise is completed or assembled in another foreign country from merchandise which [is subject to the order or produced in the foreign country subject to the order],

(C)  the process of assembly or completion in the foreign country … is minor or insignificant,

(D)  the value of [the parts or components] … is a significant portion of the total value of the merchandise exported to the United States, and

(E)  [Commerce] determines that action is appropriate … to prevent evasion of such order or finding.

19 U.S.C. § 1677j(b)(1); see also 19 C.F.R. § 351.226(i) (permitting Commerce to "include within the scope of an antidumping or countervailing duty order … imported merchandise completed or assembled in a foreign country other than the country to which the order applies").

        To evaluate whether completion or assembly in a third country is "minor or insignificant," Commerce considers:

(A)  the level of investment in the foreign country,

(B)  the level of research and development in the foreign country,

(C)  the nature of the production process in the foreign country,

(D)  the extent of production facilities in the foreign country, and

(E)  whether the value of the processing performed in the foreign country represents a small proportion of the value of the merchandise imported into the United States.

19 U.S.C. § 1677j(b)(2).  No one factor controls.  <u>See</u> <u>Statement of Administrative</u>

<u>Action Accompanying the Uruguay Round Agreements Act</u>, H.R. Doc No. 103–316

at 892 (1994) ("SAA").

The statute also identifies three additional factors for Commerce to consider

when conducting a circumvention inquiry.  Specifically, Commerce "shall take into

account such factors as —":

(A)  the pattern of trade, including sourcing patterns,

(B)  whether the manufacturer or exporter of the parts or components is
affiliated with the person who assembles or completes the merchandise sold
in the United States from the parts or components produced in the foreign
country with respect to which the [antidumping order] applies, and

(C)  whether imports into the United States of the parts or components
produced in such foreign country have increased after the initiation of the
investigation which resulted in the issuance of such order or finding.

19 U.S.C. § 1677j(b)(3).

## IV.    Facts Otherwise Available and Adverse Inferences

Under section 776 of the Act, Commerce may use "facts otherwise available"

in reaching determinations if it meets certain threshold requirements specified by

statute.  19 U.S.C. § 1677e(a).  These statutory requirements include, *inter alia*, a

finding that (1) "necessary information is not available on the record"; or (2) that an

interested party "withholds" requested information, "fails to provide such

information by the deadlines for submission," "significantly impedes a proceeding,"

or provides information that "cannot be verified."  19. U.S.C. § 1677e(a)(1)–(2).

Section 776(b) further authorizes Commerce to draw an "adverse inference" if

it finds that the interested party has "failed to cooperate by not acting to the best of

its ability to comply with a request for information." 19 U.S.C. § 1677e(b). The statute thus establishes a two-step inquiry: (1) whether Commerce properly resorted to facts otherwise available under section 776(a), and if so, (2) whether Commerce permissibly applied AFA under section 776(b). 19 U.S.C. § 1677e(a)–(b).

The "best of its ability" requirement under § 776(b) does not require a showing of intent or bad faith. See 19 U.S.C. § 1677e(b). Instead, the relevant inquiry is whether the respondent "has put forth its maximum effort to provide Commerce with full and complete answers to all inquiries in an investigation." Nippon Steel Corp. v. United States, 337 F.3d 1373, 1382 (Fed. Cir. 2003). In other words, adverse inferences are appropriate where a respondent does not use "maximum effort" to provide requested information, even if the respondent made some effort to comply. Id.

In turn, section 782(e) of the Act, codified at 19 U.S.C. § 1677m(e), requires Commerce to consider information submitted by an interested party that either is untimely or fails to meet all formal requirements if certain conditions are satisfied, including (i) that the information is verifiable, (ii) that it can be used without undue difficulty, and (iii) that it is not so incomplete that it cannot serve as a reliable basis for a determination. 19 U.S.C. § 1677m(e).

