A-570-095
C-570-096
Remand
Slip. Op. 26-21
Public Document

**Tanghenam Electric Wire & Cable Co., Ltd. v. United States**
Court No. 25-00049, Slip Op. 26-21 (CIT February 24, 2026);
Aluminum Wire and Cable from the People's Republic of China; Circumvention Inquiry with
Respect to the Socialist Republic of Vietnam

**FINAL RESULTS OF REDETERMINATION
PURSUANT TO COURT REMAND**

**I.      SUMMARY**

These final results of redetermination are issued pursuant to the opinion and remand

order of the U.S. Court of International Trade (the Court) in *Tanghenam Electric Wire & Cable*

*Co., Ltd. v. United States*, Court No. 25-00049, Slip Op. 26-21 (February 24, 2026) (*Remand*

*Order*).[1]  In its *Remand Order*, the Court sustained Commerce's application of partial adverse

facts available (AFA) but remanded Commerce's determination that Tanghenam Electric Wire &

Cable Co., Ltd. (Tanghenam) is ineligible to participate in the certification program.[2]

Specifically, the Court instructed Commerce to further explain its determination and address

Tanghenam's argument that it can trace the country of origin of inputs to specific U.S. shipments

using a reconstruction-based accounting methodology.[3]

On remand, Commerce has reconsidered the record evidence, including Tanghenam's

proposed tracing methodology and the findings at verification.  For the reasons explained below,

Commerce continues to find that Tanghenam is not eligible to participate in the certification

program because it has not demonstrated that it possesses a reliable accounting system capable of

---

[1] *See Tanghenam Electric Wire & Cable Co., Ltd. v. United States*, Court No. 25-00049, Slip Op. 26-21 (CIT
February 24, 2026) (*Remand Order*).
[2] *Id.* at 3–4.
[3] *Id*. at 3, 28-30.

accurately tracing the country of origin of inputs to specific shipments of subject merchandise to the United States.

## II.    BACKGROUND

Commerce conducted a circumvention inquiry under section 781 of the Tariff Act of 1930, as amended (the Act), concerning aluminum wire and cable (AWC) completed in the Socialist Republic of Vietnam using inputs from the People's Republic of China.[4]  In the *Final Determination*, Commerce found that Tanghenam's AWC exports to the United States circumvent the *Orders*[5] and further determined that Tanghenam was not eligible to participate in the certification program because it could not trace the country-of-origin of inputs to produce AWC in Vietnam to shipments of AWC to the United States.[6]  At verification, Commerce examined Tanghenam's accounting and inventory systems and identified multiple discrepancies in the country-of-origin information reported in its Tanghenam's questionnaire responses and in its books and records.[7]  Commerce also observed that once finished goods enter inventory, "there is no way to track which products go to sales," according to Tanghenam officials.[8]

On May 14, 2026, Commerce issued the draft results of redetermination pursuant to remand.[9]  We invited parties to comment on the Draft Redetermination by May 20, 2026.

---

[4] *See Aluminum Wire and Cable from the People's Republic of China:  Final Negative Scope Ruling and Final Affirmative Determination of Circumvention with Respect to the Socialist Republic of Vietnam*, 90 FR 8,196 (January 27, 2025) (*Final Determination*), and accompanying Issues and Decision Memorandum (IDM).

[5] *See Aluminum Wire and Cable from the People's Republic of China:  Antidumping and Countervailing Duty Orders,* 84 FR 70496 (December 23, 2019) (*Orders*).

[6] *See Final Determination*, 90 FR at 8197; *see also Final Determination* IDM at 14–15.

[7] *See* Memorandum, "Verification of the Responses of Tanghenam Electric Wire and Cable Co., Ltd. in the Circumvention Inquiry on Aluminum Wire and Cable from the People's Republic of China," dated November 2024 at 17–22 (Verification Report).

[8] *Id.* at 24.

[9] *See Tanghenam Electric Wire & Cable Co., Ltd. v. United States*, Court No. 25-00049, Slip Op. 26-21 (CIT February 24, 2026); Aluminum Wire and Cable from the People's Republic of China; Circumvention Inquiry with Respect to the Socialist Republic of Vietnam; Draft Results of Redetermination Pursuant to Remand, uploaded May 14, 2026 (Draft Redetermination).

