UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE:  THE HONORABLE JOSEPH A. LAROSKI, JUDGE

| | |
|---|---|
| TANGHENAM ELECTRIC WIRE & CABLE CO., LTD.,<br><br>Plaintiff,<br><br>    v.<br><br>UNITED STATES,<br><br>       Defendant,<br><br>    and<br><br>ENCORE WIRE CORP.,<br><br>       Defendant-Intervenor. | Court No. 25-00049 |

**PLAINTIFF'S COMMENTS IN OPPOSITION TO REMAND REDETERMINATION**

Alexander H. Schaefer
Weronika Bukowski

Crowell & Moring LLP
600 Fifth Street, N.W.
Washington, D.C.  20004
(202) 624-2773
aschaefer@crowell.com

*Counsel for Plaintiff*

Dated: August 7, 2026

**TABLE OF CONTENTS**

INTRODUCTION ....................................................................................................... 2

ARGUMENT.............................................................................................................. 4

    A.    The Remand Redetermination is Inconsistent with the Court's Order ................... 4

    B.    Tanghenam Demonstrated its Ability to use a Reconstruction-Based Methodology on the Record....................................................................... 6

    C.    The Reasons Commerce Provides to Justify Excluding Tanghenam from Certification are Incorrect, Mistate the Record, and Simply Re-State the Reasons that Commerce Applied Partial AFA on to Tanghenam in the First Place........................................................................................... 9

        1.    Commerce's Reliance on Misrecorded Country-of-Origin Entries Ignores Tanghenam's Ability to Provide Correct Information ................. 10

        2.    Commerce's Internal Inconsistency: Accepting Corrections While Invoking Them as a Basis for Ineligibility ............................... 11

        3.    Commerce's "Hypothetical" Characterization Is Contradicted by the Record ................................................................ 12

        4.    Commerce's Reliance on Commingling Effectively Imposes an Unlawful Physical-Segregation Requirement.......................... 13

CONCLUSION....................................................................................................... 14

### INTRODUCTION

The Department of Commerce's ("Commerce") Remand Redetermination, Remand Redetermination (June 24, 2026), ECF No. 51 ("Remand Redetermination"), is unsupported by substantial evidence and otherwise contrary to law for the reasons set forth below and discussed in greater detail in these comments.

First, the Draft Remand Redetermination does not comply with the Court's remand order. *See Tanghenam Electric Wire & Cable Co., Ltd. v. United States*, 2026 WL 509048, at *11 (Feb. 24, 2026). Rather than reviewing the evidence that Tanghenam placed on the record and specifically engaging with the mechanics of its reconstruction-based methodology, Commerce has substituted a generalized attack on the reliability of Tanghenam's accounting system as a whole, relying on the very same findings that underpinned Commerce's initial AFA determination and repackaging them as the basis for denial of certification. Remand Redetermination at 3-4. This reasoning is circular and legally deficient.

Second, Tanghenam demonstrated its reconstruction-based methodology on the record. Tanghenam's Comments on Draft Results of Redetermination Pursuant to Court Remand (June 3, 2026) (P.R. 2) (C.R. 1), at 6-8 (citing Verification Report (Nov. 20, 2024), at 23) ("Tanghenam Comments"). Tanghenam provided comprehensive documentation and explication of its ability to trace the origins of inputs to specific export shipments, as documented during verification, and the administrative record contains a comprehensive trail demonstrating the step-by-step process by which Tanghenam connects exported products to the origin of their underlying inputs. *Id.* at 2 (citing Verification Exhibits – Part 12, at 117-122). Specifically, the

record establishes that Tanghenam can identify specific export shipments in its sales ledger, map those shipments to discrete inventory batches, trace each batch via document number to the underlying input purchases, link inventory movement records to purchase ledger entries, and identify — from an exhaustive purchase ledger confirmed by Commerce's own verification team — the true country of origin of each input. *Id*. at 3 (citing Verification Report at 24 ("Company officials can link the inventory movement report to their raw materials purchase ledger using the 'document number.'") & Verification Exhibits – Part 13, at 1–12). Commerce simply ignored this evidence.

