**UNITED STATES COURT OF INTERNATIONAL TRADE**

TANGHENAM ELECTRIC WIRE & CABLE CO., LTD.,

Plaintiff,

v.

UNITED STATES,

Defendant,

and

ENCORE WIRE CORP.,

Defendant-Intervenor.

Before: Joseph A. Laroski, Jr., Judge
Court No. 25-00049

**PUBLIC DOCUMENT**

**COMMENTS OF DEFENDANT-INTERVENOR IN SUPPORT OF REMAND REDETERMINATION**

Daniel J. Calhoun, Esq.
Jack A. Levy, Esq.
Noah A. Meyer, Esq.

**ROCK CREEK TRADE LLP**
900 19th Street, NW
Suite 600
Washington, DC 20006
(202) 839-4112

*Counsel for Defendant-Intervenor Encore Wire Corp.*

Dated: September 29, 2026

# TABLE OF CONTENTS

Page


I. BACKGROUND .......... 2

A. *Remand Order* .......... 2

B. *Remand Redetermination* .......... 3

II. ARGUMENT .......... 5

A. The *Remand Redetermination* Complies with the Remand Order .......... 5

B. Tanghenam Failed to Demonstrate Its Ability to Use a Reconstruction-Based Methodology on Remand .......... 7

C. Commerce Provided Adequate Reasons to Support Its Denial of Tanghenam's Participation in the Certification Process .......... 9

1. Commerce Reasonably Relied on Tanghenam's Misrecording of Country-of-Origin Information .......... 9

2. Commerce Properly Relied on Tanghenam's Minor Corrections from Verification in Support of Its *Remand Redetermination* .......... 10

3. Commerce's "Hypothetical" Characterization Is Appropriate .......... 11

4. Commerce Expressly Does Not Impose a Physical-Segregation Requirement .......... 12

III. CONCLUSION .......... 13

**UNITED STATES COURT OF INTERNATIONAL TRADE**

| | |
|---|---|
| TANGHENAM ELECTRIC WIRE & CABLE CO., LTD.,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES,<br><br>Defendant,<br><br>and<br><br>ENCORE WIRE CORP.,<br><br>Defendant-Intervenor. | Before: Joseph A. Laroski, Jr., Judge<br>Court No. 25-00049<br><br>**PUBLIC DOCUMENT** |

**COMMENTS OF DEFENDANT-INTERVENOR**
**IN SUPPORT OF REMAND REDETERMINATION**

Defendant-Intervenor Encore Wire Corp. respectfully submits these comments in support of the remand redetermination prepared by the U.S. Department of Commerce ("Commerce") pursuant to the Court's order in *Tanghenam Elec. Wire & Cable Co. v. United States*, 823 F. Supp. 3d 1321 (Ct. Int'l Trade 2026) ("*Remand Order*"), concerning the circumvention inquiry of the antidumping duty and countervailing duty orders on aluminum wire and cable ("AWC") from the People's Republic of China with respect to the Socialist Republic of Vietnam. *See Final Results of Redetermination Pursuant to Court Remand* (June 24, 2026) (dkt. 51) ("*Remand Redetermination*"); *see also Aluminum Wire and Cable From the People's Republic of China: Final Negative Scope Ruling and Final Affirmative Determination of Circumvention With Respect to the Socialist Republic of Vietnam*, 90 Fed. Reg. 8,196 (Dep't Commerce Jan. 27,

2025) ("*Final Determination*") (P.R. 203),[1] and the accompanying Issues and Decision Memorandum (P.R. 202).

For the reasons specified below, Commerce's redetermination on remand to continue to find Tanghenam Electric Wire & Cable Co., Ltd. ("Tanghenam") ineligible to participate in the certification process arising from Commerce's affirmative determination of circumvention complies with the *Remand Order*, is supported by substantial evidence, and is otherwise in accordance with law.

## I. BACKGROUND

### A. *Remand Order*

After sustaining Commerce's application of adverse facts available with respect to Tanghenam as part of an affirmative determination of circumvention, the Court remanded Commerce's denial of Tanghenam's certification eligibility for being inadequately explained. Specifically, the Court concluded that Commerce failed to "meaningfully engage" with Tanghenam's contention that it could trace the country of origin of inputs used to produce AWC to shipments of finished goods to the United States through a reconstruction-based accounting method. *Remand Order*, 823 F.Supp.3d at 1337. The Court faulted Commerce for citing "to a single sentence in the verification report that observed commingling in the finished goods inventory, all without addressing Tanghenam's core contention that commingling does not inherently preclude tracing." *Id.* Commerce's failure to "address Tanghenam's reconstruction-based tracing argument or explain why commingling of finished goods forecloses certification eligibility" thus merited reconsideration by Commerce on remand. *Id.* at 1338.

