**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**

BEFORE: THE HONORABLE JOSEPH A. LAROSKI, JR. JUDGE

| | |
|---|---|
| TANGHENAM ELECTRIC WIRE & CABLE CO., LTD., Plaintiff, | |
| v. | Court No. 25-00049 |
| UNITED STATES, Defendant, | |
| and | |
| ENCORE WIRE CORPORATION, Defendant-Intervenor. | |

**DEFENDANT'S RESPONSE TO PLAINTIFF'S COMMENTS ON COMMERCE'S REMAND REDETERMINATION**

Defendant, the United States, respectfully responds to comments filed by plaintiff Tanghenam Electric Wire & Cable Co., Ltd. (Tanghenam), ECF No. 55 (Pl. Cmts.), concerning the Department of Commerce (Commerce)'s remand redetermination filed in accordance with this Court's remand order in *Tanghenam Electric Wire & Cable Co., Ltd. v. United States*, 823 F. Supp. 3d 1321 (Ct. Int'l Trade 2026) (Remand Order). *See* Final Results of Redetermination Pursuant to Court Remand, June 24, 2026 (Remand Redetermination), ECF No. 51. For the reasons explained below, we respectfully request that the Court sustain Commerce's remand redetermination and enter final judgment for the United States.

## BACKGROUND

### I. Commerce's Circumvention Inquiry

In 2019, Commerce published antidumping and countervailing duty orders on aluminum wire and cable (AWC) from China. *Aluminum Wire and Cable from the People's Republic of China*, 84 Fed. Reg. 70,496 (Dep't of Commerce Dec. 23, 2019) (collectively, the Orders). In October 2023, Commerce self-initiated a scope inquiry to determine whether imports of AWC completed in Vietnam using inputs manufactured in China are covered by the Orders. *See Aluminum Wire and Cable from the People's Republic of China*, 88 Fed. Reg. 72,041 (Dep't of Commerce Oct. 19, 2023) (P.R. 26). Concurrently, and relevant to this proceeding, Commerce initiated a circumvention inquiry to determine whether, if not covered by the scope, AWC from Vietnam is nonetheless circumventing the Orders. *Id.* Commerce aligned the scope and circumvention proceedings and subsequently selected Tanghenam and one other company as mandatory respondents in the inquiry. *Id.*; *see also* Respondent Selection Memorandum (Feb. 12, 2024) (P.R. 73) (C.R. 20).

Commerce published its preliminary determination on August 7, 2024, concluding that AWC completed in Vietnam incorporating certain AWC inputs of Chinese origin is not covered by the scope, but is circumventing the Orders. *Aluminum Wire and Cable from the People's Republic of China*, 89 Fed. Reg. 64,406 (Dep't of Commerce Aug. 7, 2024) (Preliminary Determination) (P.R. 171), and accompanying Preliminary Decision Memorandum (P.R. 168). In the Preliminary Determination, Commerce relied on Tanghenam's questionnaire responses to determine that Chinese inputs comprised a significant portion of the value of merchandise exported to the United States and thus this factor of the circumvention criteria was met. *See* Preliminary Decision Memorandum at 20 (citing 19 U.S.C. § 1677j(b)(1)(D)).

Because Commerce made the circumvention determination on a country-wide basis, it established importer and exporter certifications which allow "parties to attest that specific entries of inquiry merchandise are not subject {to the circumvention determination} because the merchandise was not manufactured using certain inputs from China." *Id.* at 24. The required certification includes a statement that the signatory has "direct personal knowledge" that the AWC covered by the certification "does not contain aluminum wire rod, aluminum wire strand, or aluminum wire produced in the People's Republic of China." Preliminary Determination at Appendix 2 (P.R. 171).