Verification plays a critical role in Commerce's evaluation of the reliability and completeness of submitted information. At verification, Commerce is entitled to assess whether information provided during an investigation or inquiry is accurate and complete, and whether any deficiencies identified during verification

reflect isolated errors or more fundamental problems in a respondent's reporting. See 19 CFR § 351.307. Indeed, the purpose of verification is not to collect new information, but rather for Commerce to "test information provided by a party for accuracy and completeness." Micron Tech. v. United States, 117 F.3d 1386, 1396 (Fed. Cir. 1997) (quoting Bomont Indus. v. United States, 733 F. Supp. 1507, 1508 (CIT 1990)) (comparing verification to an audit).

Accordingly, when Commerce concludes that necessary information is missing or unreliable, and that the respondent did not act to "the best of its ability" to comply with Commerce's requests during the relevant period, the statute empowers Commerce to apply AFA. 19 U.S.C. § 1677e(b).

## V.    Certification in Circumvention Inquiries

19 C.F.R. § 351.228 establishes procedures for the initiation, conduct, and resolution of circumvention inquiries. Under section 351.228(a), Commerce may, under certain circumstances, permit importers or exporters to certify that merchandise entering the United States is not subject to an affirmative circumvention determination because it does not contain inputs from the country subject to the relevant order. Id. § 351.228(a). These certifications operate as an exception to the application of an AD/CVD order, allowing qualifying merchandise to enter United States without suspension of liquidation or collection of cash deposits. See id. § 351.228(b).

## DISCUSSION

I.      **Commerce's application of adverse facts available was supported by substantial evidence and otherwise in accordance with law**

    a. Party Arguments

Tanghenam contends that Commerce unlawfully applied AFA because Tanghenam identified minor errors in its reported input-origin data at the outset of verification and Commerce accepted those corrections at verification.  Tanghenam Br. at 2.  Tanghenam further asserts that Commerce identified no "gap" in the record that would have allowed the use of facts otherwise available, because Commerce ultimately verified Tanghenam's underlying purchase, inventory, and accounting records and could have relied on that verified information to complete its circumvention analysis without resorting to AFA.  Id. at 14–16.  Tanghenam maintains that the statute does not permit Commerce to apply AFA where a respondent timely corrects erroneous representations about information it has provided and where verification confirms the reliability of the underlying records.  Id. at 10, 18.

Tanghenam further argues that section 782(e) of the Act – which specifies certain categories of information that Commerce "shall not decline to consider" – required Commerce to accept Tanghenam's submitted information.  Tanghenam Br. at 11 (citing 19 U.S.C. § 1677m(e)).  More specifically, Tanghenam argues that because its country-of-origin reporting was ultimately usable, verifiable, and available on the record, Commerce had no option but to accept it instead of drawing

an adverse inference, even if Tanghenam and Commerce discovered errors at verification.  Id. at 18, 19.

The Government responds that Commerce properly applied partial AFA because Tanghenam's initial list of "minor corrections" did not capture the full scope of inaccurate country-of-origin reporting revealed during verification.  Gov. Br.  at 11.  The Government argues that Commerce independently identified additional, unreported inaccuracies that reflected systemic deficiencies in Tanghenam's reporting practices rather than isolated clerical errors.  Id.  According to the Government, these deficiencies demonstrate that Tanghenam failed to act to the "best of its ability" to comply with Commerce's requests for information and failed to provide accurate country of origin information by the deadlines for submission, warranting the application of partial AFA.  Id. at 11, 15.

Defendant-intervenor Encore Wire similarly argues that Commerce acted within its discretion in applying partial AFA because the verification findings revealed broader reliability concerns related to Tanghenam's input country-of-origin reporting, demonstrating that Tanghenam withheld information, failed to provide requested information by the deadlines for submission, significantly impeded the circumvention inquiry, and failed to act to the "best of its ability" when responding to Commerce's requests for information.  DI Br. at 8.  Encore Wire contends that the statute does not require Commerce to excuse pervasive, unreported inaccuracies simply because a respondent identifies some minor errors at verification.  Id.