Pursuant to a request from Tanghenam, we extended the time limit for comments to June 3, 2026.[10]  On May 20, 2026, Encore Wire Corporation (Encore), a domestic interested party, submitted a "letter in lieu of comments," noting it "agrees with and supports the analysis" in the Draft Redetermination and agreeing with Commerce's conclusion to continue finding that Tanghenam is not eligible to participate in the certification program.[11]  Encore urged Commerce to adopt that position in the final results of redetermination pursuant to remand.[12]  On June 3, 2026, Tanghenam submitted comments in opposition to the conclusions of the Draft Redetermination.[13]  These comments are addressed by Commerce below after the Analysis section.

### III.    ANALYSIS

Participation in the certification program requires that a respondent be able to:  (1) identify the country of origin of inputs in the company's books and records, (2) trace those inputs to specific products in finished goods inventory, and (3) link specific products in finished goods inventory to shipments of AWC to the United States.[14]  Specifically, the certification requires that all exporters certify that "the AWC covered by this certification does not contain aluminum wire rod, aluminum wire strand, or aluminum wire produced in the People's Republic of China."[15]  This requirement ensures that entries certified as non-subject merchandise do not contain inputs from the country that is subject to the order.

---

[10] *See* Memorandum, "Extension of Deadline for Comments on Draft Remand Redetermination," dated May 21.
[11] *See* Encore Letter, "Petitioner's Letter in Lieu of Comments on Draft Results of Redetermination Pursuant to Court Remand," dated May 20, 2026.
[12] *Id.*
[13] *See* Tanghenam Letter, "Tanghenam's Comments on Draft Results of Redetermination Pursuant to Court Remand," dated June 3, 2026 (Tanghenam Comments).
[14] *See Final Determination* IDM at 14–15.
[15] *See Final Determination* at Appendix IV.

Tanghenam argues that it can trace the origin of inputs to merchandise shipped to the United States using a "reconstruction-based accounting methodology," including the application of a first-in, first-out (FIFO) approach to inventory records.[16]  Commerce understands Tanghenam's argument to be the following:  if the first 100 metric tons of a certain material purchased and put into inventory by Tanghenam originated in Malaysia, then the first 100 metric tons of that same material consumed in production must have originated in Malaysia.[17]

The record does not demonstrate that Tanghenam's accounting system is sufficiently reliable to perform a reconstruction-based methodology.  Commerce's verification findings reveal significant deficiencies in Tanghenam's accounting and reporting systems that, Commerce concludes upon examining the issues presented by this redetermination, undermine the reliability of Tanghenam's proposed methodology.  First, Commerce identified multiple instances in which Tanghenam misrecorded the country-of-origin of inputs in its questionnaire responses and in its books and records, including instances where the reported country-of-origin reflected the supplier's address rather than the actual origin of the material input.[18]  The Court acknowledges this specific issue, noting:  "Tanghenam's country-of-origin reporting contained unreported, systemic inaccuracies that Commerce only discovered through independent examination of source documentation at verification."[19]  As the Court notes, Tanghenam's problems correctly identifying the country of origin of its inputs went beyond the errors it discovered and reported itself at the outset of verification, as Commerce later identified additional, more systemic

---

[16] *See Remand Order* at 3–4 and Verification Report at 17 and 24.
[17] *See* Tanghenam's Letter, "Tanghenam's Rebuttal Brief," dated December 16, 2024, at 12-14 (Tanghenam's Rebuttal Brief) and *Remand Order* at 27.
[18] *See* Verification Report at 22 (a sample of the errors in table format).
[19] *See Remand Order* at 20-21.

deficiencies through its own examination of source documentation, including purchase and accounting records.[20]

Second, as noted, Tanghenam submitted numerous corrections at verification, including:[21]

- Misreported sales transactions and omitted sales;

- Incorrect classification of product codes;

- Errors in input origin reporting and consumption quantities; and

- Incorrect unit conversions and valuation methodologies.

These errors are not isolated.  Rather, they demonstrate broader weaknesses in Tanghenam's accounting system, including reliance on manual processes, inconsistent data reconciliation, and inaccuracies in core production and inventory records.  These same deficiencies—misreporting, inconsistent records, and unreliable accounting practices—lead us to conclude that Tanghenam does not maintain a system capable of accurately tracking the country-of-origin of inputs through production and to subject merchandise shipped to the United States, regardless of whether that tracking is done through direct means or in the indirect manner using its FIFO inventory system as it now proposes.  A FIFO approach would require that inventory records are accurate, consistent, and systematically maintained.  Given these systemic issues, applying FIFO assumptions to flawed underlying data cannot produce reliable tracing results. Indeed, given the mistakes Commerce saw at verification, Tanghenam appears either unable or unwilling to accurately document – even in the aggregate – the amounts of inputs sourced by country of origin.