Third, the Remand Redetermination provides four reasons why Tanghenam is ineligible for the certification process, none of which actually engages with the evidence and arguments Tanghenam placed on the record confirming its ability to carry out a reconstruction-based methodology to track country of origin.  First, Commerce's reliance on instances of misrecorded country-of-origin information fails to account for the fact that Tanghenam was able to provide the correct country of origin for each input at the outset of verification, including in cases where the supplier's location differed from the country of origin of the input.  Tanghenam Comments at 3 (citing Verification Exhibits – Part 13 (Oct. 9. 2024), at 5-12).  Second, Commerce's use of Tanghenam's pre-verification minor corrections as a basis for ineligibility is internally inconsistent. Commerce cannot simultaneously accept those corrections and use them as a basis to apply AFA against Tanghenam.  Third, Commerce's characterization of Tanghenam's methodology as "hypothetical" is incorrect and at odds with the record evidence; the Remand Redetermination does nothing more than to point back to the same verification report observations that the Court already has held to be insufficient.  *Id.* at 5 (citing Verification Report at 23-24).  Fourth, Commerce's reliance on commingling of finished goods effectively imposes a

3

physical segregation requirement as a prerequisite to certification eligibility; a requirement the Court expressly rejected as lacking any basis in either section 781 of the Act or Commerce's implementing regulations.

<b><u>ARGUMENT</u></b>

**A.      The Remand Redetermination is Inconsistent with the Court's Order**

On February 24, 2026, the Court of International Trade ("CIT") issued an order remanding Commerce's final determination in the above-referenced proceedings that Tanghenam was ineligible to participate in the certification process. *Tanghenam Electric Wire & Cable Co., Ltd. v. United States*, 2026 WL 509048, at *1 (Feb. 24, 2026).  The Court remanded the matter because Commerce "did not address Tanghenam's reconstruction-based tracing argument or explain why commingling of finished goods forecloses certification eligibility."  *Id.* at *11.  The Court explained that, "Tanghenam argued before Commerce with supporting documentation that it could use a reconstruction-based accounting method to both (1) identify the origins of its inputs, and (2) trace those inputs to specific U.S. shipments – as required for certification."  *Id.*  Yet Commerce did not "meaningfully engage with this reconstruction-based tracing argument" nor did it "explain why the use of Tanghenam's proposed reconstruction-based accounting method for tracing fails to meet the certification standard that it articulated and applied."  *Id.*

The Court's remand order was precise and targeted. It remanded the matter for Commerce to address, with specificity, Tanghenam's arguments relating to its reconstruction-based accounting method for tracing inputs to sales of finished goods and explain whether and why Tanghenam's proposed methodology satisfies or fails to satisfy the relevant criteria for certification eligibility. *Id.* at *11-12.

4

In its Remand Redetermination, Commerce has refused to follow this directive. Instead of reviewing the evidence that Tanghenam placed on the record and the arguments it made, the Remand Redetermination states vaguely that the record does not demonstrate that Tanghenam's accounting system is sufficiently reliable to perform a reconstruction-based methodology. Remand Redetermination at 4. Thus, instead of specifically engaging with the mechanics of Tanghenam's reconstruction-based methodology and explaining why that methodology is inadequate, Commerce substitutes a broad challenge to the reliability of Tanghenam's accounting system as a whole. *Id.* In doing so, Commerce relies primarily on the same country-of-origin misreporting findings that formed the basis of its adverse facts available ("AFA") determination and simply repackages those findings as the basis for denying certification.  *See id.* Commerce then leaps from those alleged reporting errors to the conclusion that Tanghenam's proposed reconstruction-based FIFO methodology is unreliable.

Commerce contends in its Remand Redetermination that its analysis "does not constitute a 'generalized attack' on Tanghenam's accounting system as a whole" and that it instead "identify{ies} specific failures" that prevent reliable completion of Tanghenam's five-step methodology.  Remand Redetermination at 9.  Specifically, Commerce points to instances in which Tanghenam misrecorded the country-of-origin of inputs in its books and records, including instances where the reported country-of-origin reflected the supplier's address rather than the actual country-of-origin of the material input, and argues that this specific flaw fatally undermines Tanghenam's ability to complete the fifth step of its methodology in a reliable manner.  *Id.* at 9-10.

Commerce's characterization of its own analysis does not withstand scrutiny. Commerce's Remand Redetermination rests on a broad statement that "{t}he record does not

5

demonstrate that Tanghenam's accounting system is sufficiently reliable to perform a reconstruction-based methodology," followed by a recitation of alleged verification deficiencies. *Id.* at 4-5. However, this Court's order did not ask Commerce to re-examine the accounting system's general reliability; it asked Commerce to engage with the specific mechanics of the reconstruction-based methodology Tanghenam proposed. Commerce has not done so.

Accordingly, the Remand Redetermination fails to comply with the Court's order and should be remanded a second time with more specific instructions that Commerce engage with each step of Tanghenam's methodology and explain, with record citations, why each step fails or why the methodology as a whole is insufficient.