---

[1] "P.R. ___" refers to documents in the public record of the underlying circumvention inquiries, whose index was filed by Commerce on May 7, 2025 (dkt. 20).

**B. *Remand Redetermination***

On remand, Commerce fully addressed the Court's concerns in continuing to deny Tanghenam the opportunity to participate in the certification regime established by the affirmative determination of circumvention. As it did in the *Final Determination*, Commerce reiterated as part of the *Remand Redetermination* three requirements for a respondent to participate in the certification program: (1) the ability to "identify the country of origin of inputs in the company's books and records"; (2) the ability to "trace those inputs to specific products in finished goods inventory"; and (3) the ability "to link specific products in finished goods inventory to shipments of AWC to the United States." *Remand Redetermination* at 3.

Commerce then proceeded to reexamine its verification findings on remand, which in its view "reveal significant deficiencies in Tanghenam's accounting and reporting systems that … undermine the reliability of Tanghenam's proposed methodology." *Id.* at 4. Foremost among those "deficiencies" are the "multiple instances in which Tanghenam misrecorded the country of origin of inputs in its questionnaire responses and in its books and records." *Id.* Commerce found "additional, more systemic deficiencies" in Tanghenam's reporting beyond those presented at the outset of verification, causing the agency to question further the reliability of Tanghenam's reconstruction-based accounting method. *Id.* at 4-5.

Second, Commerce determined that "numerous corrections" presented by Tanghenam at verification "demonstrate broader weaknesses in Tanghenam's accounting system, including reliance on manual processes, inconsistent data reconciliation, and inaccuracies in core production and inventory records," all of which led Commerce to conclude that "Tanghenam does not maintain a system capable of accurately tracking the country of origin of inputs through production and to subject merchandise shipped to the United States." *Id.* at 5. Commerce specifically observed that a first-in, first-out ("FIFO") approach like that employed by

Tanghenam requires inventory records to be "accurate, consistent, and systematically maintained," which is not the case for Tanghenam. *Id.* Commerce further observed that, based on the "mistakes {it} saw at verification, Tanghenam appears either unable or unwilling to accurately document — even in the aggregate — the amount of inputs sourced by the country of origin." *Id.*

Third, Commerce characterized Tanghenam's proposed tracing methodology as "largely hypothetical," meaning that "Tanghenam's proposal relies on retrospective reconstruction using spreadsheets and assumptions that were not implemented nor factually supported at verification." *Id.* at 6. As Commerce stated in the *Remand Redetermination*, its "practice requires demonstrable, verifiable tracing capability — not theoretical reconstruction." *Id.*

Finally, Commerce specifically addressed the Court's concerns with respect to commingling in the *Remand Redetermination*. As Commerce explained, "Specific shipments of finished good must be identified by customer, invoice, and invoice line item, in accordance with the requirements of the certification, and this identification must be accomplished separately for sold goods made from Chinese materials and sold goods made from non-Chinese materials." *Id.* at 7. Commerce determined that Tanghenam did not meet this requirement because Tanghenam was unable "to keep goods segregated in inventory and not commingle finished goods produced from Chinese materials with finished goods produced from non-Chinese material in order to identify which shipments are and are not subject to the orders." *Id.* at 8. Commerce further explained that "{n}owhere in our analysis do we claim physical segregation is a requirement" and identified tools such as batch tags and stickers that Tanghenam could have utilized to avoid commingling. *Id.* at 13.

For the above reasons, Commerce ultimately concluded that "Tanghenam is unable to reliably tie the country of origin of its inputs to exports of AWC to the United States" and found that "{t}he record does not demonstrate that Tanghenam's accounting system is sufficiently reliable to perform a reconstruction-based methodology." *Id.* at 4, 15. On such grounds, Commerce continued to find Tanghenam ineligible to participate in the certification program.

## II. ARGUMENT

### A. The *Remand Redetermination* Complies with the *Remand Order*

Tanghenam's suggestion that Commerce's *Remand Redetermination* fails to comply with the Court's *Remand Order* is contradicted by the *Remand Redetermination* itself. Tanghenam faults Commerce for "substitut{ing} a broad challenge to the reliability of Tanghenam's accounting system as a whole" rather than "specifically engaging with the mechanics of Tanghenam's reconstruction-based methodology." Plaintiff's Comments in Opposition to Remand Redetermination (Aug. 7, 2026) (dkt. 55) ("Tanghenam Cmts.") at 5. But Commerce did analyze the discrete steps of Tanghanam's proposed methodology and explained why a FIFO approach to inventory tracking like that advocated by Tanghenam requires inventory records to be "accurate, consistent, and systematically maintained," standards that Tanghenam does not meet. *Remand Redetermination* at 5.