Following the Preliminary Determination, Commerce verified Tanghenam at its Ho Chi Minh City facilities from October 1, 2024, through October 4, 2024. *See* Verification Report (Nov. 25, 2024) (P.R. 188) (C.R. 381). Before verification, Commerce sent Tanghenam a verification agenda stating that "verification is not intended to be an opportunity for submission of new factual information" and Commerce's "acceptance of such information for examination at verification does not guarantee that {it} will be able to use it for {the} final determination." *See* Verification Agenda at 2 (Sept. 21, 2024) (P.R. 178). At the start of verification, Tanghenam submitted nine minor corrections to the country-of-origin for specific inputs. *See* Verification Report at 3-4.

During verification, however, Commerce discovered additional inaccurate country-of-origin reporting—beyond the minor corrections previously submitted by Tanghenam—in Tanghenam's purchase ledgers. Commerce traced a total of eight input purchases through Tanghenam's financial records back to the supplier. *See id.* at 21. In many of these purchases, the reported origin of the input did not match the country-of-origin certificate. *See id*. at 22. Commerce determined that Tanghenam recorded the country in the supplier's address as the

country source, rather than the country-of-origin as the source of the material. *See id*. at 18. Commerce also confirmed that, although reported erroneously, Tanghenam has the ability to track the origin of inputs "by using the XLOOKUP function in Excel" to locate the address and determine the country-of-origin of each input. *Id.*

Commerce verified Tanghenam's inventory movement report and found that company officials could track "each input related to the production of each finished product," as described above. *Id.* at 24. However, Commerce also reported that, once those finished products are placed in the finished goods inventory, "there is no way to track" which "specific finished good is attributed to which sale." *See id.* at 24 ("All finished goods are then transported into the finished goods inventory. Once in finished goods inventory, there is no way to track which products go to sales," and "{w}hich specific finished good is attributed to which sale is not directly tracked.").

## II. Commerce's Final Determination

Commerce published the Final Determination in the Federal Register on January 27, 2025, in which it continued to find that AWC from Vietnam incorporating certain inputs of Chinese origin is circumventing the Orders. *See generally Aluminum Wire and Cable from the People's Republic of China*, 90 Fed. Reg. 8,196 (Dep't of Commerce Jan. 27, 2025) (P.R. 203) (Final Determination), and accompanying Issues and Decision Memorandum (IDM). Commerce made two changes in the Final Determination to its Preliminary Determination: (1) it applied partial AFA to its determination of the significance of the value of Tanghenam's Chinese inputs factor in its determination of circumvention; and (2) it determined, based on record evidence, that Tanghenam was ineligible to certify based on its inability to tie specific inputs to specific exports. *See* IDM at 3.

First, Commerce relied on partial AFA, rather than Tanghenam's reporting as it had done in the Preliminary Determination, to find that the value of Chinese inputs is a significant portion of the total value of AWC and the value of processing in Vietnam represents a small proportion of the value of AWC. *See* IDM at 5 (citing 19 U.S.C. §§ 1677j(b)(1)(D) and (b)(2)(E)). In making this finding, Commerce stated that it "discovered at verification that Tanghenam did not provide information according to the country of origin of the inputs it consumed. Rather, it provided information according {to} the location of the supplier." *Id.*

Second, Commerce also found Tanghenam ineligible to certify due to its inability to trace inputs from various origins to specific sales of finished goods. *Id.* at 14-15. Commerce stated that, based on "information compiled at verification" (*i.e.*, record evidence), "Tanghenam does not have a system in place to tie specific inputs to specific exports" and that, once a product is transported into the "finished goods inventory, there is no way to track which products go to sales." *Id.* This finding was distinct from Commerce's application of partial AFA to the total value of Tanghenam's inputs, discussed above. Whereas Commerce's application of AFA considered whether Tanghenam accurately traced inputs to their country-of-origin, certification applies to the inputs after they are incorporated into the finished product. Therefore, for purposes of certification, Commerce considered whether Tanghenam could trace specific exports of finished products back to specific inputs. Because Tanghenam "could not tie inputs to specific exports," Commerce found it could not "accurately certify that inputs purchased from China are not used in AWC exported to the United States" and thus, Tanghenam "does not meet the necessary requirements to certify" and cannot participate in the certification process. *Id.*

Tanghenam subsequently filed the present case to challenge the Final Determination.