### b. Legal Framework and Analysis

Section 776(a) of Act, as amended, authorizes Commerce to rely on facts otherwise available when, *inter alia*, necessary information is missing from the record or when an interested party withholds information, fails to provide information by the deadlines for submission, or significantly impedes the proceeding. 19 U.S.C. § 1677e(a)(1)–(2). The statute does not require that information is entirely absent from the record; it is sufficient that the information Commerce requires to perform its analysis is unreliable or unavailable within timeframe requested. See id.

Here, substantial evidence supports Commerce's conclusion that Tanghenam did not place accurate, reliable country-of-origin information on the record by the deadline for submission. Commerce set a deadline of June 12, 2024 – months before verification – for Tanghenam to provide accurate and reliable country-of-origin data in its factors of production ("FOP") database. Extension of Deadlines for the Final Determinations in Circumvention Inquiries, P.R. 149, at 2 (June 5, 2024). Commerce also warned Tanghenam that verification is "not intended to be an opportunity for the submission of new factual information." Verification Agenda, P.R. 178, at 2 (Sep. 21, 2024). While Tanghenam disclosed certain limited reporting errors at the outset of verification, Commerce later identified additional, more systemic deficiencies through its own examination of source documentation, including purchase and accounting records. Verification Report at 17–22. More specifically, Commerce found that when Tanghenam purported to disclose the

country of origin of its aluminum inputs, it actually listed the countries where the
input *suppliers* were located, rather than the countries where the aluminum inputs
themselves originated. Id. at 22. At verification, Commerce found that this error
affected multiple purchases and extended beyond the scope of the initial corrections
that Tanghenam submitted at the outset of verification, demonstrating a deeper,
systemic issue with Tanghenam's country-of-origin reporting. See id. at 21–22; Gov.
Br. at 7, 14; Tanghenam Br. at 7.

Section 776 of the Act does not require Commerce to treat information
disclosed or discovered for the first time at verification as timely, nor does
verification cure systemic reporting errors and deficiencies in a respondent's prior
reporting. See 19 U.S.C. § 1677e. As the Federal Circuit has emphasized,
"[v]erification represents a point of no return" beyond which new information may
not be considered. Goodluck India Ltd., 11 F.4th 1335, 1343 (Fed. Cir. 2021). In
this proceeding, Commerce explicitly warned Tanghenam that verification "is not
intended to be an opportunity for the submission of new factual information."
Verification Agenda, P.R. 178 (Sep. 21, 2024). By the time Commerce discovered
systemic issues with Tanghenam's country-of-origin reporting at verification, it was
too late for Tanghenam to cure its deficiencies. Commerce therefore permissibly
concluded that, during the relevant period of the proceeding, the record lacked
reliable country-of-origin information – providing sufficient basis for the use of facts
otherwise available. See 19 U.S.C. §§ 1677e(a)(1), 1677e(a)(2)(B).

Once Commerce relies on facts otherwise available, section 776(b) of the Act permits Commerce to draw an "adverse inference" if the interested party fails to cooperate by not acting to "the best of its ability" to comply with Commerce's requests for information.  19 U.S.C. § 1677e(b).  The statute does not require Commerce to find intent or bad faith in order to draw an adverse inference. See Nippon Steel Corp, 337 F.3d 1373, 1383 (Fed. Cir. 2003) (explaining that "the statute does not contain an intent element").  Instead, the relevant inquiry is whether the respondent "put forth its maximum effort" to provide Commerce with full and complete answers to all inquiries.  Id. at 1382.  A respondent fails to act to "the best of its ability" when it does not "take reasonable steps" to ensure the accuracy of its submissions, particularly when the respondent possesses the information necessary to do so.  Id.