---

[20] *Id.* at 17 (citing Verification Report at 17-22).
[21] *See* Verification Report. at 2–7.

Finally, Commerce finds that Tanghenam's proposed tracing methodology is largely hypothetical. While Tanghenam demonstrated certain aspects of its reconstruction approach at verification (such as – partially failed – attempts to determine aggregate amounts of consumption by country of origin), Commerce did not observe a functioning system that actually links inputs to shipments of subject merchandise to the United States in the ordinary course of business.[22] Instead, Tanghenam's proposal relies on retrospective reconstruction using spreadsheets and assumptions that were not implemented nor factually supported at verification. Commerce's practice requires demonstrable, verifiable tracing capability—not theoretical reconstruction. The certification, for example, requires "direct personal knowledge of the facts regarding the production and exportation of the sales identified" in the certification, which must be identified by specific customers, invoices, and invoice line items.[23] "Direct personal knowledge" refers to facts the exporter is expected to have in its own records.[24] Commerce's determination is consistent with its prior practice in circumvention proceedings, such as the *Glycine from China CCR* involving Salvi Chemical Industries, where Commerce emphasized the necessity of reliable, verifiable accounting systems as a necessary foundation for a respondent to accurately certify the country-of-origin of the inputs incorporated in to merchandise shipped to the United States.[25] In its final determination, Commerce found:

> {B}ased upon the record of this CCR, Salvi…is ineligible to participate in the importer certification process because, after further review of the record evidence and comments submitted, we find that Salvi failed to maintain its books and records to accurately document the origin of the in-scope China-origin glycine entering its inventory which is used to process glycine. As a result, glycine produced,

---

[22] *Id.* at 23–24.
[23] *See Final Determination* at Appendix IV.
[24] *Id.*
[25] *See Glycine from the People's Republic of China: Notice of Final Results of Antidumping Duty Changed Circumstances Review*, 91 FR 10588 (March 4, 2026) (*Glycine from China CCR*), and accompanying IDM.

processed, or exported by Salvi continues to be subject to the *Order* on glycine from China.[26]

Accordingly, even if Tanghenam's reconstruction-based methodology could reliably link the country-of-origin for the inputs used to produce AWC in Vietnam to the subject merchandise shipped to the United States, the fact that Tanghenam was unable to accurately identify the country of origin of its inputs during the circumvention inquiry eliminates Tanghenam's eligibility to participate in the certification process under the *Orders*.

Finally, the Court notes that Commerce failed to adequately explain "why commingling of finished goods forecloses certification eligibility."[27] As noted at the outset of this analysis, certification of non-circumventing has three elements: 1) identifying the country of origin of inputs; 2) tracing the inputs into the production of finished goods; and, 3) identifying which finished goods are sold to which market. Above we explain our conclusion that Tanghenam's accounting system is insufficient to reliably perform these steps. The final step requires that Tanghenam not commingle finished goods but be able to continue to trace Chinese and non-Chinese inputs to products sold to the United States.

Specific shipments of finished good must be identified by customer, invoice, and invoice line item, in accordance with the requirements of the certification, and this identification must be accomplished separately for sold goods made from Chinese materials and sold goods made from non-Chinese materials.[28] This sale-specific requirement is different from the determinations made during the circumvention inquiry itself regarding what percentage of Tanghenam's products was attributable to Chinese material. In other words, when determining whether "the

---

[26] *See Glycine from China CCR*, 91 FR at 10588 (citing *Glycine from the People's Republic of China: Final Partial Affirmative Determination of Circumvention of the Antidumping Duty Order*, 77 FR 73426, 73427 (December 10, 2012)).

[27] *See Remand Order* at 28.

[28] *See Final Determination* at Appendix IV.

process of assembly or completion" in Vietnam is "minor or insignificant" and whether the

"value of the merchandise" produced in China is a "significant portion of the total value of the

merchandise exported to the United States" (sections 781(b)(1)(C) and (D)) Commerce

examined the total amounts of Chinese materials used by Tanghenam in producing aluminum

wire and cable, and how much was used in producing the finished goods sold in any specific sale

was unimportant.  By contrast, the final step of the certification requirement must be satisfied on

a product and sale specific basis as only merchandise produced from Chinese aluminum wire

rod, aluminum wire strand, or aluminum wire has been found to be circumventing and thus

subject to the *Orders*.  Thus, Tanghenam must be able to keep goods segregated in inventory and

not commingle finished goods produced from Chinese materials with finished goods produced

from non-Chinese material in order to identify which shipments are and are not subject to the

orders.  Tanghenam has failed to meet this requirement.