### B.    Tanghenam Demonstrated its Ability to use a Reconstruction-Based Methodology on the Record

As discussed above, the Remand Redetermination fails to address Tanghenam's arguments explaining why its reconstruction-based methodology is appropriate. In its Remand Redetermination, Commerce asserts that, "Commerce's verification findings reveal significant deficiencies in Tanghenam's accounting and reporting systems that, Commerce concludes upon examining the issues presented by this redetermination, undermine the reliability of Tanghenam's proposed methodology." Remand Redetermination at 4. Contrary to this claim, Tanghenam did indeed provide a detailed demonstration of its ability to trace the origin of inputs to specific export shipments, as documented during verification. The record shows that Tanghenam matched production and warehouse movement records to individual sales, thereby enabling identification of input origins on a shipment-specific basis.

As highlighted in Tanghenam's comments before Commerce, Commerce requested that Tanghenam demonstrate its ability to trace the inputs used in its two largest export shipments of AWC to the United States in 2022 and 2023. Tanghenam Comments at 6-8 (citing Verification

6

Report at 23).  Tanghenam successfully completed that tracing exercise. The administrative record contains a complete evidentiary trail showing, step by step, how Tanghenam links exported products to the origin of their underlying inputs:

1. **Identification of Export Shipments**: Tanghenam began by pinpointing, in its sales ledger, the two largest shipments of AWC exported to the United States during the period.  *Id.* (citing Verification Exhibits – Part 12, at 117–118).

2. **Mapping Exports to Individual Batches**: Tanghenam then examined its inventory movement ledger for a particular and identified ten discrete batches of AWC received at its warehouse between over a certain time period. The batches collectively totaled the same quantity as the export shipment.  *Id.* (citing Verification Exhibits – Part 12, at 119).

3. **Tracing Batch Numbers**: Each batch is associated with a document number that links directly to the underlying purchase of inputs. The document number serves as the key to trace not only the production of the finished good, but also the input materials used in that production.  *Id.* (citing Verification Exhibits – Part 12, at 119-122).

4. **Linking Inventory Movement to Input Purchases**: Tanghenam then utilized its inventory movement ledger and purchase ledger to identify related input purchases.  *Id.* (citing Verification Report at 24 ("Company officials can link the inventory movement report to their raw materials purchase ledger using the 'document number.'")).

5. **Identification of Input Origins**: Tanghenam's purchase ledger is exhaustive; it specifies both the address of the supplier and, crucially, the true country of

7

origin of the input. Commerce's verification team confirmed that the ledger indicates both these data points. *Id.* (citing Verification Exhibits – Part 13 (Oct. 9. 2024), at 5-12).

This tracing process was transparent, complete, accurate, and specifically tied to the individual export lots at issue. The record evidence, including the inventory movement records and purchase ledger, demonstrates Tanghenam's ability to reconstruct the full supply chain for any particular exported item, including the country of origin of each input incorporated into a given shipment. Commerce failed to account for this evidence in its Remand Redetermination. Notably, and somewhat inexplicably, the Remand Redetermination does not even reference any of the foregoing record evidence.

Commerce itself notes that the purpose of verification is "to test information provided by a party for accuracy and completeness." *Id.* (citing *Goodluck India Ltd. v. United States*, 11 F.4th 1335, 1343 (Fed. Cir. 2021)).  Tanghenam was able to demonstrate a complete supply chain trace for one product, which Commerce seemingly deems insufficient for testing whether the system is reliable.

Commerce responds to this demonstration in two principal ways. First, Commerce argues that it "is not claiming that Tanghenam failed to correctly record and report the country of origin of its inputs in each and every instance," but rather that Tanghenam cannot do so "in a consistent and reliable manner."  Remand Redetermination at 11.  Second, Commerce contends that Tanghenam's proposed tracing methodology is "largely hypothetical" because Commerce "did not observe a functioning system that actually links inputs to shipments of subject merchandise to the United States in the ordinary course of business," and that Tanghenam's proposal instead

"relies on retrospective reconstruction using spreadsheets and assumptions that were not implemented nor factually supported at verification."  Remand Redetermination at 6.

Neither response adequately engages with the record evidence. Again, Tanghenam was able to demonstrate a complete supply chain trace for specific products. As to the "hypothetical" characterization, Tanghenam did not merely describe a theoretical system; it demonstrated it, step by step, at verification, with documentary support that Commerce's own verification team examined and did not dispute. The Remand Redetermination cites to the verification report and notes that "Commerce did not observe a functional system that actually linked inputs to shipments of subject merchandise to the United States in the ordinary course of business." But this reasoning fails to engage with Tanghenam's record evidence demonstrating its ability to trace the origin of inputs. As this Court explained, Commerce's original determination did not meaningfully address why Tanghenam's proposed methodology rendered it ineligible for certification. Commerce now merely points back to the Verification Report and asserts, without more, that it has done so. This fails to satisfy the Court's directive.