The Court's remand instructions directed Commerce "to address, with specificity, Tanghenam's arguments relating to its reconstruction-based accounting method for tracing inputs to sales of finished goods and explain — based on record evidence and the relevant statutory and regulatory provisions — whether and why Tanghenam {*sic*} proposed methodology satisfies or fails to satisfy the relevant criteria for certification eligibility." *Remand Order*, 823 F. Supp. 3d at 1339. Commerce did just that in its *Remand Redetermination*. After commencing its analysis by reiterating the requirements to participate in the certification program, Commerce explains in

particular detail why Tanghenam's reconstruction-based accounting method falls short of those requirements.

What Tanghenam characterizes as a "broad challenge" to its proposed methodology, Tanghenam Cmts. at 5, in fact speaks directly and specifically to the credibility and reliability of Tanghenam's tracking system. Tanghenam describes five distinct steps to its reconstruction-based tracing methodology: (1) identification of export shipments; (2) mapping exports to individual batches; (3) tracing batch numbers; (4) linking inventory movement to input purchases; and (5) identification of input origins. *See id.* at 7. In the *Remand Redetermination*, Commerce extensively details the various errors identified at Tanghenam's verification, including "{m}isreported sales transactions and omitted sales," "{i}ncorrect classification of product codes," "{e}rrors in input origin reporting and consumption quantitites," and "{i}ncorrect unit conversions and valuation methodologies." *Remand Redetermination* at 5. Those systemic errors recounted by Commerce on remand relate to the various steps of Tanghenam's proposed reconstruction-based methodology, in particular the fifth and final step to identify input origins. As Commerce states, "reliance on manual processes, inconsistent data reconciliation, and inaccuracies in core production and inventory records" all "demonstrate broader weaknesses in Tanghenam's accounting system." *Id.* Those same deficiencies — "misreporting, inconsistent records, and unreliable accounting practices" — led Commerce to conclude upon reconsideration that "Tanghenam does not maintaining a system capable of accurately tracking the country-of-origins of inputs through production and to subject merchandise shipped to the United States, regardless of whether that tracking is done through direct means or in the indirect manner using its FIFO inventory system as it now proposes." *Id.*

Commerce elaborated its position further in response to Tanghenam's criticisms of the draft remand redetermination. Upon recounting Tanghenam's characterization of the steps of its reconstruction-based accounting method, Commerce states as follows:

> Tanghenam's inability or unwillingness to correctly record and report the country of origin of its inputs is ***a specific flaw that fatally undermines its ability to complete the fifth step in its proposed methodology above in an accurate and reliable manner***. Such inaccurate recordkeeping invalidates any subsequent steps which Tanghenam could undertake to trace the country-of-origin of the material inputs to the merchandise shipped to the United States.

*Remand Redetermination* at 10 (emphasis added). Commerce therefore "meaningfully engaged" with Tanghenam's characterization of the steps of its reconstruction-based accounting method and found that method to be inadequate as a tracing tool for the multiple reasons indicated in the *Remand Redetermination*. *Remand Order*, 823 F. Supp. 3d at 1337. Tanghenam's contention that Commerce failed to comply with the *Remand Order* is thus discredited.

**B. Tanghenam Failed to Demonstrate Its Ability to Use a Reconstruction-Based Methodology on Remand**

Likewise discredited is Tanghenam's assertion that it successfully demonstrated its ability to use a reconstruction-based tracing methodology in remand proceedings before Commerce. As discussed above, Commerce on remand engaged in a thorough analysis of Tanghenam's proposed reconstruction-based accounting method and found it flawed and unreliable for multiple reasons as a basis to track Chinese and non-Chinese inputs into AWC sold in the United States. Record evidence thereby supports Commerce's redetermination on remand to continue to deny Tanghenam the opportunity to participate in the certification regime because of its inability to trace inputs by country of origin to inquiry merchandise exported to the United States.

As catalogued at length in the *Remand Redetermination*, the pervasive misreporting, inconsistent records, and unreliable accounting practices uncovered at verification all serve to

undermine confidence in and reliance upon Tanghenam's proposed reconstruction-based accounting method. The "multiple instances in which Tanghenam misrecorded the country of origin of inputs in its questionnaire responses and in its books and records" along with "additional, more systemic deficiencies" in Tanghenam's reporting provided Commerce with factual grounds not to accept Tanghenam's proposed reconstruction-based accounting method for being insufficiently reliable. *Remand Redetermination* at 4-5.