## III. The Court's Remand Order

On February 24, 2026, the Court sustained in part, and remanded in part, Commerce's final determination. *See Tanghenam Electric Wire & Cable Co., Ltd. v. United States*, 823 F. Supp. 3d 1321, 1327 (Ct. Int'l Trade 2026) (Remand Order). The Court sustained Commerce's determination to apply partial AFA to Tanghenam. *Id.* However, the Court remanded Commerce's determination that Tanghenam is ineligible to participate in the certification regime. *Id.* at 1339. Specifically, the Court stated that Commerce's determination did not "adequately engage" with Tanghenam's "reconstruction-based accounting method for tracing," nor did it "adequately explain why the verification team's observation about commingled finished goods necessarily foreclose{s} certification eligibility for Tanghenam." *Id.* Accordingly, the Court remanded Commerce to address "Tanghenam's arguments relating to its reconstruction-based accounting method for tracing inputs to sales of finished goods and explain – based on record evidence and the relevant statutory and regulatory provisions – whether and why Tanghenam's proposed methodology satisfies or fails to satisfy the relevant criteria for certification eligibility." *Id.*

## IV. Commerce's Remand Redetermination

On remand, Commerce continued to find that Tanghenam is unable to reliably tie the country-of-origin of its inputs to specific exports of AWC to the United States, even under its proposed reconstruction-based accounting system. Remand Redetermination at 15. Accordingly, Commerce continued to determine that Tanghenam is unable to participate in the certification process. *Id.*

As directed by the Court, Commerce further engaged with Tanghenam's arguments regarding its alleged ability to trace inputs to U.S. shipments through reconstruction-based accounting methods and information provided on the record. *See* Remand Order at 1338.

Commerce explained that the record does not demonstrate that Tanghenam's accounting system is sufficiently reliable to perform a reconstruction-based methodology. Remand Redetermination at 4. Commerce stated that its verification findings revealed significant deficiencies in Tanghenam's accounting and reporting systems that undermine the reliability of Tanghenam's proposed methodology. *Id.* First, Commerce stated it previously identified multiple instances in which Tanghenam mis-recorded the country-of-origin of inputs in its questionnaire responses and in its books and records, including instances where the reported country-of-origin reflected the supplier's address rather than the actual origin of the material input. *Id.* (citing to Verification Report at 22). Commerce discussed that the Court acknowledged this specific issue, noting: "Tanghenam's country-of-origin reporting contained unreported, systemic inaccuracies that Commerce only discovered through independent examination of source documentation at verification." *Id.* (citing Remand Order at 1334). Commerce explained that these issues in reporting country-of-origin of Tanghenam's inputs went beyond errors disclosed at verification. *Id.* Indeed, Commerce identified additional, more systemic deficiencies through its own examination of source documentation, including purchase and accounting records. Verification Report at 17-22; Remand Order at 1333.

Second, Commerce discussed that Tanghenam submitted numerous corrections at verification, which included misreported sales transactions and omitted sales, incorrect classification of product codes, errors in input origin reporting and consumption quantities, as well as incorrect unit conversions and valuation methodologies. Remand Redetermination at 5 (citing Verification Report at 2-7). Taken together, Commerce explained that these issues demonstrate a broader weakness in Tanghenam's accounting system which indicates that Tanghenam does not maintain a system capable of accurately tracking the country-of-origin of

inputs from production through shipping of subject merchandise shipped to the United States, regardless of whether that tracking is done through direct means or in the indirect manner using its First-In-First-Out (FIFO) inventory system as it proposes. *Id.* Commerce explained that, for Tanghenam's proposed FIFO approach to work, the inventory records must be accurate, consistent, and systematically maintained. *Id.* Given these systemic issues, Commerce stated that applying FIFO assumptions to flawed underlying data cannot produce reliable tracing results. *Id.*