Here, Commerce reasonably concluded that Tanghenam did not act to the "best of its ability" to provide accurate and reliable country-of-origin information, which justifies the application of partial AFA.  As previously noted, after Tanghenam identified the initial set of reporting errors, Commerce independently identified additional, more systemic deficiencies that Tanghenam had not previously disclosed.  See Verification Report at 17–22.  Critically, Commerce also determined that Tanghenam possessed the underlying information necessary to report accurate country-of-origin data both before and after disclosing the initial errors, yet failed to use the relevant function in Excel – which Tanghenam had

already used prior to verification[2] – to discover the deeper, more systemic reporting

errors that Commerce unearthed at verification.  Id. at 4, 17–18.  The statute

requires a respondent to act to the "best of its ability," which entails appreciably

more than partial disclosure of errors after verification has already begun.  After

Tanghenam identified its initial reporting mistakes, the "best of its ability"

standard required Tanghenam to, at the very least, take reasonable steps to

investigate whether any deeper or more systemic reporting errors existed.

Tanghenam's failure to do so supports Commerce's conclusion that Tanghenam did

not act to the "best of its ability," justifying the application of partial AFA.  See

Nippon Steel, 337 F.3d at 1380–82.

Tanghenam's argument that no informational "gap" existed to justify AFA

overlooks the temporal and procedural nature of the statutory inquiry.  Section 776

of the Act asks whether necessary information was provided on the record during

the relevant period of the proceeding, in the form and manner requested, such that

Commerce could rely on that information in a timely fashion when conducting its

analysis.  See 19 U.S.C. § 1677e(a)(2).  During the relevant period, Tanghenam's

country-of-origin reporting contained unreported, systemic inaccuracies that

Commerce only discovered through independent examination of source

---

[2]  The Verification Report notes that, "in preparation for verification," Tanghenam used an Excel formula to "track the source of each material" – which is how Tanghenam noticed the initial set of inaccuracies in the first place.  Verification Report at 4.  Nevertheless, after disclosing these initial inaccuracies to Commerce, Tanghenam apparently failed to use the same Excel formula to discover the deeper, more systemic reporting deficiencies that Commerce later identified of its own accord at verification.  Tanghenam does not dispute that Tanghenam could have used the Excel function to provide accurate country-of-origin information.  Gov. Br. at 15–16 (citing Verification Report at 17–18).

documentation at verification.  See Verification Report at 21–22.  That Commerce

later discovered the correct country-of-origin information through its own efforts

does not cure the information gap that existed at the time when Commerce

requested accurate reporting to conduct its circumvention analysis.

Likewise, Tanghenam's argument that the deficiencies at issue were "minor"

is unavailing.  See Tanghenam Br. at 2.  Because a circumvention inquiry focuses

precisely on whether inputs from the subject country are used in the completion of

the downstream merchandise in a third country, accurate identification of input

origins is hardly "minor" or peripheral; rather it goes to the core of the

circumvention analysis itself.  See 19 U.S.C. § 1677j(b).  Here, Commerce applied

partial AFA to the value comparison between Chinese-origin inputs and processing

performed in Vietnam: an element that relies entirely on accurate country-of-origin

reporting for each input.  See IDM at 5–6.  Given the centrality of country-of-origin

reporting to Commerce's circumvention analysis, Commerce reasonably declined to

treat systemic reporting deficiencies on this issue as "minor."