## IV.    COMMENTS ON DRAFT RESULTS OF REDETERMINATION

**Comment 1:  Whether Commerce Complied with the Court Order**

The following is a verbatim summary of argument submitted by Tanghenam.  For further

details, *see* Tanghenam Comments at 2.

> First, the Draft Remand Redetermination does not comply with the Court's remand
> order.  Rather than reviewing the evidence that Tanghenam placed on the record
> and specifically engaging with the mechanics of its reconstruction-based
> methodology, Commerce has substituted a generalized attack on the reliability of
> Tanghenam's accounting system as a whole, relying on the very same findings that
> underpinned Commerce's initial AFA determination and repackaging them as the
> basis for denial of certification.  This reasoning is circular and legally deficient.[29]

---

[29] *See* Tanghenam Comments at 2.

8

**Commerce's Position:**  Our analysis does not constitute a "generalized attack" on Tanghenam's accounting system as a whole.  In its comments, Tanghenam describes its proposed reconciliation methodology as follows:[30]

- Identify shipments of AWC to the United States using the sales ledger

- Identify "batches" of AWC with the same product code and quantity in the inventory movement ledger

- Identify the document number "associated" with the batches.  According to Tanghenam, the "document number" serves as "the key to trace not only the production of the finished good, but also the input materials used in that production."[31]

- Utilize "inventory movement ledger and purchase ledger to identify related input purchases"[32]

- Identify the input's country of origin.  Commerce verified that the purchase ledger indicates both the address of the supplier and the country of origin of the input.[33]

In our analysis, we identify specific failures of Tanghenam's accounting system that demonstrate Tanghenam is unable to complete certain of these steps in an accurate and reliable manner.  Importantly, Commerce identified multiple instances in which Tanghenam misrecorded the country-of-origin of inputs in its books and records, including instances where the reported country-of-origin reflected the supplier's address rather than the actual country-of-origin of the material input.[34]  The verifiers discovered these errors when they reviewed certificates of analysis provided by the suppliers, not when they reviewed the purchase ledger.[35]  In other

---

[30] *Id.* at .pdf pages 6-7.
[31] *Id.* at 7.
[32] *Id.*
[33] *Id.* (citing Verification Exhibits – Part 13 at 5-12).
[34] *See* Verification Report at 22 (a sample of the errors in table format).
[35] *Id.* at 21-22.

words, the report indicates Tanghenam's accounting system was incorrect (presumably including its purchase ledger) and the errors in the system were only discovered when Commerce observed underlying documentation.[36]  The fact that Tanghenam can point to an example of a purchase ledger on the record taken as an exhibit which purportedly records the locations of both the suppliers and producers, does not mean that that ledger is accurate, contrary to the narrative of the report.

Tanghenam's inability or unwillingness to correctly record and report the country of origin of its inputs is a specific flaw that fatally undermines its ability to complete the fifth step in its proposed methodology above in an accurate and reliable manner.  Such inaccurate recordkeeping invalidates any subsequent steps which Tanghenam could undertake to trace the country-of-origin of the material inputs to the merchandise shipped to the United States.

**Comment 2:   Evidence of Tanghenam's Ability to Tie Exports to Inputs**

The following is a verbatim summary of argument submitted by Tanghenam.  For further details, *see* Tanghenam Comments at 2-3.

> Second, Tanghenam demonstrated its reconstruction-based methodology on the record.  Tanghenam provided comprehensive documentation and explication of its ability to trace the origins of inputs to specific export shipments, as documented during verification, and the administrative record contains a comprehensive trail demonstrating the step-by-step process by which Tanghenam connects exported products to the origin of their underlying inputs.

> Specifically, the record establishes that Tanghenam can identify specific export shipments in its sales ledger, map those shipments to discrete inventory batches, trace each batch via document number to the underlying input purchases, link inventory movement records to purchase ledger entries, and identify — from an exhaustive purchase ledger confirmed by Commerce's own verification team — the true country of origin of each input.  Commerce simply ignored this evidence in its Draft Remand Redetermination.[37]

---

[36] *Id.*
[37] *See* Tanghenam Comments at 2-3.