### C.    The Reasons Commerce Provides to Justify Excluding Tanghenam from Certification are Incorrect, Mistate the Record, and Simply Re-State the Reasons that Commerce Applied Partial AFA on to Tanghenam in the First Place

The Remand Redetermination advances four assertions why Tanghenam is ineligible for the certification process, none of which actually engages with the evidence and arguments Tanghenam placed on the record confirming its ability to carry out a reconstruction-based methodology to track country of origin. Each of those assertions either mischaracterizes or disregards the record and therefore lacks evidentiary support, much less the support of substantial evidence. Moreover, Commerce's analysis still fails to meaningfully engage with the

9

evidence and arguments Tanghenam placed on the record demonstrating its ability to implement a reconstruction-based methodology to track country of origin.

### 1.    Commerce's Reliance on Misrecorded Country-of-Origin Entries Ignores Tanghenam's Ability to Provide Correct Information

Commerce first asserts that it "identified multiple instances in which Tanghenam misrecorded the country-of-origin inputs in its books and records, including instances where the reported country-of-origin reflected the supplier's address rather than the actual origin of the material input." Remand Redetermination at 4. But Tanghenam's reconstruction-based methodology directly addresses that issue. Tanghenam was able to provide the correct country of origin for each input at the outset of verification, including in situations where the supplier's location differed from the actual country of origin of the input. Tanghenam Comments at 8.

Commerce's response to this point in the Remand Redetermination is telling. Commerce argues that the verifiers discovered origin errors "when they reviewed certificates of analysis provided by the suppliers, not when they reviewed the purchase ledger," and that the fact that "Tanghenam can point to an example of a purchase ledger on the record taken as an exhibit which purportedly records the locations of both the suppliers and producers, does not mean that that ledger is accurate." Remand Redetermination at 9-10. This reasoning, however, confuses two distinct questions: (1) whether the purchase ledger *contained* country-of-origin errors at some point, and (2) whether Tanghenam's *methodology* can yield accurate country-of-origin identification. Tanghenam's five-step reconstruction-based methodology is designed to triangulate from multiple record sources, including the certificates of analysis that the verifiers themselves relied upon, to arrive at the correct country of origin. *See* Tanghenam Comments at 6-7. The fact that errors were discoverable through the certificate review process actually confirms, rather than undermines, the efficacy of Tanghenam's cross-referencing approach.

Moreover, Commerce itself acknowledges that "Tanghenam corrected some country-of-origin errors at the outset of verification." Remand Redetermination at 12. Commerce cannot logically argue both that Tanghenam was capable of identifying and providing correct country-of-origin data at verification *and* that it lacks any reliable basis for doing so.

### 2. Commerce's Internal Inconsistency: Accepting Corrections While Invoking Them as a Basis for Ineligibility

As a second basis, Commerce points to the corrections Tanghenam submitted before verification as purported evidence that Tanghenam is ineligible for the certification process. Remand Redetermination at 5. That reasoning likewise fails to account for Tanghenam's reconstruction-based methodology. Tanghenam identified those errors through electronic review of the company's other records in preparation for verification. Tanghenam Comments at 9 (citing Verification Report at 4-5. Ex. VE-1.7). It then timely submitted corrections, which Commerce's verification team accepted. *Id.*

Furthermore, the Department's finding entirely ignores the fact that Tanghenam explained to Commerce in detail its methodology to arrive at the correct country of origin and that the company would be able to deploy that methodology for all of its input purchases. *Id.* at 9. Commerce cannot accept Tanghenam's minor corrections while using those very same "minor corrections" as a basis to apply partial AFA on Tanghenam and now also exclude it from the certification process. Commerce's position is thus internally inconsistent and unsupported by substantial evidence.

Commerce's response in the Remand Redetermination is that "{t}here is no internal inconsistency between Commerce accepting proffered corrections at verification as minor but yet still incorporating them into this analysis. They are still errors, regardless." Remand Redetermination at 12-13. Commerce contends that "the fact that Commerce accepted them in

11

order to correct the record does not somehow negate the fact the errors were made, additional errors were discovered during verification, and that these errors are evidence of Tanghenam's inability or unwillingness to maintain accurate records." *Id.* This response misses the point. The question is not whether errors were made in the abstract. The question is whether those errors, once identified and corrected, preclude reliance on a methodology that uses the corrected underlying data.