Also relevant are the numerous corrections presented by Tanghenam at verification related to "{m}isreported sales transactions and omitted sales," "{i}ncorrect classification of product codes," "{e}rrors in input origin reporting and consumption quantitites," and "{i}ncorrect unit conversions and valuation methodologies," all of which when considered together "demonstrate broader weaknesses in Tanghenam's accounting system." *Id.* at 5. As Commerce explained, the FIFO approach proposed by Tanghenam "require{s} that inventory records are accurate, consistent, and systemically maintained." *Id.* Tanghenam's systemic failure to satisfy those basic requirements "cannot produce reliable tracing results" when "applying FIFO assumptions to flawed underlying data." *Id.*

Lastly, Commerce "did not observe a functioning system that actually links inputs of shipments of subject merchandise to the United States in the ordinary course of business." *Id.* at 6 (internal citation omitted). In focusing on Commerce's characterization of Tanghenam's accounting method as "hypothetical" in nature, Tanghenam ignores the crux of Commerce's rationale that, in the absence of "demonstrable, verifiable tracing capability — not theoretical reconstruction," it was appropriate to conclude on remand that Tanghenam could not successfully demonstrate an ability to trace in a consistently reliable manner the country of origin of its inputs in AWC exported to the United States. *Id.*

Tanghenam emphasizes its successful completion of a tracing exercise at verification, *see* Tanghenam Cmts. at 7-9, but, in making its redetermination on remand, Commerce acknowledged that "the record indicates some instances of Tanghenam's accounting system working as it should, including accurately recording and reporting the country of origin of its inputs." *Remand Redetermination* at 11. However, as Commerce found, "the fact that numerous errors are documented on the record (some self-identified by Tanghenam at verification and some discovered by Commerce during verification) ***indicates a lack of reliability that Commerce deems unsatisfactory for purposes of participation in the certification scheme***. The instances of Tanghenam's accounting system functioning properly do not resolve or eliminate the numerous instances Commerce discovered where the system fails, and thus ***the overarching inaccuracies in the accounting system renders*** {*sic*} ***it an unreliable foundation for tracing the origin of an input***." *Id.* (emphasis added).

Record evidence thus supports Commerce's continued determination on remand that Tanghenam's reconstruction-based accounting method could not consistently and reliably trace the country of origin of its inputs to inquiry merchandise sold in the United States.

### C. Commerce Provided Adequate Reasons to Support Its Denial of Tanghenam's Participation in the Certification Process

Tanghenam also takes issue with specific findings of Commerce in the *Remand Redetermination* in support of the agency's ultimate conclusion on remand to continue to deny Tanghenam the ability to participate in the certification regime arising out of Commerce's affirmative determination of circumvention. Tanghenam's concerns are thoroughly misplaced.

#### 1. *Commerce Reasonably Relied on Tanghenam's Misrecording of Country-of-Origin Information*

Tanghenam curiously suggests that Commerce inappropriately relied upon verification evidence that Tanghenam repeatedly misrecorded the country of origin of its AWC inputs in its

books and records. *See* Tanghenam Cmts. at 10-11. Tanghenam's desire for Commerce and the Court to disregard verification findings unfavorable to Tanghenam should be dismissed out of hand.

On remand, Commerce "identif{ied} specific failures of Tanghenam's accounting system that demonstrate Tanghenam is unable to complete certain of {the reconstruction} steps in an accurate and reliable manner." *Remand Redetermination* at 9. Tanghenam argues that its purported ability "to provide the correct country of origin for each input at the outset of verification" reflects its capacity to "{p}rovide {c}orrect {i}nformation" and somehow absolves it of the pervasive and systemic errors riddling its books and records that frustrate any attempt to trace the country of origin of inputs from acquisition through completion of the AWC production process for goods destined for the United States. Tanghenam Cmts. at 10. Commerce in its *Remand Redetermination* properly framed the relevant issue as Tanghenam's failure to correctly record and report the country of origin of its inputs "in a consistent and reliable manner." *Remand Redetermination* at 11. Record evidence from Tanghenam's verification conclusively establishes Tanghenam's inability to do so. Rather than cherry pick information from verification favorable to Tanghenam, Commerce reasonably weighed available evidence from Tanghenam's verification to continue to deny Tanghenam certification eligibility on remand.