Last, Commerce found that Tanghenam's proposed tracing methodology is largely hypothetical. *Id.* at 6. Commerce explained that, while Tanghenam had demonstrated certain aspects of its reconstruction approach at verification, such as (partially failed) attempts to determine aggregate amounts of consumption by country-of-origin, Commerce did not observe a functioning system that actually links inputs to shipments of subject merchandise to the United States in the ordinary course of business. *Id.* (citing Verification Report at 22). Commerce stated that instead, Tanghenam's proposal relies on retrospective reconstruction using spreadsheets and assumptions that were not implemented nor factually supported at verification. *Id.* Commerce explained that its practice requires demonstrable, verifiable tracing capability, not theoretical reconstruction. For example, Commerce noted that the certification requires "direct personal knowledge of the facts regarding the production and exportation of the sales identified" in the certification, which must be identified by specific customers, invoices, and invoice line items. *Id.* *See* Final Determination at Appendix IV. "Direct personal knowledge" refers to facts the exporter is expected to have in its own records. *Id.* Commerce explained that its determination is consistent with its prior practice in circumvention proceedings which emphasized the necessity of reliable, verifiable accounting systems as a necessary foundation for

a respondent to accurately certify the country-of-origin of the inputs incorporated into merchandise shipped to the United States. *Id.*

Additionally, per the Court's order, Commerce addressed the question of why commingling of finished goods forecloses certification eligibility. Remand Order at 1338. In its redetermination, Commerce stated that certification of non-circumvention has three elements: (1) identifying the country-of-origin of inputs; (2) tracing the inputs into the production of finished goods; and (3) identifying which finished goods are sold to which market. Commerce explained that the final step requires that Tanghenam not commingle finished goods but be able to continue to trace Chinese and non-Chinese inputs to products sold to the United States. Remand Redetermination at 7. Commerce explained that specific shipments of finished goods must be identified by customer, invoice, and invoice line item, in accordance with the requirements of the certification, and this identification must be accomplished separately for sold goods made from Chinese materials and sold goods made from non-Chinese materials. *Id.* (citing Final Determination at Appendix IV). Commerce explained that this final step of the certification requirement must be satisfied on a product and sale-specific basis, as only merchandise produced from Chinese aluminum wire rod, aluminum wire strand, or aluminum wire has been found to be circumventing and thus subject to the Orders. *Id.* at 8. Thus, Commerce stated that Tanghenam must be able to keep goods segregated in inventory and not commingle finished goods produced from Chinese materials with finished goods produced from non-Chinese materials in order to identify which shipments are and are not subject to the Orders. Commerce stated that Tanghenam failed to meet this requirement. *Id.*

Commerce specifically noted, however, that this does *not* require physical segregation of merchandise, but rather could be accomplished through other means, such as the use of batch tags or stickers that identify the country-of-origin. Remand Redetermination at 13.

## ARGUMENT

### I. Standard of Review

In remand proceedings, the Court will sustain Commerce's determinations if they are "in accordance with the remand order, are supported by substantial evidence, and are otherwise in accordance with law." *See MacLean-Fogg Co. v. United States*, 100 F. Supp. 3d 1349, 1355 (Ct. Int'l Trade 2015) (citing 19 U.S.C. § 1516a(b)(1)(B)(i)).

### II. Commerce's Remand Determination is in Accordance with the Court's Remand Order and Supported by Substantial Evidence

As directed by the Court, and as discussed above, Commerce fully addressed Tanghenam's reconstruction-based arguments on remand. Furthermore, Commerce explained why Tanghenam must be able to keep goods segregated in inventory and not commingle finished goods produced from Chinese materials with finished goods produced from non-Chinese materials in order to identify which shipments are and are not subject to the Orders. Tanghenam's arguments to the contrary are unpersuasive for the reasons discussed below.