As for Tanghenam's contention that section 782(e) of the Act requires

Commerce to accept Tanghenam's submitted information regardless of the errors

identified at verification, Tanghenam Br. at 11, this argument fails for the same

reason Commerce was entitled to draw an adverse inference in the first place:

Tanghenam failed to cooperate to the best of its ability.  Section 782(e) only

obligates Commerce to consider a respondent's information if the respondent

demonstrates, among other things, that it has acted "to the best of its ability" in

complying with Commerce's requests for information.  19 U.S.C. § 1677m(e)(4).  The
Federal Circuit and the Court of International Trade ("CIT") have explained that
this "best of its ability" language in section 782(e) carries the same meaning, and
requires the same analysis, as the identically worded "best of its ability" language
in section 776(b) about adverse inferences.[3]  Accordingly, a respondent's claim
under section 782(e) "stands or falls" with whether that respondent has cooperated
to the "best of its ability" with Commerce's circumvention inquiry.  NSK Ltd. v.
United States, 481 F.3d 1355, 1360 (Fed. Cir. 2007).

Here, as discussed above, Commerce reasonably concluded that Tanghenam
failed to cooperate to the "best of its ability," because after identifying an initial set
of reporting errors, Tanghenam failed to perform routine database checks that
would have revealed the systemic inaccuracies that Commerce discovered at
verification.  See Verification Report at 4, 17–18.  Because Commerce permissibly
found that Tanghenam did not satisfy the best-of-its-ability standard, section
1677m(e) does not require Commerce to accept Tanghenam's corrections instead of
drawing an adverse inference.

Given the nature, scope, and timing of the inaccuracies that Commerce
identified during verification, substantial evidence supports Commerce's decision to
apply partial AFA.  See 19 U.S. § 1677e(b); Consol. Edison, 305 U.S. at 229.

---

[3] See NSK Ltd. v. United States, 481 F.3d 1355, 1361 n.1 (Fed. Cir. 2007) (noting that failure to
"satisfy the 'best ability requirement' requirement of section 1677e(b) … also fail[s] to satisfy the
'best ability' requirement of 1677m(e)"); see also Hung Vuong Corp. v. United States, 483 F. Supp. 3d
1321, 1359 n.40 (CIT 2020) (explaining that these two identical statutory phrases about best ability
"have the same meaning, and are subject to the same analysis").

Verification is not an opportunity to disclose foundational reporting errors for the first time, much less an opportunity to partially disclose some reporting errors while leaving readily discernible, systemic deficiencies for Commerce to discover during its own review.

Finally, the court notes Encore Wire's contention that Commerce's application of partial AFA did not materially affect the ultimate circumvention determination because Commerce already reached an affirmative finding at the preliminary stage, even before applying adverse inferences. DI Br. at 9. Because the court sustains Commerce's application of partial AFA, it does not address the counterfactual question of whether Commerce would have reached a different final determination on circumvention absent the application of partial AFA.

## II. Commerce's denial of certification eligibility was not adequately explained and must be remanded

### a. Party Arguments

Tanghenam contends that Commerce unlawfully denied its eligibility to participate in the certification regime associated with the circumvention determination. Tanghenam Br. at 20. Tanghenam asserts that it can trace aluminum input purchases to specific U.S. export shipments by applying a reconstruction-based accounting method to its purchase ledgers, inventory movement records, production records, and sales documentation. Pl. Reply Br. in Supp. of Mot. for J. on Agency R., ECF No. 36, at 2–4 ("Tanghenam Reply"). Tanghenam further contends that the administrative record contains a

"comprehensive trail demonstrating the step-by-step process by which Tanghenam connects exported products to the origin of their underlying inputs." Id. at 2.

Additionally, Tanghenam argues that Commerce's refusal to allow Tanghenam to certify is contrary to law and exceeds Commerce's authority. According to Tanghenam, Commerce's approach of barring "all parties that receive AFA" from certification unlawfully compels Tanghenam to "report all Vietnamese AWC entries as Chinese-origin, even in cases where the AWC demonstrably has zero percent Chinese-origin content." Id. at 22, 24. Tanghenam asserts that this outcome is arbitrary, capricious, and inconsistent with Customs' country-of-origin reporting framework under its marking statute and implementing regulations. Id. at 23 (citing 19 U.S.C. § 1304 and 19 C.F.R. § 134).