**Commerce Position:**  Commerce is not claiming that Tanghenam failed to correctly record and report the country of origin of its inputs in each and every instance.  The issue is that Tanghenam cannot do so in a consistent and reliable manner, as demonstrated above.  Thus while the record indicates some instances of Tanghenam's accounting system working as it should, including accurately recording and reporting the country of origin of its inputs, the fact that numerous errors are documented on the record (some self-identified by Tanghenam at verification and some discovered by Commerce during verification) indicates a lack of reliability that Commerce deems unsatisfactory for purposes of participation in the certification scheme.  The instances of Tanghenam's accounting system functioning properly do not resolve or eliminate the numerous instances Commerce discovered where the system fails, and thus the overarching inaccuracies in the accounting system renders it an unreliable foundation for tracing the origin of an input.  Given that verification is a spot-checking exercise, the errors discovered in Tanghenam's accounting system may also indicate additional errors that Commerce did not discover at verification.[38]

**Issue 3:          Whether Commerce Engaged with the Evidence**

The following is a verbatim summary of argument submitted by Tanghenam.  For further details, *see* Tanghenam Comments at 2.

> Third, the Draft Remand Redetermination provides four reasons why Tanghenam is ineligible for the certification process, none of which actually engages with the evidence and arguments Tanghenam placed on the record confirming its ability to carry out a reconstruction-based methodology to track country of origin.  First, Commerce's reliance on instances of misrecorded country-of-origin information fails to account for the fact that Tanghenam was able to provide the correct country of origin for each input at the outset of verification, including in cases where the supplier's location differed from the country of origin of the input.  Second, Commerce's use of Tanghenam's pre-verification minor corrections as a basis for

---

[38] *See, e.g., Government of Quebec v. United States*, 567 F.Supp.3d 1273, 1286 (CIT 2022) (Where Commerce discovers errors, "Commerce could reasonably infer that there may remain other errors.  Thus, Commerce's determination that {the entirety of a particular submission} is unreliable is not unreasonable.").

ineligibility is internally inconsistent. Commerce cannot simultaneously accept those corrections and use them as a basis to apply AFA against Tanghenam. Third, Commerce's characterization of Tanghenam's methodology as "hypothetical" is incorrect and at odds with the record evidence; the Draft Remand Redetermination does nothing more than to point back to the same verification report observations that the Court already has held to be insufficient. Fourth, Commerce's reliance on commingling of finished goods effectively imposes a physical segregation requirement as a prerequisite to certification eligibility; a requirement the Court expressly rejected as lacking any basis in either section 781 of the Act or Commerce's implementing regulations.[39]

**Commerce Position:** First, it is important to establish that the purpose of verification is not an exercise of information gathering, but "to test information provided by a party for accuracy and completeness."[40] One of Tanghenam's assertions in its arguments is factually incorrect. Tanghenam asserts that "Tanghenam was able to provide the correct country of origin for each input at the outset of verification, including in cases where the supplier's location differed from the country of origin of the input."[41] While Tanghenam argues that Commerce cannot accept such corrections and then use them as a basis for applying AFA, notably Commerce did not rely on AFA in finding that Tanghenam's accounting system was inadequate in tracking country-of-origin, as discussed below in Issue 4. Actually, as Commerce notes above, while Tanghenam corrected some country-of-origin errors at the outset of verification, yet more errors beyond those proposed corrections were discovered during the course of verification when the verifiers examined the certificates of analysis.[42] Thus, even if Commerce accepted the corrected country-of-origin information presented at the beginning of verification, the additional errors discovered at verification continue to constitute information discovered at verification that undermines the accuracy of Tanghenam's reported information and indicates its accounting system is unreliable.

---

[39] *See* Tanghenam Comments at 3.
[40] *See Goodluck India Ltd. v. United States*, 11 F.4th 1335, 1343 (Fed. Cir. 2021).
[41] *See* Tanghenam Comments at .pdf page 8.
[42] *See* Verification Report at 21-22.

12

Moreover, there is no internal inconsistency between Commerce accepting proffered corrections at verification as minor but yet still incorporating them into this analysis. They are still errors, regardless. The fact that Commerce accepted them in order to correct the record does not somehow negate the fact the errors were made, additional errors were discovered during verification, and that these errors are evidence of Tanghenam's inability or unwillingness to maintain accurate records.