### 3.     Commerce's "Hypothetical" Characterization Is Contradicted by the Record

Third, the Remand Redetermination characterizes Tanghenam's reconstruction-based methodology as "hypothetical." Remand Redetermination at 8. That characterization is incorrect and contradicted by the record. As shown above, Tanghenam presented record evidence detailing how this methodology would work. Critically, at verification, Tanghenam placed a complete purchase ledger listing the countries of origin for **every** input on the record. Tanghenam Comments at 9. The record thus is complete and indeed exhaustive on this point.  Nonetheless, the Remand Redetermination cites to the verification report and notes that "Commerce did not observe a functional system that actually linked inputs to shipments of subject merchandise to the United States in the ordinary course of business."  Remand Redetermination at 6. Again, this reasoning is circular and fails to engage with Tanghenam's evidence that is able to trace origin of inputs. As the CIT explained, Commerce's initial determination failed to meaningfully address why its methodology made it ineligible.

Commerce now attempts to point back at the Verification Report and simply assert that it did so. This is the very defect that the Court held to be insufficient, and Commerce's reiteration of its position does nothing to advance its argument or comply with the Court's mandate. Commerce maintains that the proposed reconstruction methodology is hypothetical in part

because "it was not relied upon for purposes of reporting information to Commerce in the circumvention inquiry, and Tanghenam does not cite to any part of the record to support a different conclusion." *Id.* at 13. However, the certification program is by design a prospective mechanism—it allows exporters to demonstrate, going forward, that specific entries are not subject to the order. A respondent whose real-time accounting system did not maintain country-of-origin tracking on a shipment-specific basis is not thereby forever barred from implementing a methodology that does so, either retroactively for the inquiry period or prospectively for future shipments.

### 4.    Commerce's Reliance on Commingling Effectively Imposes an Unlawful Physical-Segregation Requirement

Finally, the draft Remand Redetermination explains that the commingling of goods forecloses Tanghenam's eligibility.  Remand Redetermination at 7-8. This effectively imposes a physical segregation requirement as a prerequisite to certification eligibility by insisting that Tanghenam be able to "keep goods segregated in inventory and not commingle finished goods produced from Chinese materials with finished goods produced from non-Chinese material in order to identify which shipments are and are not subject to the orders." *Id.* at 8. But the Court expressly rejected this sort of requirement.[1] By imposing a physical segregation requirement that appears nowhere in either the statute or the regulations, and by categorically rejecting

---

[1] *Tanghenam Electric Wire & Cable Co., Ltd. v. United States*, 2026 WL 509048, at *10 (Feb. 24, 2026) ("The court notes that neither section 781 of the Act nor Commerce's implementing regulations prescribes a specific, required methodology for 'tracing' input origins to specific U.S. shipments, such as by physical segregation of finished goods based on input country of origin, by reconstruction-based accounting methods, or by some other method. In other words, the statute and regulations do not expressly require the physical segregation of finished goods based on input country of origin, nor do they expressly prohibit reconstruction-based tracing." (internal citations omitted)).

reconstruction-based tracing without adequately engaging with Tanghenam's specific methodology, Commerce has acted contrary to law and in excess of its authority.

## **CONCLUSION**

For the reasons discussed in this brief, Corteva respectfully requests that this Court reject all arguments made by Plaintiffs and deny Plaintiffs' motion for judgment on the agency record in its entirety.

Respectfully submitted,

_____

Alexander Schaefer, Esq.
Weronika Bukowski, Esq.
**Crowell & Moring LLP**

*Counsel for Tanghenam*

CERTIFICATE OF COMPLIANCE

Pursuant to U.S. Court of International Trade Rule 2(b)(2) of the Court's Standard Chambers Procedures, undersigned counsel for Plaintiff, certifies this brief complies with the Court's type-volume limitation rules. This brief contains no more than 4,100 words. This brief also complies with all typeface and margin requirements.

*/s/ Alex Schaefer*

Alex Schaefer
*Counsel to Plaintiff*

1

UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE:  THE HONORABLE JOSEPH A. LAROSKI, JUDGE

TANGHENAM ELECTRIC WIRE & CABLE CO., LTD.,

Plaintiff,

v.                                                    Court No. 25-00049

UNITED STATES,

Defendant,

and

ENCORE WIRE CORP.,

Defendant-Intervenor.

**PROPOSED ORDER**

Upon consideration of Plaintiffs' Rule 56.2 Motion for Judgment on the Agency Record,

and all other papers and proceedings had herein, it is hereby:

ORDERED that Plaintiffs motion be, and hereby is, granted.

Dated:  _____, 2026                    _____

New York, New York                        Honorable Jospeh A. Laroski, Judge

2