2. *Commerce Properly Relied on Tanghenam's Minor Corrections from Verification in Support of Its* Remand Redetermination

Tanghenam further contends that Commerce acted inconsistently by using minor corrections presented by Tanghenam at the outset of verification as a basis to deny Tanghenam eligibility in the certification program. *See* Tanghenam Cmts. at 11-12. Tanghenam's ploy to use Commerce's acceptance of minor corrections as a shield for its pervasive reporting errors related to the country of origin of its AWC inputs must be rejected.

Identifying minor corrections for Commerce at the beginning of verification does not provide *carte blanche* to excuse widespread reporting errors uncovered elsewhere by Commerce at verification. Tanghenam self-servingly frames the issue as "whether those errors, once identified and corrected, preclude reliance on a methodology that uses the corrected underlying data," without acknowledging the additional and systemic recording errors uncovered by Commerce at verification left uncorrected. Tanghenam Cmts. at 12. As Commerce states in the *Remand Redetermination*, "Thus while the record indicates some instances of Tanghenam's accounting system working as it should, including accurately recording and reporting the country of origin of its inputs, the fact that numerous errors are documented on the record (some self-identified by Tanghenam at verification and ***some discovered by Commerce during verification***) indicates a ***lack of reliability that Commerce deems unsatisfactory for purposes of participation in the certification scheme***." *Remand Redetermination* at 11 (emphasis added). In Commerce's expert judgment, "The instances of Tanghenam's accounting system functioning properly ***do not resolve or eliminate the numerous instances Commerce discovered where the system fails, and thus the overarching inaccuracies in the accounting system renders it an unreliable foundation for tracing the origin of an input***." *Id.* (emphasis added). Accordingly, Commerce appropriately relied on Tanghenam's minor corrections in making its redetermination on remand.

*3. Commerce's "Hypothetical" Characterization Is Appropriate*

Tanghenam objects to Commerce's characterization of the reconstruction-based accounting methodology as "hypothetical," but Tanghenam's concerns are ill-founded and incorrect. *See* Tanghenam Cmts. at 12-13. Commerce persuasively explains in the *Remand Redetermination* that, in using the term "hypothetical," the agency "did not observe a functioning system that ***actually*** links inputs to shipments of subject merchandise to the United States in the ordinary course of business." *Remand Redetermination* at 6 (emphasis added) (internal citation

omitted). In contrast, "Tanghenam's proposal relies on retrospective reconstruction using spreadsheets and assumptions that were not implemented nor factually supported at verification." *Id.* Commerce further emphasizes that its practice "requires demonstrable, verifiable tracing capability—not theoretical reconstruction." *Id.* In light of Commerce's practice, the *Remand Redetermination* reasonably employs the modifier "hypothetical" to describe Tanghenam's proposed reconstruction-based methodology. Regardless, Tanghenam nowhere explains why Commerce's use of the word "hypothetical," if found to be inappropriate, would necessitate further remand proceedings.

*4. Commerce Expressly Does Not Impose a Physical-Segregation Requirement*

Tanghenam's argument that Commerce's *Remand Redetermination* "effectively imposes a physical segregation requirement as a prerequisite to certification eligibility" is demonstrably false. Tanghenam Cmts. at 13-14. Commerce definitively states in the *Remand Redetermination* that "{n}owhere in our analysis do we claim physical segregation is a requirement" and identifies tools such as batch tags and stickers that Tanghenam could have utilized to avoid commingling. *Remand Redetermination* at 13. Tanghenam completely ignores that aspect of Commerce's *Remand Redetermination*, rendering this particular critique without any basis.

## III. CONCLUSION

For the above-stated reasons and those contemporaneously stated in the comments of Defendant, the United States, also in support of the *Remand Redetermination*, Defendant-Intervenor respectfully requests that the Court sustain Commerce's *Remand Redetermination* in its entirety.

Respectfully submitted,

/s/ Daniel J. Calhoun

Daniel J. Calhoun, Esq.
Jack A. Levy, Esq.
Noah A. Meyer, Esq.

**ROCK CREEK TRADE LLP**
900 19th Street NW, Suite 600
Washington, DC 20006
(202) 297-8860
dcalhoun@rockcreektrade.com

Dated: September 29, 2026

*Counsel for Defendant-Intervenor Encore Wire Corp.*

**<u>Certificate of Compliance Pursuant to Chambers Procedures 2(B)(2)</u>**

The undersigned hereby certifies that the foregoing comments contains 3,094 words according to the "Word Count" function of Microsoft Word for Microsoft 365, exclusive of the caption block, table of contents, signature block, and certificates of counsel, and therefore complies with the maximum 10,000 word count limitation set forth in the Rule 2(B)(1)(b) of the Standard Chambers Procedures of the U.S. Court of International Trade.

By: /s/ Daniel J. Calhoun

Daniel J. Calhoun