#### A. The Remand Redetermination is Consistent with the Court's Order

Tanghenam first asserts that Commerce has refused to follow the Court's directive to address Tanghenam's arguments by failing to engage with the mechanics of its reconstruction-based methodology with sufficient specificity. Pl. Cmts. at 4-5. But Commerce conducted the analysis required by Court, which specifically ordered Commerce to address "Tanghenam's arguments relating to its reconstruction-based accounting method for tracing inputs to sales of finished goods and explain – based on record evidence and the relevant statutory and regulatory

provisions – whether and why Tanghenam's proposed methodology satisfies or fails to satisfy the relevant criteria for certification eligibility." Remand Order at 1339.

The remand redetermination accomplishes this by first setting out the requirements for certification, specifically that a respondent be able to "(1) identify the country-of-origin of inputs in the company's books and records, (2) trace those inputs to specific products in finished goods inventory, and (3) link specific products in finished goods inventory to shipments of AWC to the United States." Remand Redetermination at 3. It further explained that certification requires "'direct personal knowledge of the facts regarding the production and exportation of the sales identified' in the certification, which must be identified by specific customers, invoices, and invoice line items." *Id.* at 6. It also set out Commerce's past practice, which "emphasized the necessity of reliable, verifiable accounting systems as a necessary foundation for a respondent to accurately certify the country-of-origin of the inputs incorporated into merchandise shipped to the United States." *Id.* (citing *Glycine from the People's Republic of China: Notice of Final Results of Antidumping Duty Changed Circumstances Review*, 91 Fed. Reg. 10588 (March 4, 2026) (*Glycine from China CCR*), and accompanying IDM).

Commerce then applied these requirements to Tanghenam's proposed methodology. The remand redetermination's analysis identifies specific failures of Tanghenam's accounting system that demonstrate Tanghenam is unable to complete certain steps in an accurate and reliable manner. Remand Redetermination at 4-9. Specifically, the Remand Redetermination set out the five specific steps Tanghenam proposes would be required to successfully create a reconstruction to tie imports to exports. *Id.* at 9. Commerce explained that the inaccuracies in Tanghenam's accounting system undermine its ability to complete each of these steps, in particular the fifth step—identification of the input's country-of-origin—because Tanghenam's methodology relies

on its records in its attempt to tie inputs to specific exports, and the record shows that Tanghenam's records are simply not reliable and accurate. *Id.* at 9-10. Put differently, where the underlying records, including country-of-origin records, are inaccurate, any reconstruction methodology that relies on those records will also be inaccurate.

Therefore, the remand redetermination did exactly what the Court required: Commerce identified the specific failure of Tanghenam's proposed methodology—its reliance on flawed underlying records. Importantly, as discussed below, Commerce identified multiple instances in which Tanghenam mis-recorded the country-of-origin of inputs in its books and records, including instances where the reported country-of-origin reflected the supplier's address rather than the actual country-of-origin of the material input. *Id.* at 9 (citing Verification Report at 22). Commerce therefore complied with the Court's remand instructions and engaged with Tanghenam's proposed methodology.

**B. Commerce's Conclusion that Tanghenam Failed to Demonstrate an Accurate Reconstruction-Based Methodology is Supported by Substantial Evidence**

Tanghenam asserts that it demonstrated its ability to use a reconstruction-based methodology, stating that it provided a detailed demonstration of its ability to trace the origin of inputs to specific export shipments. Pl. Cmts. at 6. Tanghenam claims this process was complete and accurate. *Id.* at 7-8. However, Commerce explained that it does not claim Tanghenam failed to correctly record and report the country-of-origin of its inputs in each and every instance. Remand Redetermination at 11. Rather, the issue was that Tanghenam's records were not maintained in a manner that would allow it to do so in a consistent and reliable manner. *Id.*

*First*, Tanghenam's claims about the accuracy of its proposed methodology are not supported by the record. At the outset, Tanghenam's argument that it "was able to provide the

correct country of origin for each input at the outset of verification" is not supported by the record. Pl. Cmts. at 10. As the remand redetermination concluded, "yet more errors beyond the proposed corrections were discovered during the course of verification when the verifiers examined the certificates of analysis," meaning that Tanghenam did not provide complete and accurate country-of-origin information at the outset of verification. Remand Redetermination at 12.