The Government responds that Commerce reasonably denied eligibility to Tanghenam because certification requires the ability to tie specific inputs to specific exports at the time of entry. Gov. Br. at 10. The Government argues that Commerce's verification findings establish that once goods enter Tanghenam's finished goods inventory, Tanghenam cannot track which finished goods correspond to specific U.S. shipments or incorporate specific inputs. Id. at 10–11. According to the Government, that inability independently supports Commerce's conclusion that Tanghenam could not certify that its exports did not contain Chinese-origin aluminum inputs. Id.

The Government also rejects Tanghenam's argument that Commerce's certification practices unlawfully compel false entries. According to the

Government, Commerce did not exclude Tanghenam from certification because it received partial AFA, but rather because Tanghenam failed, in Commerce's view, to demonstrate its ability to trace the origins of specific inputs to U.S. shipments. Gov. Br. at 24–25; IDM at 14–15. According to the Government, Tanghenam has conflated the AFA issue with the certification issue by incorrectly asserting that AFA formed the basis of Tanghenam's exclusion from certification.

Defendant-intervenor Encore Wire similarly argues that Commerce reasonably denied Tanghenam from certification because Tanghenam commingled finished goods in a manner that precluded reliable tracing of inputs to U.S. shipments, and not because Tanghenam received partial AFA. See DI Br. at 9. Encore Wire contends that Commerce acted "well within its legal authority and consistent with its established practice in precluding Tanghenam from participating in the certification process given Tanghenam's demonstrated inability to tie specific inputs to specific exports." Id.

### b. Legal Framework and Analysis

In its Final Determination, Commerce included specific certification language requiring certifying parties to attest, *inter alia*, that: "The aluminum wire and cable covered by this certification does not contain aluminum wire rod, aluminum wire strand, or aluminum wire produced in the People's Republic of China." Final Determination at 8,199.

In doing so, Commerce conditioned eligibility for certification on an importer's ability to (1) identify the country of origin of aluminum inputs used to

produce the finished goods, and (2) "trace" those inputs to specific U.S. shipments,

all to ascertain that products entering the United States do not contain aluminum

wire rod, aluminum wire strand, or aluminum wire produced in China.  The court

notes that neither section 781 of the Act nor Commerce's implementing regulations

prescribes a specific, required methodology for "tracing" input origins to specific

U.S. shipments, such as by physical segregation of finished goods based on input

country of origin, by reconstruction-based accounting methods, or by some other

method.  See 19 U.S.C. § 1677j; 19 C.F.R. §§ 351.226, 351.228.  In other words, the

statute and regulations do not expressly require the physical segregation of finished

goods based on input country of origin, nor do they expressly prohibit

reconstruction-based tracing.  Id.

    In the Final Determination, Commerce denied Tanghenam eligibility for

certification based on its verification finding that once finished goods entered the

finished goods inventory, Tanghenam had "no way" to track which finished goods

corresponded to which U.S. shipments.  IDM at 14 (citing Verification Report at 24).

Commerce relied on that observation to conclude that Tanghenam could not "tie

specific inputs to specific exports" for purposes of certification.  IDM at 14.

    The record reflects, however, that Tanghenam did argue during the

proceeding before Commerce that it could (1) identify the country of origin of

aluminum inputs used to produce the finished goods, and (2) "trace" those inputs to

specific U.S. shipments using inventory records and reconstruction-based

accounting methods.  In its rebuttal brief before Commerce, Tanghenam explained

that it can utilize a reconstruction-based accounting method to connect batches of

exported finished products to their underlying inputs using purchase ledgers

identifying input origins, inventory movement records, and sales records associating

finished goods with prior inventory receipts.  See Tanghenam's Rebuttal Br., P.R.

198, at 12–14, 20, (Dec. 16, 2024) ("Tanghenam Rebuttal Br."); see also Tanghenam

Reply at 2–3.  More specifically, Tanghenam asserted that it has "the full ability to

track the information of material inputs used for its AWC production, including

both country of suppliers and country of origin."  Tanghenam's Case Br. at 14.