Commerce also maintains that the proposed reconstruction methodology is hypothetical despite Tanghenam's assertion to the contrary. It was not relied upon for purposes of reporting information to Commerce in the circumvention inquiry, and Tanghenam does not cite to any part of the record to support a different conclusion. The verification report discusses Tanghenam's attempt to use the "FIFO" method to tie products in finished goods inventory to inputs, but it is unclear whether this is the same method as the method Tanghenam now proposes to tie inputs to shipments of AWC to the United States.[43] Regardless, as noted in the report, Tanghenam was unsuccessful in this effort as it tied finished goods inventory to the addresses of the input suppliers, not to the countries of origin.

Finally, Commerce rejects Tanghenam's assertion that it is imposing a "physical segregation" requirement as a condition of participating the certification process.[44] Nowhere in our analysis do we claim physical segregation is a requirement. While we explain at length above – in response to the Court's order – why finished goods cannot be commingled before exportation, we do not insist that commingling be avoided by physical segregation. Commingling could be avoided by batch tags, stickers, etc. As we note above, *supra* page 8: "{T}he final step of the certification requirement must be satisfied on a product and sale specific

---

[43] *Id.* at 23-24.
[44] *See* Tanghenam Comments at .pdf page 10.

basis as only merchandise produced from Chinese aluminum wire rod, aluminum wire strand, or aluminum wire has been found to be circumventing and thus subject to the *Orders*.  Thus, Tanghenam must be able to keep goods segregated in inventory and not commingle finished goods produced from Chinese materials with finished goods produced from non-Chinese material in order to identify which shipments are and are not subject to the orders.  Tanghenam has failed to meet this requirement."

**Issue 4:      Whether Commerce Created a Blanket Exclusion from Certification for AFA Respondents**

The following is a verbatim executive summary of argument submitted by Tanghenam. For further details, *see* Tanghenam Comments at 4.

> Finally, Commerce's blanket exclusion of AFA respondents from the certification program exceeds its authority.  {Commerce's} practice of automatically barring respondents who receive AFA from participating in the certification program is unlawful because it forces Tanghenam to treat all entries as Chinese-origin even where the company can document that specific entries were genuinely produced without Chinese-origin inputs.  In other words, it forces an affirmative misrepresentation of actual country of origin.  As such, this practice also runs directly counter to CBP's duty to correctly determine country of origin and, by requiring Tanghenam and CBP to treat all covered entries as Chinese-origin despite contrary evidence, creates a legal fiction that violates the country-of-origin marking statute and implementing customs regulations.[45]

**Commerce Position:**  Nowhere does Commerce establish a blanket exclusion of AFA respondents from the certification process, and Commerce has not relied on AFA in determining that Tanghenam cannot reliably participate in the certification program.  As the Court notes, Commerce applied partial AFA for valuation purposes under sections 781(b)(1)(D) and 781(b)(2)(E) of the Act (although the Court appears to leave open the possibility that Commerce might apply AFA in determining not to allow Tanghenam to participate in the certification

---

[45] *See* Tanghenam Comments at 4.

program).[46]  Commerce relies on certain errors made by Tanghenam during the course of verification that are (as explained above) particularly relevant to the certification process. Indeed, the Court in its *Remand Order* explicitly stated that Commerce did not apply a categorical rule barring respondents subject to AFA or partial AFA from certification.[47]  Rather, the Court recognized that Commerce found Tanghenam ineligible to certify the country-of-origin on the inputs used to produce AWC shipped to the United States because it was unable demonstrate the ability to trace its production inputs to specific U.S. shipments.[48]  Furthermore, the Court's *Remand Order* clarified that its remand was not because Commerce lacked the legal authority to block certification to AFA recipients.[49]  Accordingly, Tanghenam's argument is grounded in a premise that the Court has already rejected.[50]

## V.    FINAL RESULTS OF REDETERMINATION

We find that Tanghenam is unable to reliably tie the country of origin of its inputs to exports of AWC to the United States, even under is proposed reconstruction-based accounting methodology.  Subsequently, we continue to determine that Tanghenam is unable to participate in the certification process.

6/24/2026

X _____

Signed by: SCOT FULLERTON

Scot Fullerton
Acting Deputy Assistant Secretary
  for Antidumping and Countervailing Duty Operations

---

[46] *See Remand Order* at 3, fn 1.
[47] *Id.* at 29.
[48] *Id.*
[49] *Id.* at 30.
[50] *Id.* at 29-30.

15