Commerce found that this erroneous reporting would also be present in Tanghenam's proposed reconstruction methodology. In Tanghenam's proposed reconstruction methodology, the country-of-origin reporting is sourced from its purchase ledger. *See* Draft Remand Comments at 7. Commerce, however, explained that the record shows that Tanghenam's purchase ledger *does not* always accurately record country-of-origin information for inputs. Remand Redetermination at 9. Specifically, Commerce explained that "{t}he verifiers discovered these errors when they reviewed certificates of analysis provided by the suppliers, not when they reviewed the purchase ledger." *Id.* Commerce therefore concluded that the verification report "indicates Tanghenam's accounting system was incorrect (presumably including its purchase ledger) and the errors in the system were only discovered when Commerce observed underlying documentation." *Id.* at 9-10. Therefore, Commerce's conclusion that the sources of country-of-origin information on which Tanghenam proposes to rely in its reconstruction methodology are not consistently accurate is fully supported by substantial evidence on the record.

*Second*, Tanghenam contends that this conclusion is erroneous because "Tanghenam's five-step reconstruction-based methodology is designed to triangulate from multiple record sources, including the certificates of analysis that the verifiers themselves relied on, to arrive at

the correct country of origin." Pl. Cmts. at 10. But Tanghenam characterizes the methodology this way for the first time in this Court. In both its prior briefing in this Court and its comments on Commerce's draft remand redetermination, Tanghenam alleged that its methodology used country-of-origin information from the purchase ledger and did not mention certificates of analysis. *See* Draft Remand Comments at 7 ("Identification of Input Origins: Tanghenam's purchase ledger is exhaustive; it specifies both the address of the supplier and, crucially, the true country of origin of the input. Commerce's verification team confirmed that the ledger indicates both these data points."); Pl. Reply, ECF No. 36 at 3 (same); *see also* Draft Remand Comments at 7 ("The documents on the record, including the inventory movement record *and purchase ledger*, demonstrate Tanghenam's ability to reconstruct the full supply chain for any particular exported item, including the country of origin for each input incorporated into a given shipment." (emphasis added)). Because Tanghenam has not shown that it ever characterized its methodology this way before Commerce, it did not exhaust its administrative remedies and the argument cannot be raised now. *See AIMCOR v. United States*, 141 F.3d 1098, 1111-12 (Fed. Cir. 1998).[1]

Even setting aside the failure to exhaust, Tanghenam's assertion that its proposed methodology involves cross-referencing certificates of analysis is unsupported by the record. Tanghenam cites its draft remand comments for this assertion but, as explained, those do not reference certificates of analysis. Moreover, the verification report's description of the reconstruction process describes only reliance on the purchase ledgers, noting that Tanghenam "used the FIFO accounting method to find the address of the supplier. They recorded the

[1] Although "certificates of analysis" were first mentioned in Commerce's final, rather than draft, remand redetermination, Tanghenam nevertheless failed to exhaust this argument because it fails to identify anywhere on the record it contended, before or after the remand, that its methodology relied on anything other than its purchase ledger for country-of-origin inputs.

country in the supplier's address as the country source; company officials did not report country of origin as the source of the material." Verification Report at 24; *see also id.* ("Company officials can link the inventory movement report to their raw materials purchase ledger using the 'document number.'"). Therefore, even if not waived, Tanghenam fails to identify record evidence that it proposed to rely on certificates of analysis in its reconstruction methodology. Tanghenam's arguments about the reliability of its methodology ultimately boil down to an assertion that, even if the underlying data contains errors, the methodology would use the correct country-of-origin information regardless. But, as Commerce concluded, such assumptions are not supported by the record, which shows Tanghenam's accounting records are rife with errors and mis-reporting. Remand Redetermination at 12. Tanghenam provided no basis to assume that its methodology would accurately trace the country-of-origin for all inputs. *Id.* at 1-2.