Tanghenam likewise demonstrated to Commerce how it uses a reconstruction-based

accounting method to "track the country of origin for its input materials" using

Tanghenam's purchase ledgers from 2020 to 2023.  Tanghenam Rebuttal Br. at 13.

Tanghenam explained that it can apply this method to the company's inventory

movement ledger in order to "precisely match each input material used for

production with the corresponding purchasing transaction, thereby obtaining … the

country source and the origin of the material, if needed."  Id. at 20.  In short,

Tanghenam argued before Commerce with supporting documentation that it could

use a reconstruction-based accounting method to *both* (1) identify the origins of its

inputs, and (2) trace those inputs to specific U.S. shipments – as required for

certification.

Commerce's Final Determination and Issues and Decision Memorandum do

not meaningfully engage with this reconstruction-based tracing argument.  In

reaching its determination, Commerce did not explain why the use of Tanghenam's

proposed reconstruction-based accounting method for tracing fails to meet the certification standard that it articulated and applied. See IDM at 14. Instead, Commerce cited to a single sentence in the verification report that observed commingling in the finished goods inventory, all without addressing Tanghenam's core contention that commingling does not inherently preclude tracing. Id. (citing Verification Report at 24).

When reviewing an agency determination, the court's role is to review the agency's reasoning, not to supply it. See Motor Vehicle Mfrs. Ass'n. v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43 (1983). Here, Commerce denied certification without addressing Tanghenam's principal argument: that it could trace inputs to U.S. shipments through reconstruction-based accounting methods and information provided in the record. See IDM at 14.

Because Commerce did not address Tanghenam's reconstruction-based tracing argument or explain why commingling of finished goods forecloses certification eligibility, the court cannot sustain Commerce's certification determination on this record. Commerce's conclusory reference to a single verification observation when the respondent has advanced a specific, alternative tracing methodology grounded in record evidence does not meet the substantial evidence standard. See Consol. Edison, 305 U.S. at 229 (noting that "[s]ubstantial evidence is more than a mere scintilla"). Accordingly, the court remands Commerce's certification determination for further consideration and explanation.

At the same time, the court rejects Tanghenam's argument that Commerce unlawfully compelled false entries by excluding AFA respondents such as Tanghenam from the certification process.  Tanghenam's argument rests on a premise that Commerce did not adopt; Commerce did not deny certification because Tanghenam received partial AFA, as Tanghenam inaccurately suggests,[4] nor did Commerce apply a categorical rule barring respondents subject to AFA or partial AFA from certification.  IDM at 14–15.  Instead, Commerce found Tanghenam ineligible to certify because, in Commerce's view, Tanghenam could not demonstrate the ability to trace its production inputs to specific U.S. shipments.  Id. As Commerce expressly stated in its Issues and Decision Memorandum, "Tanghenam cannot participate in the certification process *given that* Tanghenam uses Chinese-inputs and could not tie inputs to specific exports."  IDM at 14 (emphasis added).  In sum, Commerce did not require Tanghenam or Customs to engage in a "legal fiction," nor did it compel false entries.  Tanghenam Reply at 6. Instead, Commerce concluded that, absent a tracing method that it recognized, Tanghenam could not satisfy the premise of certification itself: the ability to attest that shipments to the United States do not contain inputs from the AD/CVD subject country at issue, in this case China.

---

[4] In its opening brief, Tanghenam inaccurately suggests that Commerce excluded Tanghenam from certification *because* Tanghenam received AFA.  See, e.g., Tanghenam Br. at 22 (claiming that "Tanghenam, and all parties that receive AFA, are completely barred from this process"); Id. at 20 (suggesting that, "as part of its application of total AFA on Tanghenam, Commerce found that Tanghenam is ineligible for the certification process"); Id. at 25 (claiming that "Commerce applied AFA to respondent's exports and, *as a result* did not allow the respondent to certify the origin of its exports") (emphasis added).