*Third*, the remand redetermination fully analyzed Tanghenam's alleged ability to tie exports to specific inputs. Commerce explained that, while the record indicates some instances of Tanghenam's accounting system working as it should, including accurately recording and reporting the country-of-origin of some of its inputs, the fact that numerous errors are documented on the record (some self-identified by Tanghenam at verification and some discovered by Commerce during verification) indicates a lack of reliability that is unsatisfactory for purposes of participation in the certification scheme. *Id.*; Pl. Cmts. at 9. As a result, Tanghenam's arguments that it demonstrated its ability to employ the methodology for certain shipments at verification is beside the point. Two instances of Tanghenam's accounting system functioning properly do not resolve or eliminate the numerous instances Commerce discovered where the system fails, and thus the overarching inaccuracies in the accounting system render it an unreliable foundation for tracing the origin of an input. Commerce also explained that, given

that verification is a spot-checking exercise, the errors discovered in Tanghenam's accounting system may also indicate additional errors that Commerce did not discover at verification. *Id.* Thus, Commerce concluded that, even if the proposed method worked for the example shipments at verification, the underlying errors in Tanghenam's accounting system prevented the methodology from being consistently accurate.

*Finally*, Tanghenam's remaining assertions on this point misread both the Court's remand order and Commerce's analysis on remand. Pl. Cmts. at 12. The Court did not hold the verification report, or the factual observations contained therein, were insufficient evidence to preclude Tanghenam's participation in the certification process. Rather, the Court found Commerce's prior determination failed to meaningfully engage with Tanghenam's proposed reconstruction-based tracing methodology and relied only on the observation that finished goods were commingled. Remand Order at 1337. On remand, Commerce has done precisely what the Court directed. It considered Tanghenam's proposed methodology, identified the specific steps on which that methodology depends, and explained why record evidence developed at verification demonstrates that Tanghenam cannot perform those steps in an accurate and reliable manner. Commerce therefore does not merely repeat an observation previously found inadequate by the Court. Rather, Commerce relied on specific verification findings to explain why the underlying data necessary to Tanghenam's proposed reconstruction methodology are themselves unreliable.

**C. Tanghenam's Remaining Arguments Fail**

*1.* Tanghenam contends that Commerce's acceptance of minor corrections "while using those very same 'minor corrections' as a basis to apply partial AFA on Tanghenam and now also exclude it from the certification process" is error. Pl. Cmts. at 11. This argument misses the point of Commerce's conclusions. Whether Commerce accepts corrections at the

outset of verification is a wholly separate question from whether those corrections may be used as evidence of the unreliability of Tanghenam's accounting system. This is particularly the case here where, after accepting the corrections, Commerce discovered yet-more inaccuracies that were not corrected at the outset of verification. *See* Remand Redetermination at 5. Thus, Commerce's conclusion that the errors Tanghenam reported at the start of verification "are not isolated" but rather "demonstrate broader weaknesses in Tanghenam's accounting system, including reliance on manual processes, inconsistent data reconciliation, and inaccuracies in core production and inventory records," is fully supported by the record. *Id.* Commerce's point was not that Tanghenam's corrections, standing alone, preclude certification; rather it was that Tanghenam's corrections plus the additional inaccuracies discovered by Commerce in its verification spot check are evidence that Tanghenam's accounting system is unreliable, especially with regard to country-of-origin of inputs.