The court therefore remands not because Commerce lacked the legal authority to block certification for AFA recipients (as Tanghenam suggests), but rather because Commerce did not adequately address Tanghenam's specific, reconstruction-based tracing argument before reaching a final determination.

Finally, the court notes that nothing in today's remand order prevents Tanghenam from simultaneously seeking reconsideration on certification in pending or future AWC administrative reviews or changed circumstances reviews.[5]  See IDM at 14.  Indeed, the court recognizes that Tanghenam has already begun to pursue such opportunities through its participation in ongoing administrative reviews of both AWC orders.  Initiation of Antidumping and Countervailing Duty Administrative Reviews, 90 Fed. Reg. 8,187, 8,190–92 (Dep't Commerce Jan. 27, 2025).  The court expresses no view on the merits of any such proceedings.

## CONCLUSION AND ORDER

For the foregoing reasons, the court sustains Commerce's application of partial AFA to Tanghenam in reaching determinations under sections 781(b)(1)(D) and 781(b)(2)(E) of the Act, as amended.  See IDM at 5–6 (limiting the application of AFA to valuation determinations under 19 U.S.C. § 1677j(b)(1)(D) and 19 U.S.C. § 1677j(b)(2)(E)).

---

[5] In OCTG from China, Commerce determined that it could reconsider the respondent's eligibility for certification "in a future segment of the proceeding … i.e., a changed circumstances review or an administrative review."  Oil Country Tubular Goods from the People's Republic of China: Final Affirmative Determinations of Circumvention, 86 Fed. Reg. 67,444 (Dep't Commerce Nov. 26, 2021) ("OCTG from China").

However, the court remands Commerce's determination that Tanghenam is

ineligible to participate in Commerce's certification regime.  Commerce rested that

determination solely on a verification statement that, once finished goods enter

Tanghenam's finished goods inventory, "there is no way to track which products go

to sales."  Verification Report at 24.  Nevertheless, Tanghenam points to evidence

and arguments made before Commerce and this court that it can, in fact, trace

inputs to specific U.S. shipments using its sales ledger, inventory movement ledger,

and purchase ledger, including by mapping export shipments to specific warehouse-

received batches and linking those batches (via document numbers) back to input

purchases and their origin information.  Tanghenam's Case Br. at 12–14, 20;

Tanghenam Reply at 2–3.  Commerce's determination does not adequately engage

with this reconstruction-based accounting method for tracing, nor does it

adequately explain why the verification team's observation about commingled

finished goods necessarily forecloses certification eligibility for Tanghenam.  The

court therefore remands for Commerce to address, with specificity, Tanghenam's

arguments relating to its reconstruction-based accounting method for tracing inputs

to sales of finished goods and explain – based on record evidence and the relevant

statutory and regulatory provisions – whether and why Tanghenam proposed

methodology satisfies or fails to satisfy the relevant criteria for certification

eligibility.  Therefore, upon consideration of all papers and proceedings herein, it is

hereby

**ORDERED** that Commerce, within 90 days from the date of issuance of this Opinion and Order, shall submit a redetermination upon remand ("Remand Redetermination") that complies with this Opinion and Order; it is further

**ORDERED** that defendant shall supplement the administrative record with documents, or portions thereof, considered by Commerce in reaching the decision in the Remand Redetermination within 14 days of the Remand Determination; it is further

**ORDERED** that subsequent proceedings shall be governed by USCIT Rule 56.2(h); and it is further

**ORDERED** that the parties shall file the joint appendix within 14 days after the filing of replies to the comments on the Remand Redetermination.

/s/      Joseph A. Laroski, Jr.

Joseph A. Laroski, Jr., Judge

Dated: <u>February 24, 2026</u>

New York, New York