*2.* Tanghenam contends that Commerce erroneously described Tanghenam's methodology as "hypothetical." Pl. Cmts. at 12. But Tanghenam misunderstands Commerce's meaning. As Commerce noted, the methodology "was not relied upon for purposes of reporting information to Commerce in the circumvention inquiry, and Tanghenam does not cite to any part of the record to support a different conclusion." Remand Redetermination at 13. Therefore, although Tanghenam attempted to demonstrate how it works for certain shipments, *see id.*, because Tanghenam does not actually maintain the system in its ordinary course of business, the methodology's application to every other shipment is hypothetical. This does not mean Commerce concluded, as Tanghenam alleges that any "respondent whose real-time accounting system did not maintain country-of-origin tracking on a shipment-specific basis" is "forever barred from implementing a methodology that does so." Pl. Cmts. at 13. Rather, Commerce

concluded that Tanghenam's methodology is hypothetical in the sense that it "relies on retrospective reconstruction using spreadsheets and assumptions that were not implemented nor factually supported at verification." Remand Redetermination at 6. It is the faulty assumptions and lack of factual support (namely, the inaccuracy of Tanghenam's country-of-origin information) that preclude certification, not the lack of real-time accounting system. *See id.* at 6-7. In any event, even assuming the "hypothetical" characterization is inappropriate, it is unclear why further remand proceedings would be appropriate.

*3.* Tanghenam's assertion that Commerce imposed a "physical segregation" requirement as a condition of participating in the certification process is mistaken. Pl. Cmts. at 13. Nowhere in Commerce's analysis on remand does Commerce claim physical segregation is a requirement. While Commerce explains at length why finished goods cannot be commingled before exportation, Commerce does not insist that commingling be avoided by physical segregation. Rather, the remand redetermination expressly declined to adopt such a requirement, instead noting that commingling could be avoided by batch tags, stickers, *etc.* Remand Redetermination at 13. As Commerce explained, "the final step of the certification requirement must be satisfied on a product and sale specific basis as only merchandise produced from Chinese aluminum wire rod, aluminum wire strand, or aluminum wire has been found to be circumventing and thus subject to the *Orders*," meaning that "Tanghenam must be able to keep goods segregated in inventory and not commingle finished goods produced from Chinese materials with finished goods produced from non-Chinese material in order to identify which shipments are and are not subject to the orders." Remand Redetermination at 8. Nowhere in the remand redetermination does Commerce dictate *how* this separation must be done, just that "Tanghenam has failed to meet this requirement." *Id.*

## CONCLUSION

For these reasons, we respectfully request that the Court sustain Commerce's Remand Redetermination, and enter judgment in favor of the United States.

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General

PATRICIA M. McCARTHY
Director

CLAUDIA BURKE
Deputy Director

/s/ Blake W. Cowman
BLAKE W. COWMAN
Trial Attorney
Commercial Litigation Branch
Civil Division
U.S. Department of Justice
PO Box 480
Ben Franklin Station
Washington, DC 20044
Tel: (202) 353-2494
Email: blake.w.cowman@usdoj.gov

Attorneys for Defendan

OF COUNSEL:
JACK DUNKELMAN
Attorney
U.S. Department of Commerce
Office of the Chief Counsel for Trade
Enforcement and Compliance

September 29, 2026

# CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing brief complies with the word count limitations of Rules of this Court and the Court's Standard Chambers Procedures, in that it contains 4,947 words, including text, footnotes, and headings as determined by the word processing software used to prepare this brief.

/s/ Blake W. Cowman

**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**

BEFORE: THE HONORABLE JOSEPH A. LAROSKI, JR. JUDGE

| | |
|---|---|
| TANGHENAM ELECTRIC WIRE & CABLE CO., LTD., Plaintiff, | |
| v. | Court No. 25-00049 |
| UNITED STATES, Defendant, | |
| and | |
| ENCORE WIRE CORPORATION, Defendant-Intervenor. | |

**ORDER**

Upon consideration of the Department of Commerce's final results of redetermination pursuant to remand, defendant's response in support thereto, and all other pertinent papers, it is hereby

ORDERED that the remand results are sustained in their entirety.

Dated: ____________, 2026 ______________________________
New York, NY JUDGE